**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **SUK JAE CHANG, individually and on behalf of classes of similarly situated persons,** | **Case No.  11-CV-10245** |
| **Plaintiff(s),** | **COMPLAINT FOR DAMAGES** |
| **v.** | **CLASS ACTION** |
| | **Jury Trial Demanded** |
| **WOZO, LLC., TATTO, INC., and ADKNOWLEDGE, INC.,** | |
| **Defendants.** | |

**CLASS ACTION COMPLAINT**

Plaintiff Suk Jae Chang brings this action on behalf of himself and all similarly-situated individuals and alleges as follows:

**INTRODUCTION**

1.      This action concerns a scheme by Defendants Wozo, LLC, Tatto, Inc., Adknowledge, Inc., and each of them (collectively, "Defendants") to charge consumers for a monthly membership in a poster club at a cost of $29.99 without adequately disclosing the existence or cost of that product to consumers.   Defendants lure consumers with an online promotional offer for a "free" poster and other benefits. According to Defendants, the only cost associated with the offer is a 99-cent shipping charge.  However, the Defendants fail to adequately disclose that, by ordering the "free"

1

poster and submitting their debit or credit card information for payment of the 99-cent shipping fee, consumers are actually purchasing a monthly membership in a poster club at 30 times the cost of the product that was actually advertised, a single poster.  If the monthly membership is not cancelled within four days, the consumer's payment card is charged the first of many $29.99 monthly membership fees, and the consumer is automatically mailed two arbitrarily-chosen posters each month.

2.      In other words, Defendants are selling a completely different product than the one displayed on the web pages necessarily accessed in the process of completing the transaction to obtain the "free" poster.  Indeed, there is no mention of the "monthly membership" anywhere on such web pages.  As a result, instead of buying a poster for 99 cents (the purported cost of shipping), consumers are actually purchasing a monthly membership in a useless "poster club."  The consumers who participate in the free poster promotion will generally discover a second purchase (at 30 times the price of the first one) after the 4-day cancellation window has expired and their payment card has been charged the $29.99 monthly membership fee.

3.      Consumer rights websites and social networking message boards are replete with complaints about Defendants' "poster scam." Indeed, it is clear that Defendants' monthly membership in a poster club is not designed to be operated as legitimate business that could legitimately appeal to consumers absent Defendants' misrepresentations.  Few consumers, if any, would ever elect to buy a $29.99 monthly membership to receive only two posters per month, particularly when those posters are arbitrarily selected by someone else.  As a result, it is hardly surprising that Defendants

did not mention the monthly membership on the web pages that were necessarily accessed to complete the transaction.

4.      As alleged in greater detail below, Defendants have committed a pattern and practice of unfair and deceptive acts or practices in violation of Massachusetts General Laws Chapter 93A, Section 2(a) ("M.G.L. c. 93A § 2") including but not limited to knowingly employing misleading and deceptive advertising which misrepresented and/or failed to adequately disclose the true terms of their offer.

5.      As alleged in greater detail below, certain Defendants have also violated the Electronic Funds Transfer Act, 15 U.S.C. § 1693 et seq. ("the EFTA") by initiating electronic transfers of funds from debit card accounts without first obtaining valid authorization in writing from the account holders.   In addition, certain Defendants violated the EFTA by failing to provide a copy of any purported written authorization at the time such authorization was allegedly made.

6.      Plaintiff Suk Jae Chang ("Plaintiff") has been injured by Defendants' unfair and deceptive acts and practices.   Plaintiff brings this class action individually and on behalf of all similarly-situated individuals.   Plaintiff asks this Court to order Defendants to pay restitution and damages to these aggrieved consumers and assess costs against the Defendants, and each of them, pursuant to M.G.L. c. 93A § 2 and the EFTA.

**PARTIES**

7.      Plaintiff Suk Jae Chang is an individual who resides in Arcadia, California.

8.      Defendant Wozo LLC ("Wozo") is a Delaware limited liability company with its principal place of business in Boston, Massachusetts.   On information and belief, and as alleged herein, Wozo has an office at 101 Federal Street, Suite 1900, Boston,

3

Massachusetts, 02210 and conducts business from Defendant Tatto Inc.'s Boston headquarters located at 10 High Street, Suite 900, Boston, Massachusetts, 02111.

9.      Defendant Tatto Inc. ("Tatto") is a Delaware corporation with its principal place of business in Boston, Massachusetts.  On information and belief, Tatto maintains its headquarters at 10 High Street, Suite 900, Boston, Massachusetts, 02111.

10.     Defendant Adknowledge, Inc. ("Adknowledge") is a Missouri corporation with its principal place of business in Kansas City, Missouri and offices in the San Francisco area, Los Angeles, and New York City.

11.     At all relevant times, each of the Defendants were acting as the agents, servants, and employees of their co-Defendants, and each of them, in doing the things hereinafter alleged, were acting in the scope of their authority as agents, servants, and employees and with the permission, consent, authorization and ratification of their co-Defendants.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over Plaintiff's claims for violation of the Electronic Funds Transfer Act ("the EFTA") pursuant to 15 U.S.C. § 1693e and 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. §1367(a).

13.     On information and belief, this Court also has subject matter jurisdiction over the state law claims asserted pursuant to 28 U.S.C. § 1332(d) because the amount in controversy in this matter exceeds the sum or value of $5,000,000 exclusive of interests and costs, and this matter is a class action in which a member of each of the

classes of plaintiffs is a citizen of a state different from any Defendant, and the so-called "local controversy" set forth in 28 U.S.C §1332(d)(4) exception does not apply.

14.     This court has personal jurisdiction over Wozo because Wozo maintains its headquarters and employees within Massachusetts and conducts substantial business within Massachusetts, such that Wozo has significant continuous and pervasive contacts with the Commonwealth of Massachusetts.

15.     This court has personal jurisdiction over Tatto because Tatto maintains its headquarters and employees within Massachusetts and conducts substantial business within Massachusetts, such that Tatto has significant continuous and pervasive contacts with the Commonwealth of Massachusetts.

16.     This court has personal jurisdiction over Adknowledge because Adknowledge conducts substantial business within Massachusetts, including but not limited to business conducted with Wozo and Tatto, such that Adknowledge has significant continuous and pervasive contacts with the Commonwealth of Massachusetts.

17.     Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) because Defendants Wozo and Tatto are headquartered and subject to personal jurisdiction in this judicial district and a substantial number of the acts giving rise to the violations of law complained of herein occurred in or emanated from this judicial district.

## GENERAL ALLEGATIONS

### Alter Ego Allegations as to Wozo

18.     Tatto is an online advertising company.

19.     On information and belief, in or about Fall 2009, Tatto acquired the domain <wozo.com> ("the Wozo Website").

20.     On information and belief, on or about July 26, 2010, Tatto, and/or its representatives, employees, agents and assigns, formed Wozo as a device to avoid liability by substituting a financially irresponsible limited liability company in the place of Tatto.

21.     On information and belief, after organizing and forming Wozo, Tatto transferred ownership of the Wozo Website to Wozo.

22.     On information and belief, at all relevant times, Wozo was and is a mere corporate shell and naked framework over which Tatto maintained dominant and pervasive control and through which Tatto conducted its own business, including the fraudulent Wozo poster promotion conceived and operated by Tatto.

23.     Tatto originally designed and later promoted the Wozo "free" poster promotion to deceptively sell monthly memberships that is the subject of this action.

24.     Specifically, Tatto sought affiliates to work with it to promote the poster promotion, including the following specific solicitation efforts described below:

a. On information and belief, on or about September 9, 2010, an officer of Tatto, identifying himself as "Founder of Tatto," sent an email to advertising affiliates inviting them to promote "a poster subscription offer called Wozo" that he had "recently founded."

b. On information and belief, on or about November 12, 2010, a representative of Tatto sent an email to advertising affiliates inviting them to promote the Wozo poster promotion.

25.     On information and belief, Wozo's officers are also the principals, officers, and/or founders of Tatto, resulting in a unity of interest and ownership between the two entities such that any individuality and separateness of Tatto and Wozo have ceased for all intents and purposes.

26.     On information and belief, Wozo does not have a legitimate office of its own and its business is conducted from Tatto's headquarters.  Wozo's address is listed on the WHOIS domain directory as 101 Federal Street, Suite 1900, Boston, Massachusetts, 02210 ("101 Federal Street")—the same address as a Regus PLC Executive Suite.  On information and belief, Wozo does not conduct actual business at 101 Federal Street, and Tatto, acting through its representatives, agents, employees and/or assigns, leased office space from Regus PLC for the purpose of obtaining an address for Wozo different from Tatto's own address (which is located around the corner) in an effort to misrepresent to consumers that Wozo and Tatto are unrelated.

27.     By virtue of the foregoing, adherence to the fiction of the separate existence of Wozo would, under the circumstances, sanction a fraud, promote injustice, and result in a fraudulent and injurious consequence in that Plaintiff and those similarly-situated individuals upon whose behalf he brings this action would be unable to recover upon any judgment in their favor.

28.     For the reasons alleged in Paragraphs 18 through 27, and pursuant to the allegations therein as to the alter ego status of Wozo, wherever the term "Wozo" is used hereinafter, said term shall refer to and include Tatto regardless of whether Tatto is also expressly mentioned.

29.     On information and belief, at all times relevant, Tatto and Wozo acted for each other in connection with the conduct hereinafter alleged and each of them performed the acts complained of herein or breached the duties herein complained of as agents of each other, and each is therefore fully liable for the acts of the other.

### The "Free" Poster Promotion

30.     Through the Wozo Website, Tatto, acting through Wozo, sells posters of popular music, film, television, and sports figures as well as "fine art" prints.  According to the "About Us" page of the Wozo Website, "Wozo.com has provided 100's of thousands of customers with the largest selection of posters and art prints at the lowest prices."

31.     On information and belief, after Tatto's acquisition of the Wozo Website in Fall 2009 and formation of Wozo in 2010, Tatto and Wozo (collectively, "the Wozo Defendants") formed the Wozo poster club, wherein members of the poster club would receive an automatic shipment of two posters per month from Wozo in exchange for payment of a $29.99 monthly membership fee.

32.     On information and belief, concurrent with the formation of the Wozo poster club, the Wozo Defendants launched a promotional campaign, wherein the Wozo Defendants jointly created, developed, and placed banners and other advertisements on the Internet offering a free poster to consumers for a 99-cent shipping fee.  These advertisements did <u>not</u> adequately disclose the following information:

a)     The existence of a second product that had to be ordered along with the "free" poster, specifically, a monthly membership in the Wozo poster club;

b)      That consumers who ordered a "free" poster from the Wozo Website would be automatically charged for a monthly membership in the Wozo poster club;

c)      That consumers who ordered a "free" poster from the Wozo Website had to cancel their monthly membership in the Wozo poster club within four (4) days of ordering a "free" poster in order to avoid any charges related to their monthly membership in the Wozo poster club;

d)      That the debit or credit card information submitted by consumers who ordered a "free" poster from the Wozo Website would be retained by the Wozo Defendants; or

e)      That consumers who ordered a "free" poster from the Wozo Website and did not cancel their monthly membership in the Wozo poster club within the four-day window would be charged a $29.99 monthly membership fee on the debit or credit card provided to the Wozo Defendants for the purpose of paying for the 99-cent shipping fee.

33.      On information and belief, when a consumer clicked on an Internet advertisement for the Wozo "free" poster offer, the consumer was redirected to the Wozo Website to select a poster.

34.      On information and belief, at all times relevant, none of the web pages necessarily accessed by a consumer to complete an order for a "free" poster adequately disclosed any of the following relevant information:

a.      The existence of a second product that had to be ordered along with the "free" poster, specifically, a monthly membership in the Wozo poster club;

b.      That consumers who ordered a "free" poster from the Wozo Website would be automatically charged for a monthly membership in the Wozo poster club;

c.      That consumers who ordered a "free" poster from the Wozo Website had to cancel their monthly membership in the Wozo poster club within four (4) days of ordering a "free" poster in order to avoid any charges related to their monthly membership in the Wozo poster club;

d.      That the debit or credit card information submitted by consumers who ordered a "free" poster from the Wozo Website would be retained by the Wozo Defendants; or

e.      That consumers who ordered a "free" poster from the Wozo Website and did not cancel their monthly membership in the Wozo poster club within the four-day window would be charged a $29.99 monthly membership fee on the debit or credit card provided to the Wozo Defendants for the purpose of paying for the 99-cent shipping fee.

35.     Screen shots substantially matching the web pages necessarily accessed by a consumer to complete an order for a "free" poster appear below:









36.    The above screen shots make no mention of a monthly membership, the cost of such a monthly membership, the fact that such cost would be automatically charged to the consumer unless the undisclosed monthly membership was cancelled within four days, or that the consumer's credit or debit card information used to pay the shipping cost of the "free" poster would be retained by certain Defendants to pay for the monthly membership.

37.    In addition, there is a pre-checked box indicating that the customer agrees to all terms and conditions, though the text by that box is not a hyperlink to the so-called terms and conditions of the deal.  Congress has recently passed a law in response to abusive practices called the Restore Online Shoppers Confidence which specifically prohibits opt-out online membership programs like the one which was fraudulently sold in connection with the "free" poster promotion here.

38.    On information and belief, the Wozo Defendants retained the debit or credit card information submitted by consumers who ordered a "free" poster from the Wozo Website without the express authorization of the cardholders.

39.    On information and belief, the Wozo Defendants charged all consumers who ordered a "free" poster from the Wozo Website, and did not cancel their monthly membership in the Wozo poster club within the four-day window, a $29.99 monthly membership fee.   The $29.99 fee was charged, without the authorization of the cardholders, to the debit or credit card originally provided to the Wozo Defendants.

40.    The Wozo Defendants willfully and knowingly concealed the existence, automatic enrollment, terms, and cost of the monthly membership in the Wozo poster club to consumers viewing and responding to the Wozo "free" poster promotion.

41.    By failing to adequately disclose the existence, automatic enrollment, terms, and cost of the monthly membership in the Wozo poster club to consumers prior to their submission of a "free" poster order, the Wozo Defendants willfully and knowingly charged the consumers for a monthly membership in the Wozo poster club without the consumers' knowledge and consent.

42.    By enrolling consumers in a monthly membership in the Wozo poster club without adequately disclosing the existence of the monthly membership product and its cost (as well as other terms and conditions of the transaction), the Wozo Defendants willfully and knowingly charged consumers' debit and credits cards the $29.99 monthly membership fee without proper written authorization of the cardholders.

43.    Because the Wozo Defendants' "free" poster promotion was a deceptive and unfair business practice, it has been the subject of significant criticism.   Outraged

consumers complained about the failure to adequately disclose the true nature of the transaction. Presumably in response to such criticism, Defendants later changed the website for the promotion to more accurately disclose the nature of the transaction. Screen shots substantially matching more recent versions of the website pages appear below:





44.     Unlike previous versions of the website, the above website screen shots disclose the existence of the monthly membership, the cost of the monthly membership, and that consumers' debit and credit cards would be automatically charged for the membership if the consumers did not cancel within four days.

45.     Upon information and belief, Defendants charged thousands of monthly memberships to consumers before modifying their website to more accurately disclose the nature of the transaction.

### Adknowledge's Partnership with the Wozo Defendants

46.     On information and belief, the Wozo Defendants extended the scope and appeal of the Wozo "free" poster promotion by forming strategic partnerships within the online advertising, gaming, and social networking industries to offer additional "free" benefits to consumers, including but not limited to virtual currency.

47.     Over the past several years, the marriage of social networking websites with traditional video games has resulted in the growing popularity of role-playing and "simulation" games.  Notable examples include *Second Life*, *FarmVille*, and *Mafia Wars*. The virtual worlds created by these games contain economic structures, wherein players exchange virtual currency or goods within the game, usually to increase their power or standing as a player.

48.     Some virtual currency platforms are monetized—that is, a player can obtain virtual currency for use within a game by either (1) using real money to purchase virtual currency within the game or from an online exchange, or (2) purchasing products from the platform's advertising partners.  Accordingly, these monetized platforms use virtual currency to earn real money for gaming companies, platform operators, and their affiliated advertisers.

49.     On information and belief, Adknowledge owns and operates a virtual currency platform called "Super Rewards," the units of which are commonly referred to as "Super Rewards Points."  Super Rewards Points may be used in a wide variety of online games.

50.     On information and belief, the Wozo Defendants partnered with Adknowledge to offer Super Rewards Points as part of the Wozo Defendants' "free"

poster promotion.    Together, Defendants created and developed a promotional campaign as joint venturers, including banners and other advertisements offering a free poster *and* Super Rewards Points to consumers for a 99-cent shipping fee. Defendants, and each of them, placed such banners and other advertisements on the Internet. These Internet advertisements did not make any reference to a monthly membership in the Wozo poster club, the automatic enrollment therein for those who participated in the promotion, or the $29.99 monthly membership fee associated therewith.

51.    On information and belief, the Wozo Defendants paid Adknowledge a $19 fee for each consumer who ordered a "free" poster from the Wozo Website—and thereby enrolled in the monthly membership of the Wozo poster club—after clicking on the jointly-created Internet advertisement offering a free poster and Super Rewards points for a 99-cent shipping fee.

52.    Because the 99-cent "shipping" fee was obviously insufficient to cover the costs of the poster, the shipping expenses, the Super Rewards Points, the advertising campaign, and the $19 payment to Adknowledge, Adknowledge, as a sophisticated business entity, either knew of, or was reckless in failing to ascertain, the unfair, deceptive and fraudulent nature of the Wozo Defendants' "free" poster promotion.

### Plaintiff Suk Jae Chang

53.    Plaintiff is a user of Super Rewards Points.

54.    In or about October 2010, Plaintiff saw an Internet advertisement for the Wozo Website stating that he could earn Super Rewards Points and obtain a free poster by paying a 99-cent shipping fee.  Plaintiff clicked on the advertisement, which redirected him to the Wozo Website.  At the time, the pages necessarily accessed on

the Wozo Website to obtain a "free" poster appeared substantially similar to the screen shots in Paragraph 35 above in that they did not adequately disclose the existence of the monthly membership product and its cost, as well as other terms and conditions of the transaction.

55.    Plaintiff selected a poster from the Wozo Website in order to obtain the promised Super Rewards points and paid for the 99-cent shipping fee with his debit card.  At no time during the checkout process did any Defendant adequately disclose to Plaintiff that he would be charged for anything but the 99-cent shipping fee, let alone a recurring $29.99 fee for a monthly membership in a poster club.

56.    Without his authorization, Plaintiff's debit card was later charged by Wozo for a $29.99 monthly membership subscription fee.  As a result, money was wrongfully withdrawn from Plaintiff's debit account and Plaintiff has been damaged.

## CLASS ACTION ALLEGATIONS

57.    This action is brought pursuant to Federal Rule of Civil Procedure 23, M.G.L. c. 93A § 9(2), and the EFTA.

58.    Plaintiff brings the first cause of action on his behalf and as the representative of all similarly-situated persons who participated in Wozo's "free" poster promotion and were charged for a monthly membership in the Wozo poster club even though the monthly membership was not referenced on the pages of the Wozo Website that were necessarily viewed to complete the transaction (collectively, "the Wozo Class").

59.    Plaintiff brings the second cause of action on his behalf and as representative of all similarly-situated members of the Wozo Class who were offered

Super Rewards points for their participation in the Wozo Defendants' "free" poster promotion and were charged for a monthly membership in the Wozo poster club even though the monthly membership was not referenced on the pages of the Wozo Website that were necessarily viewed to complete the transaction (collectively, "the Super Rewards Class").

60.    Plaintiff brings the third cause of action on his behalf and as representative of all similarly-situated members of the Wozo Class whose debit cards were charged for a monthly membership subscription in the Wozo poster club even though the monthly membership was not referenced on the pages of the Wozo Website that were necessarily viewed to complete the transaction (collectively, "the Debit Class").

61.    The Wozo Class, the Super Rewards Class, and the Debit Class are collectively hereinafter referred to as "the Classes."

62.    A class action is proper under Federal Rule of Civil Procedure 23 because:

a)    Each of the Classes is so numerous that joinder of all members is impracticable;

b)    There are questions of law and fact that are common to the each of the Classes;

c)    The claims of the representative Plaintiff are typical of the claims of the each of the Classes, and the representative Plaintiff will fairly and adequately protect the interests of each of the Classes.

63.     A class action is the superior method of adjudicating this controversy because, under Rule 23(b)(3), questions of law and fact common to the members of the Classes predominate over any question affecting only individual members.

64.     The common questions of law and fact include:

a)      Whether Defendants engaged in a scheme to deceive and defraud consumers by charging them for a monthly membership in the Wozo poster club without having adequately disclosed the existence of the monthly membership product or the cost of that product;

b)      The identity of the participants in the deceptive and unlawful scheme alleged in this Complaint;

c)      The duration of the deceptive and unlawful scheme alleged in this Complaint and the nature and character of the acts performed by the Defendants in furtherance thereof;

d)      Whether the alleged deceptive and unlawful scheme violated M.G.L. c. 93A, § 2;

e)      Whether the conduct of the Defendants, as alleged herein, violated the EFTA;

f)      Whether the conduct of the Defendants, as alleged herein, caused injury to Plaintiff and the Classes;

g)      The appropriate measurement(s) of damages suffered by Plaintiff and the Classes;

h)      Whether, by reason of Defendants' violations of M.G.L. c. 93A § 2, Plaintiff, the Wozo Class, and the Super Rewards Class are entitled to recover statutory damages under M.G.L. c. 93A § 9(3); and

i)      Whether, by reason of Defendants' violations of the EFTA, Plaintiff and the Debit Class are entitled to recover statutory damages.

65.     Plaintiff can and will fairly and adequately represent and protect the interests of the Classes because:

a)      All of the questions of law and fact regarding the liability of Defendants are common to each of the Classes and predominate over any individual issues that may exist, such that by prevailing on his own claims, Plaintiff will necessarily establish the liability of Defendants to all members of each of the Classes.

b)      Without the representation provided by Plaintiff, it is unlikely that any member of the Classes would receive legal representation and/or obtain recourse for the misconduct carried out by Defendants; and

c)      Plaintiff has retained competent attorneys who are experienced both in the conduct of class actions and the law governing online advertising, e-contract, and online payment systems.  Plaintiff and his counsel have the necessary resources to litigate this class action, and Plaintiff and his counsel are aware of their fiduciary responsibility to the members of the Classes and are determined to discharge those duties to obtain the best possible recovery for the Classes.

///

///

## FIRST CAUSE OF ACTION

### Violation of M.G.L. c. 93A

### (By Plaintiff on Behalf of the Wozo Class Against Wozo and Tatto)

66.     Plaintiff, individually and on behalf of the members of the Wozo Class, herein realleges and incorporates by reference all of the allegations set forth above in the preceding Paragraphs.

67.     At all relevant times, Wozo was engaged in trade or commerce within the Commonwealth of Massachusetts, including the trade or commerce of selling posters online from Wozo's Massachusetts headquarters.

68.     At all relevant times, Tatto was engaged in trade or commerce within the Commonwealth of Massachusetts, including the trade or commerce of providing online advertising services from Tatto's Massachusetts headquarters.

69.     In or about 2010, the Wozo Defendants, and each of them, caused and directed the placement of banners and other advertisements on the Internet offering a free poster to consumers for a 99-cent shipping fee, which advertisements did <u>not</u> adequately disclose the following information:

a.     The existence of a second product that had to be ordered along with the "free" poster, specifically, a monthly membership in the Wozo poster club;

b.     That consumers who ordered a "free" poster from the Wozo Website would be automatically charged for a monthly membership in the Wozo poster club;

c.     That consumers who ordered a "free" poster from the Wozo Website had to cancel their monthly membership in the Wozo poster club within four (4)

days of ordering a "free" poster in order to avoid any charges related to their monthly membership in the Wozo poster club;

      d.      That the debit or credit card information submitted by consumers who ordered a "free" poster from the Wozo Website would be retained by the Wozo Defendants; or

      e.      That consumers who ordered a "free" poster from the Wozo Website and did not cancel their monthly membership in the Wozo poster club within the four-day window would be charged a $29.99 monthly membership fee on the debit or credit card provided to the Wozo Defendants for the purpose of paying for the 99-cent shipping fee.

      70.      Plaintiff and the Wozo Class members saw one of the Wozo Defendants' advertisements on the Internet offering a free poster to consumers for a 99-cent shipping fee and, in response thereto and as a direct and proximate result thereof, Plaintiff and the Wozo Class members ordered a "free" poster from the Wozo Website.

      71.      None of the web pages necessarily accessed by Plaintiff or the Wozo Class members in the process of submitting their orders for a "free" poster from the Wozo Website adequately disclosed any of the following information:

      a.      The existence of a second product that had to be ordered along with the "free" poster, specifically, a monthly membership in the Wozo poster club;

      b.      That consumers who ordered a "free" poster from the Wozo Website would be automatically charged for a monthly membership in the Wozo poster club;

c.     That consumers who ordered a "free" poster from the Wozo Website had to cancel their monthly membership in the Wozo poster club within four (4) days of ordering a "free" poster in order to avoid any charges related to their monthly membership in the Wozo poster club;

d.     That the debit or credit card information submitted by consumers who ordered a "free" poster from the Wozo Website would be retained by the Wozo Defendants; or

e.     That consumers who ordered a "free" poster from the Wozo Website and did not cancel their monthly membership in the Wozo poster club within the four-day window would be charged a $29.99 monthly membership fee on the debit or credit card provided to the Wozo Defendants for the purpose of paying for the 99-cent shipping fee.

72.     Plaintiff and the Wozo Class members submitted their orders for a "free" poster from the Wozo Website without receiving adequate disclosure that they would be automatically enrolled in the Wozo poster club, and that they had to cancel their membership within four (4) days in order to avoid any charges related thereto, or that failure to cancel within the 4-day window would result in a charge of $29.99 to their debit or credit cards.

73.     The Wozo Defendants caused the debit and credit cards submitted by Plaintiff and the Wozo Class members to be charged for a monthly membership in the Wozo poster club.

74.     The Wozo Defendants' conduct described herein constituted unfair and deceptive acts or practices and thus violated M.G.L. c. 93A § 2.

75.     More specifically, the Wozo Defendants' representations to Plaintiff and the Wozo Class members regarding the "free" poster promotion violated at least the following General Regulations of the Massachusetts Attorney General:

a)      940 C.M.R. 3.02(2) by making statements in an advertisement that misrepresent the offered product in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised product to another;

b)       940 C.M.R. 3.04 by making claims that have the tendency of deceiving buyers as to the value or price of a product;

c)      940 C.M.R. 3.05(1), 3.16(2) and 6.04(2) by failing to adequately disclose relevant information concerning a product, which failure has the capacity or tendency or effect of deceiving buyers or prospective buyers in a material respect;

d)      940 C.M.R. 3.05(2) by employing an advertisement that misleads or tends to mislead buyers or prospective buyers as to the product being offered for sale;

e)      940 C.M.R. 3.06(3) by concealing or disguising the obligation or contract involved or falsely representing that the plan does not involve any obligation or contract;

f)      940 C.M.R. 3.13(1)(a)(1) by failing to disclose to a buyer prior to the agreement the price or cost of any services to be provided;

g)      940 C.M.R. 3.13(2) by representing or implying, in advertising or otherwise, that a product may be purchased for a specified price when such is not the case;

h)    940 C.M.R. 3.13(3) by offering a product at a price less than the cost thereof to the Wozo Defendants as a "loss leader" used in inducing the buyer to make the purchase and sold only in combination with the purchase of other merchandise or services on which the seller recovers such loss;

i)    940 C.M.R. 3.13(4)(a) by failing to clearly and conspicuously disclose to a buyer, prior to the consummation of a transaction, the exact nature and extent of the Wozo Defendants' refund, return, or cancellation policy;

j)    940 C.M.R. 3.16(1) by engaging in oppressive or unconscionable acts or practices;

k)    940 C.M.R. 6.03(2) by using advertisements which are untrue, misleading, deceptive, fraudulent, or insincere offers to sell; and

l)    940 C.M.R. 6.04(1) by making material representations in advertising that the Wozo Defendants know or should know are false or misleading or have the tendency or capacity to be misleading.

76.    The Wozo Defendants' violation of the regulations enumerated in the preceding paragraph also violates M.G.L. c. 93A § 2(a) because regulations promulgated by the Massachusetts Attorney General under c. 93A § 2(c) provide that any act or practice violates Chapter 93A, § 2 if "It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection…" 940 C.M.R. § 3.16(3).

77.    As alleged herein, the Wozo Defendants also violated the EFTA by making electronic fund transfers from the accounts of Plaintiff and the Debit Class

members without first obtaining their valid authorization in writing, without providing them with a copy of any purported written authorization, and without disclosing the terms and conditions thereof in readily understandable language.

78.     Pursuant to the EFTA, 15 U.S.C. § 1693o(c), every violation of the EFTA constitutes a violation of the Federal Trade Commission Act ("the FTC Act"), 15 U.S.C. § 45(a).

79.     Pursuant to M.G.L. c. 93A § 2(b), in construing M.G.L. c. 93A § 2(a), "the courts will be guided by the interpretations" of unfair and deceptive acts or practices in the conduct of any trade or commerce given by the Federal Trade Commission to the FTC Act.

80.     Every violation of the EFTA by the Wozo Defendants, as alleged herein, thus constitutes a violation of the FTC Act and, in turn, a violation of M.G.L. 93A § 2(a).

81.     The violations of M.G.L. c. 93A § 2(a) by the Wozo Defendants were done willfully, knowingly, and in bad faith.

82.     As a direct and proximate result of the conduct of the Wozo Defendants, Plaintiff and the Wozo Class members were harmed.

83.     On January 13, 2011, Plaintiff, by and through his attorneys, sent the Wozo Defendants, and each of them, a written demand for relief pursuant to M.G.L. c. 93A § 9, identifying the claimants and reasonably describing the unfair acts or practices relied upon and the injuries suffered.

84.     As of the date of this Complaint, the Wozo Defendants, and each of them, have refused to make a reasonable offer of relief to Plaintiff or the Wozo Class.  This

refusal to grant relief was made in bad faith with knowledge or reason to know that the acts of the Wozo Defendants violated M.G.L. c. 93A § 2(a).

85.     As a result of the Wozo Defendants' violations of M.G.L. c. 93A §§ 2(a), 9, the Wozo Defendants are liable to Plaintiff and the Wozo Class for up to three times the damages that Plaintiff and the Wozo Class incurred, or at the very least the statutory minimum award of $25, together with all related court costs and attorneys' fees.

## SECOND CAUSE OF ACTION

### Violation of M.G.L. c. 93A

### (By Plaintiff on Behalf of the Super Rewards Class Against Adknowledge)

86.     Plaintiff, individually and on behalf of the members of the Super Rewards Class, herein realleges and incorporates by reference all of the allegations set forth above in the preceding Paragraphs.

87.     At all relevant times, Adknowledge was engaged in trade or commerce within the Commonwealth of Massachusetts, including the trade or commerce of engaging in promotional partnerships with Massachusetts-based entities and providing Internet-based services to Massachusetts residents.

88.     In or about 2010, Adknowledge created, developed and placed banners and other advertisements on the Internet offering a free poster and Super Rewards Points to consumers for a 99-cent shipping fee, which advertisements did <u>not</u> adequately disclose the following information:

     a.     The existence of a second product that had to be ordered along with the "free" poster, specifically, a monthly membership in the Wozo poster club;

b.      That consumers who ordered a "free" poster from the Wozo Website would be automatically charged for a monthly membership in the Wozo poster club;

c.      That consumers who ordered a "free" poster from the Wozo Website had to cancel their monthly membership in the Wozo poster club within four (4) days of ordering a "free" poster in order to avoid any charges related to their monthly membership in the Wozo poster club;

d.      That the debit or credit card information submitted by consumers who ordered a "free" poster from the Wozo Website would be retained by the Wozo Defendants; or

e.      That consumers who ordered a "free" poster from the Wozo Website and did not cancel their monthly membership in the Wozo poster club within the four-day window would be charged a $29.99 monthly membership fee on the debit or credit card provided to the Wozo Defendants for the purpose of paying for the 99-cent shipping fee.

89.     Plaintiff and the Super Rewards Class members saw one of Adknowledge's advertisements on the Internet offering a free poster and Super Rewards Points to consumers for a 99-cent shipping fee and, in response thereto and as a direct and proximate result thereof, Plaintiff and the Super Rewards Class members ordered a "free" poster from the Wozo Website.

90.     None of the web pages necessarily accessed by Plaintiff or the Super Rewards Class members in the process of completing their orders for a "free" poster and Super Rewards Points adequately disclosed any of the following information:

a.     The existence of a second product that had to be ordered along with the "free" poster, specifically, a monthly membership in the Wozo poster club;

b.     That consumers who ordered a "free" poster from the Wozo Website would be automatically charged for a monthly membership in the Wozo poster club;

c.     That consumers who ordered a "free" poster from the Wozo Website had to cancel their monthly membership in the Wozo poster club within four (4) days of ordering a "free" poster in order to avoid any charges related to their monthly membership in the Wozo poster club;

d.     That the debit or credit card information submitted by consumers who ordered a "free" poster from the Wozo Website would be retained by the Wozo Defendants; or

e.     That consumers who ordered a "free" poster from the Wozo Website and did not cancel their monthly membership in the Wozo poster club within the four-day window would be charged a $29.99 monthly membership fee on the debit or credit card provided to the Wozo Defendants for the purpose of paying for the 99-cent shipping fee.

91.     Plaintiff and the Super Rewards Class members submitted their orders for a "free" poster and Super Rewards Points without receiving adequate disclosure that they would be automatically enrolled in the Wozo poster club, that they had to cancel their membership within four (4) days in order to avoid any charges related thereto, or that failure to cancel within the 4-day window would result in a charge of $29.99 to their debit or credit cards.

92.     The debit and credit cards submitted by Plaintiff and the Super Rewards Class members were subsequently charged for membership in the Wozo poster club.

93.     Adknowledge's conduct described herein constituted unfair and deceptive acts or practices and thus violated M.G.L. c. 93A § 2.

94.     More specifically, Adknowledge's representations to Plaintiff and the Super Rewards Class members regarding the "free" poster and Super Rewards Points promotion violated at least the following General Regulations of the Massachusetts Attorney General:

a)      940 C.M.R. 3.02(2) by making statements in an advertisement that misrepresent the offered product in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised product to another;

b)       940 C.M.R. 3.04 by making claims that have the tendency of deceiving buyers as to the value or price of a product;

c)      940 C.M.R. 3.05(1), 3.16(2) and 6.04(2) by failing to adequately disclose relevant information concerning a product, which failure has the capacity or tendency or effect of deceiving buyers or prospective buyers in a material respect;

d)      940 C.M.R. 3.05(2) by employing an advertisement that misleads or tends to mislead buyers or prospective buyers as to the product being offered for sale;

e)      940 C.M.R. 3.06(3) by concealing or disguising the obligation or contract involved or falsely representing that the plan does not involve any obligation or contract;

      f)     940 C.M.R. 3.13(2) by representing or implying, in advertising or otherwise, that a product may be purchased for a specified price when such is not the case;

      g)    940 C.M.R. 3.13(3) by offering a product at a price less than the cost thereof to Adknowledge as a "loss leader" used in inducing the buyer to make the purchase and sold only in combination with the purchase of other merchandise or services on which the seller recovers such loss;

      h)    940 C.M.R. 3.16(1) by engaging in oppressive or unconscionable acts or practices;

      i)     940 C.M.R. 6.03(2) by using advertisements which are untrue, misleading, deceptive, fraudulent, or insincere offers to sell; and

      j)     940 C.M.R. 6.04(1) by making material representations in advertising that Adknowledge knows or should know that are false or misleading or have the tendency or capacity to be misleading.

95.     Adknowledge's violation of the regulations enumerated in the preceding paragraph also violates M.G.L. c. 93A § 2(a) because regulations promulgated by the Massachusetts Attorney General under c. 93A § 2(c) provide that any act or practice violates Chapter 93A, § 2 if "It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection…" 940 C.M.R. § 3.16(3).

96.     The violations of M.G.L. c. 93A § 2(a) by Adknowledge were done willfully, knowingly, and in bad faith.

97.     As a direct and proximate result of the conduct of Adknowledge, Plaintiff and the Super Rewards Class members were harmed.

98.     On January 13, 2011, Plaintiff, by and through his attorneys, sent Adknowledge a written demand for relief pursuant to M.G.L. c. 93A § 9, identifying the claimants and reasonably describing the unfair acts or practices relied upon and the injuries suffered.

99.     As of the date of this Complaint, Adknowledge has refused to make a reasonable offer of relief to Plaintiff or the Super Rewards Class.  This refusal to grant relief was made in bad faith with knowledge or reason to know that the acts of Adknowledge violated M.G.L. c. 93A § 2(a).

100.    As a result of Adknowledge's violations of M.G.L. c. 93A §§ 2(a), 9, Adknowledge is liable to Plaintiff and the Super Rewards Class for up to three times the damages that Plaintiff and the Super Rewards Class incurred, or at the very least the statutory minimum award of $25, together with all related court costs and attorneys' fees.

### THIRD CAUSE OF ACTION

**Violation of 15 U.S.C. § 1963 et seq.**

**(By Plaintiff on Behalf of the Debit Class Against Wozo and Tatto)**

101.    Plaintiff, individually and on behalf of the members of the Debit Class, herein realleges and incorporates by reference all of the allegations set forth above in the preceding Paragraphs.

102.    The purpose of the EFTA is "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems."

15 U.S.C. § 1693.  The primary objective of the EFTA "is the provision of individual consumer rights." *Id.*

103.   The EFTA defines "account," in relevant part, as "a demand deposit, savings deposit, or other asset account . . . established primarily for personal, family, or household purposes." 15 U.S.C. § 1693a(2).

104.   The EFTA defines "consumer" as "a natural person." 15 U.S.C. § 1693a(5).

105.   The EFTA defines "electronic fund transfer," in relevant part, as "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account." 15 U.S.C. § 1693a(6).

106.   The EFTA defines "preauthorized electronic fund transfer," in relevant part, as "an electronic fund transfer authorized in advance to recur at substantially regular intervals." 15 U.S.C. § 1693a(9).

107.   The EFTA requires, in relevant part, that "[t]he terms and conditions of electronic fund transfers involving a consumer's account shall be disclosed at the time the consumer contracts for an electronic fund transfer service…." 15 U.S.C. § 1693c(a).

108.   The EFTA requires, in relevant part, that "[a] preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." 15 U.S.C. § 1693e(a).

109.    Section 205.10(b) of what is known as "Regulation E," 12 C.F.R. § 205.10(b), provides that, for purposes of the EFTA, "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer.  The person that obtains the authorization shall provide a copy to the consumer."

110.    Plaintiff and the Debit Class members each maintained an "account" as that term is defined in 15 U.S.C. § 1693a(2).

111.    Plaintiff and the Debit Class members are each "consumers" within the meaning of 15 U.S.C. § 1693a(5).

112.    As alleged herein, the Wozo Defendants engaged in "preauthorized electronic fund transfers," as that term is defined in 15 U.S.C. § 1693a(9), by electronically debiting funds, in the form of the monthly membership fee, from the accounts of Plaintiff and the Debit Class members on a monthly or other substantially regular basis.

113.    As alleged herein, the Wozo Defendants violated 15 U.S.C. § 1693e(a) by making electronic fund transfers from the accounts of Plaintiff and the Debit Class members without first obtaining their valid authorization in writing.

114.    As alleged herein, the Wozo Defendants violated 15 U.S.C. § 1693e(a) and 12 C.F.R. § 205.10(b) by making electronic fund transfers from the accounts of Plaintiff and the Debit Class members without providing them with a copy of any purported written authorization.

115.   As alleged herein, the Wozo Defendants violated 15 U.S.C. § 1693c(a) by making electronic fund transfers from the accounts of Plaintiff and the Debit Class members without adequately disclosing the terms and conditions thereof.

116.   As a direct and proximate result of the conduct of the Wozo Defendants, Plaintiff and the Debit Class members were harmed.

117.   Plaintiff, individually and on behalf of the Debit Class, seeks actual damages, statutory damages, and costs of suit, including reasonable attorneys' fees, under 15 U.S.C. § 1693m.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated as described herein, prays for relief as follows:

1.   For an order certifying the proposed  classes and under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel of record to represent the classes;

2.   For actual damages under 15 U.S.C. § 1693m;

3.   For treble damages under M.G.L. c. 93A § 9;

4.   For statutory damages under M.G.L. c. 93A § 9 and 15 U.S.C. § 1693m;

5.   For attorneys' fees and costs of suit under M.G.L. c. 93A § 9 and 15 U.S.C. § 1693m;

6.   For prejudgment and post-judgment interest at the highest rate provided by law; and

7.   For such other relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a trial by jury on all counts so triable.

Dated : February 14, 2011

By: _Todd S. Heyman by RED_

Todd S. Heyman (BBO # 643804)
Robert E. Ditzion (BBO # 660962)
SHAPIRO, HABER & URMY LLP
53 State Street
Boston, MA 02109
Tel: (617) 439-3939
Fax: (617) 439-0134
theyman@shulaw.com
rditzion@shulaw.com

Karl S. Kronenberger
(*pro hac vice* pending)
KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
Tel: (415) 955-1155
Fax: (415) 955-1158
karl@KBInternetLaw.com

Attorneys for Plaintiff and the Classes