# IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

SUK JAE CHANG, individually and on behalf
of classes of similarly situated persons,

       *Plaintiff,*

   *v.*

WOZO, LLC, TATTO, INC., and
ADKNOWLEDGE, INC.,

       *Defendants*.

Case No. 11-CV-10245

### DEFENDANTS WOZO, LLC'S AND TATTO, INC.'S
### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
### <u>MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>

## TABLE OF CONTENTS

I.   FACTUAL AND PROCEDURAL BACKGROUND ...................................................1

   A.   Plaintiff's Allegations.................................................................................2

       i.    Defendants' Purported Roles in the Conduct at Issue ................................2

       ii.   Promotion of and Enrollment in Wozo's Poster of the Month Club ..........3

       iii.  Plaintiff Suk Jae Chang................................................................................4

       iv.   Wozo is not Tatto's Alter Ego ....................................................................4

   B.   Defendants Made a Reasonable Tender Offer of Settlement to Plaintiff
        Pursuant to Mass. Gen. Law ch. 93A § 9(3A), which Plaintiff Rejected ..........5

II.  LEGAL STANDARD ......................................................................................6

   A.   Standard on a Rule 12(b)(1) Motion to Dismiss...............................................6

   B.   Legal Standard on a Rule 12(b)(6) Motion to Dismiss ....................................7

III. ARGUMENT ................................................................................................8

   A.   Plaintiff's Claims Were Mooted by Wozo's Reasonable
        Offer of Settlement.....................................................................................8

       i.    The Claims of the Putative Class Must be Dismissed as Well ................10

       ii.   To the Extent Plaintiff's Claims have not been Mooted, His
             Recovery Should be Limited to Wozo's Reasonable Offer of
             Settlement ................................................................................................11

   B.   Even if Plaintiff's Claims were not Mooted by Wozo's Offer of Settlement,
        He Has Not Pleaded Nor Can He Plead a Cause of Action for Violations
        of Mass. Gen. Law c. 93A § 2 ......................................................................12

   C.   Plaintiff has not and Cannot Properly Plead a Cause of Action Under the
        Electronic Funds Transfer Act because the Complaint Shows He
        Authorized the Payments at Issue ..................................................................13

   D.   As a Final Matter, the Court Should Not Permit Plaintiff to Pierce the
        Corporate Veil:  Plaintiff has Failed to Properly Allege that Defendant
        Wozo is an Alter-ego of Tatto ........................................................................15

**IV.     CONCLUSION** ............................................................................................................20

# TABLE OF AUTHORITIES

## United States Supreme Court:

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ..........................................................10 n.10

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ........................................................................... 7-8

*Baily v. Patterson*, 369 U.S. 31 (1962) ...................................................................................10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................ 7-8

*County of Los Angeles v. Davis*, 440 U.S. 625 (1979) .............................................................8

*Devlin v. Scardlletti*, 536 U.S. 1 (2002) ................................................................................10

*Lewis v. Continental Bank Corp.*, 494 U.S. 472 (1990) ...........................................................8

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) ..............................................................7

*Powell v. McCormack*, 395 U.S. 486 (1969) ..........................................................................8

*Sosna v. Iowa*, 419 U.S. 393 (1975) ...............................................................................11 n.11

## United States Circuit Court of Appeals Cases:

*Anderson v. U.S. Pension Plan*, 515 F.3d 823 (8th Cir. 2008) ...............................................10

*Arnold v. Panora*, 593 F.2d 161 (1st Cir. 1979) ...................................................................10

*Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.,* 111 F.3d 1322 (7th Cir. 1997) ...............13

*Brown v. Philadelphia Housing Authority*, 350 F.3d 338 (3d Cir. 2003) ..................................10

*Comer v. Cisneros*, 37 F.3d 775 (2nd Cir. 1994) ..............................................................9 n.8

*Doyle v. Hasbro, Inc.*, 103 F.3d 186 (1st Cir. 1996) ..............................................................16

*Gates v. City of Chicago*, 623 F.3d 389 (7th Cir. 2010) ..........................................................8

*Holstein v. City of Chicago*, 29 F.3d 1145 (7th Cir. 1994) .......................................................9

*Jackson v. Marion County,* 66 F.3d 151 (7th Cir. 1995) ........................................................15

*Me. People's Alliance & Natural Res. Def. Council v. Mallinckrodt, Inc.,*
    471 F.3d 277 (1st Cir. 2006) ...............................................................................................7

*Murphy v. United States,* 45 F.3d 520 (1st Cir. 1995) ..................................................7

*Rand v. Monsanto Co.*, 926 F.2d 596 (7th Cir. 1991) ...................................................9

*Rocky v. King*, 900 F.2d 864 (5th Cir. 1990) ................................................................

*Rodi v. S. New England Sch. of Law,* 389 F.3d 5 (1st Cir. 2004) .................................16

*Ross v. Bolton*, 904 F.2d 819 (2d Cir. 1990)................................................................16

*Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co.*, 976 F.2d 58 (1st Cir. 1992) ...............15

*Semegen v. Weidner*, 780 F.2d 727 (9th Cir. 1985)......................................................16

*Thorpe v. Mut. of Omaha Ins. Co.*, 984 F.2d 541 (1st Cir. 1993)........................10 n.10

*United Seniors Ass'n, Inc. v. Philip Morris USA*, 500 F.3d 19 (1st Cir. 2007) .........6-7

*United States v. Union Bank for Sav. & Inv.,* 487 F.3d 8 (1st Cir. 2007).......................7

*Valentin v. Hosp. Bella Vista,* 254 F.3d 358 (1st Cir. 2001) .........................................6

*Wilson v. Sec. of Health and Human Servs.*, 671 F.2d 673 (1st Cir. 1982).................10

**United States District Court Cases:**

*Crisp Human Capital Ltd. v. Authoria, Inc.*, 613 F. Supp. 2d 136 (D. Mass. 2009).......16, 16 n.12

*Declude, Inc. v. Perry*, 593 F. Supp. 2d 290 (D. Mass. 2008)...........................................

*Edelkind v. Fairmont Funding, Ltd.*, 539 F. Supp. 2d 449 (D. Mass. 2008) ..................6

*George Hyman Constr. Co. v. Gateman,* 16 F. Supp. 2d 129 (D. Mass. 1998)..................... 18-19

*Martin v. Mead Johnson Nutrition Co.*, CIV A 09-11609,
    2010 WL 3928707 (D. Mass. Sept. 30, 2010) .......................................16 n.12

*TechTarget, Inc. v. Spark Design, LLC*, CIV.A.10-11266-WGY,
    2010 WL 4269602 (D. Mass. Oct. 27, 2010)..................................................18

**State Court Cases:**

*Attorney General v. M.C.K., Inc.,* 432 Mass. 546 (2000) ............................................18

*Evans v. Multicon Constr. Corp.,* 30 Mass. App. Ct. 728 (Mass. App. Ct. 1991).................. 17-20

*Hershenow v. Enter Rent-A-Car Co. of Boston, Inc.*, 445 Mass. 790 (2006) .......................... 12-13

*Kohl v. Silver Lake Motors, Inc.*, 369 Mass. 795 (1976) ............................................................12

*Leardi v. Brown,* 394 Mass. 151 (1985) ............................................................................ 12-13

*My Bread Baking Co. v. Cumberland Farms, Inc.,* 353 Mass. 614 (1968) ...................................17

*PMP Assoc., Inc. v. Globe Newspaper Co.*, 366 Mass. 593 (1975).............................................12

*Scott v. NG U.S. 1, Inc.*, 450 Mass. 760 (2008) ....................................................................17-18

**<u>Constitutional, Statutory, and Regulatory Provisions</u>:**

U.S. Const. Art. III § 2 .................................................................................................................8

Fed. R. Civ. P. 9 .........................................................................................................................15

Fed. R. Civ. P. 12 ....................................................................................................................6-7

Fed. R. Civ. P. 23 ...........................................................................................................10 n.10

Mass. Gen. Laws c. 93A § 2 .......................................................................................................12

Mass. Gen. Laws c. 93A § 9 .......................................................................................................11

12 C.F.R. § 205.1 .......................................................................................................................13

12 C.F.R. Pt. 205, Supp. I, § 10 .................................................................................................15

15 U.S.C. § 1693e .......................................................................................................................13

15 U.S.C. § 7006.........................................................................................................................15

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

Plaintiff Suk Jae Chang's First Amended Complaint (the "Complaint") must be dismissed with prejudice because Plaintiff lacks standing to pursue his claims.  That is, prior to filing the Complaint, Plaintiff received a settlement tender from Defendant Wozo, LLC ("Wozo"), which provided all of the relief to which he would be entitled if he were to prevail at trial, thereby mooting his claims.  Accordingly, there is no case or controversy for the Court to consider as required by Article III of the United States Constitution.

Even if Plaintiff had standing to pursue his claims—which he does not—the claims should still be dismissed because the factual allegations, even when taken as true, do not plausibly suggest that Plaintiff is entitled to relief.  Likewise, the allegations pertaining to Tatto, Inc.'s ("Tatto") purported involvement in the challenged conduct are so lacking in substantive content that Plaintiff's attempt to pierce the corporate veil through an alter ego theory is likewise just not plausible on its face.  And, as those claims ultimately sound in fraud, they are subject to, but fail to satisfy, Rule 9(b)'s heightened pleading requirement.[1]

For these reasons and as explained further below, Defendants Wozo and Tatto hereby respectfully move the Court for an order dismissing Plaintiff's Complaint with prejudice as to them both pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On February 14, 2011, Plaintiff Chang filed his original class action complaint against

---

[1]      Indeed, a majority of the allegations contained in the Complaint begin with the phrase "upon information and belief."  While such allegations are not necessarily improper, the frequency with which Plaintiff uses the phrase serves to highlight the deficiencies in his understanding of the facts at issue here.

Defendants.  Thereafter, on April 15, 2011, Plaintiff filed a First Amended Complaint,[2] alleging

causes of action against Defendants Wozo and Tatto for purported violations of Mass. Gen. Law

ch. 93A § 2 and the Electronic Funds Transfer Act, 15 U.S.C. §§ 1693, *et seq.* ("EFTA").  (Dkt.

No. 23.)  As discussed herein, the Complaint fails to meet federal pleading standards and suffers

from numerous substantive infirmities, which ultimately require its dismissal.

A.     **Plaintiff's Allegations.**[3]

i.     <u>Defendants' Purported Roles in the Conduct at Issue</u>.

Defendant Wozo is an online marketing company, formed under the laws of the state of

Delaware and now operating in Boston, Massachusetts.  (Compl. ¶ 8.)  At all relevant times,

Wozo was in the business of operating and promoting a "poster of the month club," through

which it offered a subscription-based service whereby, in exchange for a monthly fee, Wozo

provided members two posters of "popular music, television, film, and sports figures" each

month for the duration of their membership.  (Compl. ¶¶ 40-41.)

Tatto is an online marketing company also based in Boston, Massachusetts.  (Compl. ¶

9.)  Despite Plaintiff's attempts to cast Tatto as the evil puppet master, its business is focused on

loftier goals; namely, the development and implementation of proprietary advertising technology

through which it "deliver[s] billions of targeted advertisements" to a diverse group of retail and

other business clients.  Indeed, Tatto is ranked by comScore as one of the top companies of its

---

[2]     The Complaint is silent as to whether Plaintiff seeks to represent a nationwide or more limited class of individuals.

[3]     The alleged facts in this section are recited from Plaintiff's Complaint.  Such facts are accepted as true solely for purposes of this motion and their recitation herein should not be construed as an admission of their veracity.  Indeed, Wozo and Tatto dispute nearly all of the allegations made in the Complaint.

kind for worldwide reach and is "on track to become the world's largest online advertising company, reaching more than 50% of the Internet."[4]

Defendant Adknowledge, Inc. ("Adknowledge") is a Missouri corporation with offices in Kansas City, Los Angeles, San Francisco, and New York.  (Compl. ¶ 10.)  For its part, Adknowledge is itself an online advertising network, connecting its clients "with consumers across multiple channels, including email, search, domains, and social networks."[5]  As a part of that business, Adknowledge operates a platform known as Super Rewards, through which it offers virtual online currency or "Super Rewards points" to consumers across the globe.  (Compl. ¶ 59.)  Super Rewards points, like most other virtual currency, can be used within numerous online games for the purchase of in-game items and the like.  (Compl. ¶ 58.)

      ii.     <u>Promotion of and Enrollment in Wozo's Poster of the Month Club</u>.

According to the Complaint, all Defendants worked together to "charge consumers for a monthly membership in [Wozo's] poster club at a cost of $29.99 without adequately disclosing" the material terms and conditions of that membership.  (Compl. ¶ 1.)  Defendants purportedly promoted the club through an online "offer for a 'free' poster…[at the cost of] a 99-cent shipping charge" and a bonus pack of Adknowledge's Super Rewards points.  (Compl. ¶¶ 1, 3.)  Those efforts are said to have included the joint "creat[ion], develop[ment], and place[ment] [of] banners and other advertisements on the Internet…."  (Compl. ¶¶ 42-43.)

Despite contending that the Wozo web pages failed to give sufficient detail of the poster club's terms and conditions, Plaintiff submits numerous screen shots of those pages, which show that all club members were informed (prior to enrollment) that additional terms and conditions applied to their transaction and were in fact required to check a box indicating, "that [they]

---

[4]      *See http://tattomedia.com/about_us/company.php*

[5]      *See http://www.adknowledge.com/about-us*

agree[d] to all [such] terms and conditions…." (Compl. ¶ 47.) Plaintiff even points out that Wozo has gone so far as to supplement its terms and conditions with specific descriptions of "the cost of the monthly membership, and a statement that consumers' debit and credit cards would be automatically charged for the membership…." (Compl. ¶¶ 53-54.)

   iii. <u>Plaintiff Suk Jae Chang</u>.

  Plaintiff Chang is allegedly a former member of Wozo's post of the month club who, "[i]n or about October 2010…saw an Internet advertisement for the Wozo Website stating that he could earn Super Rewards Points and obtain a free poster by paying a 99-cent shipping fee." (Compl. ¶ 73.) Upon viewing that advertisement, Plaintiff followed the links to the Wozo website, where he selected a poster of his choosing and submitted his debit card to complete the transaction. (Compl. ¶¶ 73-74.) Notably, Plaintiff does not contend that Wozo failed to provide him the selected poster or the Super Rewards points it promised in the advertisement. Rather, Plaintiff claims that he did not agree to pay the club's monthly membership fee; despite its disclosure and once again, never alleging that Wozo failed to deliver upon the promised membership benefits. (Compl. ¶¶ 1, 41, 74.)

   iv. <u>Wozo is not Tatto's Alter Ego</u>.

  Finally, despite recognizing that Wozo and Tatto exist as separate corporate entities, Plaintiff mistakenly concludes that Wozo is nothing more than an alter ego through which Tatto attempted to operate a fraudulent business with impunity. (Compl. ¶¶ 8-9, 24.) That contention does not find factual support in Plaintiff's allegations. Instead, the Complaint tersely asserts, on information and belief, that Wozo and Tatto share the same corporate officers, that "in or about Fall 2009, Tatto acquired the domain <wozo.com>…[,]" which it later sold to Wozo, and from there concludes that "on or about July 26, 2010…[Tatto] formed Wozo as a device to avoid

liability by substituting a [sic] under-capitalized limited liability company in [its] place….”
(Compl. ¶¶ 20-22.)

Additionally, in what appears to be nothing more than an attempt to defame Tatto and its
founders, the Complaint now includes supposed descriptions of various conference rooms and
offices "full of returned posters;" a lengthy discussion of Tatto's business ventures and activities
completely unrelated to Wozo and this case; and inflammatory personal attacks against Tatto's
founders regarding their alleged treatment of Wozo customers.  (Compl. ¶¶ 21, 26, 29-36.)  With
nothing more than mere conclusions, Plaintiff alleges, "[o]n information and belief, [that Tatto
officers Lin] Miao and Bachman were responsible for" and controlled the conduct at issue here.
(Compl. ¶ 30.)  Notably absent from the Complaint, however, are any allegations that there was
intermingling of the businesses' assets, that there was a failure to observe corporate formalities,
that the companies have failed to keep appropriate records, and a host of other characteristics
required to make a showing of alter ego status.  As explained further below, even accepted as
true, Plaintiff's allegations are insufficient to hold Tatto liable for Wozo's alleged conduct here.

**B.    Defendants Made a Reasonable Tender Offer of Settlement to Plaintiff Pursuant to Mass. Gen. Law ch. 93A § 9(3A), which Plaintiff Rejected.**

Prior to filing the instant lawsuit, on January 13, 2011, Plaintiff mailed a settlement
demand to Defendants Wozo and Tatto pursuant to Mass. Gen. Law c. 93A.  (*See* Chang
Demand Letter, a true and accurate copy of which is attached hereto as Exhibit 1-A to the
Declaration of Daniel J. Urman.)[6]  In his letter, Plaintiff demanded compensation on his own
behalf and on behalf of a putative class of individuals, for Defendants' alleged violations of
section 2(a) of the Massachusetts unfair competition law.  (Ex. 1-A, p. 1.)  According to the
letter, Plaintiff and the putative class were improperly charged the poster club's monthly

---

[6]     A true and accurate copy of the Declaration of attorney Daniel J. Urman is attached hereto as Exhibit 1.

membership fee and are therefore, entitled to "the maximum damages permitted by law, including at a minimum the $25 statutory damages per Class members [sic], together with all related costs and attorneys' fees…incurred to date…."  (Ex. 1-A, p. 3.)

Notwithstanding its belief that Plaintiff's claims lack any merit, in an effort to avoid protracted litigation on these issues and the uncertainty attendant therewith, on February 11, 2011, Wozo responded to the demand with a reasonable offer of settlement to Plaintiff, in his individual capacity, in the amount of $350.  (*See* Letter to Plaintiff's Counsel, a true and accurate copy of which is attached hereto as Exhibit 1-B to the Urman Declaration.)  That settlement offer was calculated to provide Plaintiff the maximum possible recovery he would be entitled to if successful at trial, including the alleged $29.99 charge he incurred, the initial $0.99 shipping and handling fee he paid, treble damages, and interest and costs.  Additionally, Wozo offered to reimburse Plaintiff for all reasonable attorneys' fees and expenses he had incurred to the date of the offer.[7]  (Ex. 1-B, p. 2.)

On March 1, 2011, Plaintiff formally rejected Wozo's settlement offer—two weeks after filing the instant lawsuit.  (*See* Chang Rejection Letter, a true and accurate copy of which is attached hereto as Exhibit 1-C to the Urman Declaration.)

## II.    LEGAL STANDARD

### A.    Standard on a Rule 12(b)(1) Motion to Dismiss.

"A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is appropriate when the plaintiff lacks standing to bring the claim." *Edelkind v. Fairmont Funding, Ltd.*, 539 F. Supp. 2d 449, 453 (D. Mass. 2008) (citing, *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001)); *see also United Seniors Ass'n, Inc. v. Philip Morris USA*, 500

---

[7]       Wozo requested that Plaintiff's counsel provide their billing records and lodestar up to the date of the offer in order to determine the actual amount of attorneys' fees to which Plaintiff was entitled.  (Ex. 1-B, p. 2.)

F.3d 19, 23 (1st Cir. 2007) (Article III and statutory-standing arguments, which call into question the Court's subject-matter jurisdiction, rest on Rule 12(b)(1)).   Thus, where such a challenge is raised, the Court is "required to determine whether Article III jurisdiction exists prior to proceeding to the merits of the case." *Id.* (citing, *United States v. Union Bank for Sav. & Inv.,* 487 F.3d 8, 22 (1st Cir. 2007)).   In deciding such a motion, courts must narrowly construe their jurisdiction and the party asserting jurisdiction has the burden of demonstrating its propriety. *Murphy v. United States,* 45 F.3d 520, 522 (1st Cir. 1995).

Article III standing requirements "are expressed in a familiar three-part algorithm: a would-be plaintiff must demonstrate a concrete and particularized injury in fact, a causal connection that permits tracing the claimed injury to the defendant's actions, and a likelihood that prevailing in the action will afford some redress for the injury." *Me. People's Alliance & Natural Res. Def. Council v. Mallinckrodt, Inc.,* 471 F.3d 277, 283 (1st Cir. 2006) (citing, *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)).   If a complaint fails to satisfy all three requirements, the Court must dismiss the action for lack of subject matter jurisdiction. *United Seniors Ass'n*, 500 F.3d at 23.

### B.       Legal Standard on a Rule 12(b)(6) Motion to Dismiss.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Complaints containing "mere conclusory statements" or "'naked assertion[s] devoid of 'further factual enhancement'" will not suffice. *Id.* (quoting, *Twombly*, 550 U.S. at 557).   While a complaint "does not require 'detailed factual allegations,'" it requires enough specific "factual content [to] allow [] a reasonable inference that the defendant is liable" for an injury to the plaintiff. *Id.*   A reasonable inference of liability

7

requires more than a "sheer possibility" that the plaintiff will be entitled to relief." *Iqbal*, 129 S.

Ct. at 1949; *see also Twombly*, 550 U.S. at 555 ("Factual allegations [in a complaint] must be

enough to raise a right to relief above the speculative level").  "Where a complaint pleads facts

that are *merely consistent* with a defendant's liability, it stops short of the line between

possibility and plausibility of entitlement to relief." *Id.* (internal citations and quotations

omitted) (emphasis added).

## III.   ARGUMENT

### A.   Plaintiff's Claims Were Mooted by Wozo's Reasonable Offer of Settlement.

Plaintiff's claims are moot and the Complaint must be dismissed because, prior to filing

this lawsuit, Plaintiff received a reasonable offer of settlement from Wozo, which afforded him

all of the relief he could obtain if he were to prevail at trial.  Moreover, by his own allegations,

Defendants are fully disclosing all material terms of Wozo's poster offers and thus there is no

ongoing risk to consumers.  Accordingly, as there is no longer a case or controversy within the

meaning of Article III, Plaintiff's claims must be dismissed with prejudice.

Article III of the United States Constitution limits the jurisdiction of the federal courts to

actual "cases or controversies."  U.S. Const. Art. III § 2.  This requires that both litigants have a

personal interest in the case throughout its entirety.  *Lewis v. Continental Bank Corp.*, 494 U.S.

472, 477 (1990).  A case is moot when the issues presented are no longer "live;" that is, when

there is "no reasonable expectation that the alleged violation will recur" and "interim events have

completely and irrevocably eradicated the effects of the alleged violation." *County of Los*

*Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Powell v. McCormack*, 395 U.S. 486, 496

(1969).  Courts have consistently held that a case is properly dismissed as moot when a

defendant satisfies a plaintiff's demand for relief.  *Gates v. City of Chicago*, 623 F.3d 389 (7th

Cir. 2010); *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994); *Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir. 1991).[8]

Here, Wozo has satisfied Chang's entire demand. In response to Chang's demand pursuant to M.G.L. c. 93A—within section 9(3)'s thirty-day statutory window and before Plaintiff filed suit—Wozo offered Plaintiff the sum of $350 and his reasonable attorneys' fees and expenses incurred in this matter. That settlement offer was calculated to provide Plaintiff the maximum possible recovery to which he would be entitled if successful at trial, including the alleged $29.99 charge he incurred, the initial $0.99 shipping and handling fee he paid, treble damages, and interest and costs.[9]

Plaintiff also has no reasonable expectation that Defendants' alleged misconduct will recur and he even alleges as much in his Complaint. According to his own allegations, "Defendants … changed the website for the promotion to more accurately disclose the nature of the transaction[,]" including "the existence of the monthly membership, the cost of the monthly membership, and that consumers' debit and credit cards would be automatically charged for the membership if the consumers did not cancel within four days." (Compl.  ¶¶ 53-54.) Plaintiff alleges further that all perspective poster club members are also required to affirmatively agree to those terms and conditions by "clicking" a check box and representing that they "Agree to the Terms and Conditions and to be entered into the Wozo Poster Club." (Compl. ¶¶ 53-54.) Thus, there is no longer any risk that Chang or any other consumer would be unaware of the material

---

[8]     Mootness requirements apply to putative class actions. "[I]f the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot." *Comer v. Cisneros*, 37 F.3d 775, 778 (2nd Cir. 1994); *Rocky v. King*, 900 F.2d 864 (5th Cir. 1990) ("This Court generally has concurred with the proposition that a purported class action is moot where the named plaintiff's individual claim became moot before class certification.").

[9]     Wozo's offer of settlement mooted Plaintiff's EFTA claim as well inasmuch as Plaintiff no longer suffers from the injuries that resulted from Defendants' alleged unlawful transfer of funds from his debit account.

terms of the Wozo poster club membership, or be enrolled in and charged for such a membership without authorization.  Hence, with full monetary and prospective relief for his alleged injuries in hand, Plaintiff no longer has standing to pursue his claims in this Court.  The lawsuit must be dismissed with prejudice.

i.    The Claims of the Putative Class Must be Dismissed as Well.

In light of Plaintiff's full recovery and Defendants' independent remedial measures, the Court must dismiss the claims of the putative class as well.[10]  It is well-settled that class claims may properly be dismissed where the named-plaintiff's individual claims have been mooted prior to class certification.  *Wilson v. Sec. of Health and Human Servs.*, 671 F.2d 673, 678 (1st Cir. 1982) (citing, *Baily v. Patterson*, 369 U.S. 31, 32-33 (1962)); *Arnold v. Panora*, 593 F.2d 161, 164 (1st Cir. 1979) ("[T]he mootness of the substantive claim of the named plaintiff in a purported but uncertified class action moots the entire case"); *see also Brown v. Philadelphia Housing Authority*, 350 F.3d 338 (3d Cir. 2003) ("When claims of the named plaintiffs become moot before class certification, dismissal of the action is required"); *Anderson v. U.S. Pension Plan*, 515 F.3d 823 (8th Cir. 2008) ("In a class action, dismissal on mootness grounds normally is required when the named plaintiff's claims become moot prior to a decision on class certification").

---

[10]      While the Court is not required to make such a determination on the pleadings, Plaintiff's complete recovery calls into question his ability to adequately represent the putative class.  *See* Fed. R. Civ. P. 23(a).  The same is true for Plaintiff's counsel, who attempted to leverage the threat of a class action for their own pecuniary gain.  *Id.*  Indeed, the policy underlying the 93A Demand Letter is the encouragement of settlement outside of the courts.  *Thorpe v. Mut. of Omaha Ins. Co.*, 984 F.2d 541, 544 (1st Cir. 1993) ("The twin reasons for the demand letter are, first, to encourage negotiation and settlement, and, second, to control the amount of damages recoverable by the plaintiff.").  In contrast, a class action may not be settled or compromised on a class basis without court approval.  *See Devlin v. Scardlletti*, 536 U.S. 1, 8-9 (2002) (explaining that, prior to the termination of a matter, a court must approve and give notice of a settlement); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617, 623 (1997) (noting that Rule 23(e) prohibits settlement of a class action without the court's approval).  Thus, to the extent Plaintiff and his counsel sought to obtain class relief through the 93A demand mechanism, they did so improperly and in a way that ultimately defeats the purpose of such a demand.

In this case, class certification has not been ordered and Chang has not moved for class certification.  Nor should he be allowed to—Chang received full relief from Wozo even prior to filing the lawsuit.[11]  Having received complete relief, Plaintiff lacks standing to pursue his claims and the Court may properly dismiss all claims asserted on behalf of the putative class as well.

      ii.    <u>To the Extent Plaintiff's Claims have not been Mooted, His Recovery Should be Limited to Wozo's Reasonable Offer of Settlement</u>.

Finally, to the extent any of Plaintiff's claims have not been mooted, his recovery for those claims should be limited to Wozo's offer of settlement.  Indeed, where "[a]ny person receiving such a demand for relief who, within thirty days of the mailing or delivery of the demand for relief, makes a written tender of settlement which is rejected by the claimant may, in any subsequent action…***limit any recovery to the relief tendered*** if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner."  Mass. Gen. Laws c. 93A § 9(3) (emphasis added).

In this case, Wozo tendered a reasonable offer of settlement that would fully compensate Plaintiff for his alleged injuries, but Plaintiff nonetheless rejected that offer.  Plaintiff also refused to accept Wozo's offer to reimburse him for the reasonable costs and attorneys' fees he had incurred to the date of the offer.  Thus, in the event his claims survive the instant motion, which they should not, Plaintiff should not be entitled to recover any amount beyond Wozo's offer of settlement, nor attorneys' fees or costs subsequent to the offer.  *See* Mass. Gen. Laws c. 93A § 9(4) ("[T]he court shall deny recovery of attorney's fees and costs which are incurred after

---

[11]      There is a narrow exception to the general rule that requires a live controversy between the named plaintiff and the defendant at the time the class is certified.  "There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion.  In such instances, whether the certification can be said to 'relate back' to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review."  *Sosna v. Iowa*, 419 U.S. 393, n.11 (1975).  The exception does not apply in this case.  Plaintiff's claims cannot be said to properly relate back to the filing of his complaint—they were mooted prior to his filing the Complaint, at the time he received Wozo's offer of settlement.

the rejection of a reasonable written offer of settlement made within thirty days of the mailing or delivery of the written demand for relief…"); *see also Kohl v. Silver Lake Motors, Inc.*, 369 Mass. 795, 797 (1976) ("[A] buyer's recovery in an action under G.L. c. 93A may not exceed the relief tendered (plus attorney's fees incurred *prior* to the date of the buyer's rejection of the tender…)") (emphasis added).

Plaintiff's Complaint ought to be dismissed but if it is not, at the very least, his potential recovery must be limited to Wozo's settlement offer of $350 and his reasonable attorneys' fees incurred in this matter up to the time of his rejection of the offer.

> **B.      Even if Plaintiff's Claims were not Mooted by Wozo's Offer of Settlement, He Has Not Pleaded Nor Can He Plead a Cause of Action for Violations of Mass. Gen. Law c. 93A § 2.**

Plaintiff has not and cannot properly plead a cause of action for violations of Mass. Gen. Law c. 93A against Defendants Wozo and Tatto.  As discussed above, Plaintiff can no longer show that he has any redressable injury inasmuch as he has been fully compensated by Wozo's settlement offer.  Accordingly, Plaintiff cannot satisfy one of the necessary elements of that claim and therefore it should be dismissed as to both Defendants.

Chapter 93A, § 2(a) makes unlawful any "[u]nfair . . . acts or practices in the conduct of any trade or commerce."  "Section 1 provides that 'trade' and 'commerce' shall include the advertising or offering for sale of any services or property directly or indirectly affecting the people of this Commonwealth."  *PMP Assoc., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 595-96 (1975).  The Massachusetts courts have "consistently recognized that, to warrant an award of damages under [] 93A, there must be a 'causal connection between the seller's deception and the buyer's loss.'" *Hershenow v. Enter Rent-A-Car Co. of Boston, Inc.*, 445 Mass. 790, 797 (2006) (quoting, *Kohl*, 369 Mass. at 801); *see also Leardi v. Brown,* 394 Mass. 151, 158 (1985) ("loss"

is defined as "loss of money, loss of property, or personal injury," or "the invasion of any legally protected interest of another."). Thus, a plaintiff seeking recovery under chapter 93A must demonstrate that the alleged unfair or deceptive conduct actually caused a loss and that he or she has not been made whole. *Id.* at 798.

In this case, by virtue of Wozo's settlement offer, Plaintiff can no longer show a causal connection between Defendants' alleged misconduct and any injury that he continues to suffer. Again, Wozo's offer of settlement afforded Plaintiff all of the relief he could obtain if he were to prevail at trial. Without any injury to redress, Plaintiff will never be able to satisfy the causation and injury elements necessary to maintain a claim under Chapter 93A. *Hershenow*, 445 Mass. at 802 ("A consumer is not…entitled to redress under…93A, where no loss has occurred. To permit otherwise is irreconcilable with the express language of...[section] 9."). The claim must therefore be dismissed with prejudice.

### C.   Plaintiff has not and Cannot Properly Plead a Cause of Action Under the Electronic Funds Transfer Act because the Complaint Shows He Authorized the Payments at Issue.

The EFTA's primary objective is to protect "individual consumers engaging in electronic fund transfers." 12 C.F.R. § 205.1. In that light, the EFTA requires that any "electronic fund transfer from a consumer's account…be authorized by the consumer…in writing, [with] a copy of such authorization…provided to the consumer when made." 15 U.S.C. § 1693e; *see also Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.,* 111 F.3d 1322, 1328 (7th Cir. 1997) (electronic fund transfers have three components: (i) a transfer of funds, (ii) that is initiated by electronic means, and (iii) debits or credits a consumer account). For the purposes of this case, an electronic fund transfer is "unauthorized" when it is "initiated by a person other than the consumer without actual authority to [do so.]" 15 U.S.C. § 1693a; *see also* 15 U.S.C. § 1693m

("Any person who fails to comply with any provision of this subchapter with respect to any consumer…is liable to such consumer….").

As with his other claims, Plaintiff's allegations are insufficient to state a cause of action under the EFTA.  Indeed, the EFTA claim is replete with conclusory statements of Defendants' perceived violations of the Act and therefore, warrant dismissal.  Far from alleging facts to suggest a right to relief, Plaintiff simply concludes that Defendants made "electronic fund transfers from the accounts of Plaintiff and the…Class…without first obtaining their valid authorization in writing[;]" that Defendants failed to provide Plaintiff and the class "with a copy of any purported written authorization[;]" that Defendants made those transfers "without adequately disclosing the terms and conditions thereof[;]" and that he and the class "were harmed" as a result.  (Compl. ¶¶ 132-135.)  Allegations of this sort do not withstand scrutiny in the wake of *Iqbal* and *Twombly*.

First, as explained above, any suggestion that Plaintiff remains "harmed" as a result of Defendants' alleged misconduct is disingenuous inasmuch as Wozo has already offered to make Plaintiff whole.  Second, Plaintiff's suggestion that Defendants' charged him without written authorization is contradicted by the allegations of the Complaint itself.  As Plaintiff alleges, the Wozo website contained a check box that indicated that all customers, including Plaintiff, "agree[d] to all terms and conditions," including the terms of the membership and fees related thereto.  (Compl. ¶ 47.)  Thus, Plaintiff was, at the very least, informed that there were additional terms and conditions that applied to his purchase, but he nevertheless chose not to determine what they were, instead submitting his debit card information and receiving his chosen poster and promised club membership.

Similarly, the EFTA's "written authorization" requirement is satisfied where, as Plaintiff alleges in this case, a consumer is required to and does submit their payment and contact information to the relevant website, and further assents to the terms and conditions attendant with the transaction.  *See* 15 U.S.C. § 7006(5) (an electronic signature can be "[1] an electronic sound, symbol, or process, [2] attached to or logically associated with a contract or other record and [3] executed or adopted by a person with the intent to sign the record."); *see also* 12 C.F.R. Pt. 205, Supp. I, § 10(b) cmt. 6 (electronic authorization is valid if it is "readily identifiable as such and the terms of the preauthorization are clear and readily understandable.").  It is well settled that a Plaintiff can plead his way out of court by alleging too much.  *See Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co.*, 976 F.2d 58, 61-62 (1st Cir. 1992); *Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir. 1995) (A plaintiff can "plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts.").  That is exactly what has happened here.

The allegations, including those pertaining only to the EFTA claim, do not plausibly suggest an entitlement to relief.  Therefore, that claim should be dismissed as well.

> **D.      As a Final Matter, the Court Should Not Permit Plaintiff to Pierce the Corporate Veil:  Plaintiff has Failed to Properly Allege that Defendant Wozo is an Alter Ego of Tatto.**

As a final matter, Plaintiff's attempt to hold Tatto liable through an alter ego theory is unavailing.  The allegations of Tatto's involvement in the challenged conduct are so lacking in relevant factual content that they (like all the other allegations of the Complaint) are not plausible on their face.  Moreover, those allegations are "grounded" and "sound in fraud," and are therefore subject to, but ultimately fail to meet, the heightened pleading requirements of Fed.

R. Civ. P. 9(b).[12]  Thus, even if the Complaint were to stand as to the other Defendants, it should be dismissed as to Tatto.

Fed. R. Civ. P. 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake."  The rule ensures that defendants accused of fraudulent conduct have adequate notice so that they may defend against the accusations and not just deny that they have done anything wrong.  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  It also prevents filing a complaint as a pretext for a plaintiff's fishing expedition and protects the defendant's reputation and goodwill from improvident charges of wrongdoing.  *Id.* at 731; *see also Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990). To satisfy the rule's heightened pleading requirement, a plaintiff must specifically set forth the who, what, when, where and how of the alleged fraud.  *Crisp Human Capital, Ltd.*, 613 F. Supp. 2d at 140 (citing, *Rodi v. S. New England Sch. of Law,* 389 F.3d 5, 15 (1st Cir. 2004) ("Under that heightened standard, a plaintiff must identify the fraudulent statement or representation, the person making the statement, and when the statement was made.")).  "Mere 'bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like' do not constitute sufficient allegations."  *Declude, Inc. v. Perry*, 593 F. Supp. 2d 290, 294 (D. Mass. 2008) (quoting, *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir. 1996)).  Here, the Complaint, and particularly the allegations of alter ego against Tatto, fall woefully short of meeting this standard.

Plaintiff has failed to properly plead that Defendant Tatto or its principals formed Wozo to avoid liability for their own unlawful conduct, or that as a result, Plaintiff will suffer some

---

[12]        In addition to Plaintiff's allegations of alter ego, Plaintiff's claim under Chapter 93A is "subject to the heightened pleading requirement."  *Martin v. Mead Johnson Nutrition Co.*, CIV A 09-11609, 2010 WL 3928707 (D. Mass. Sept. 30, 2010) (citing, *Crisp Human Capital Ltd. v. Authoria, Inc.*, 613 F. Supp. 2d 136, 139 (D. Mass. 2009)).

"grave injustice."[13]  Massachusetts law is clear:  only in rare cases will corporate formalities be ignored to hold individual principals or corporate parents liable for a separate corporate entity's alleged wrongdoing.  This is simply not one of those cases.  Plaintiff was required to, but did not allege any plausible basis to infer that Wozo will be unable to satisfy any judgment Plaintiff may obtain; indeed, Wozo's offer of settlement shows just the opposite is true.  Moreover, the balance of relevant factors to be considered by the Court weighs in favor of dismissing Tatto from this action—now—rather than impugning Wozo's alleged misconduct to it.  Thus, regardless of the Court's determination as to the sufficiency of Plaintiff's pleadings in any other respect, at the very least, Tatto should be dismissed from this action.

Under Massachusetts law, corporations "ordinarily are regarded as separate and distinct entities" and the corporate veil should be pierced only in "rare particular situations to prevent gross inequity."  *Scott v. NG U.S. 1, Inc.*, 450 Mass. 760, 766 (2008); *Evans v. Multicon Constr. Corp.,* 30 Mass. App. Ct. 728, 732-33 (Mass. App. Ct. 1991); *see also My Bread Baking Co. v. Cumberland Farms, Inc.,* 353 Mass. 614, 618 (1968).  A court may pierce the corporate veil only where (i) there is an exercise of pervasive control in the activities of the "related business entities by the same controlling person [ ] and there is a fraudulent or injurious consequence by reason of the relationship among those business entities," or (ii) "there is a confused intermingling of activity of two or more [entities] engaged in a common enterprise with substantial disregard of the separate nature of the [business] entities, or serious ambiguity about the manner and capacity in which the various [business entities] and their respective representatives are acting." *Id.* (citing, *Evans*, 30 Mass. App. Ct. at 732-33).  In determining whether to pierce the corporate veil, the Court must look to twelve, well-settled factors:

---

[13]      Plaintiff's addition to the First Amended Complaint of allegations regarding Tatto's unrelated business ventures and purported sale do not carry the day either.  Instead, like most of the other allegations in the Complaint, they amount to little more than mere conclusions and speculation pleaded "on information and belief."

(1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.

*TechTarget, Inc. v. Spark Design, LLC*, CIV.A.10-11266-WGY, 2010 WL 4269602 (D. Mass. Oct. 27, 2010) (citing, *Attorney General v. M.C.K., Inc.,* 432 Mass. 546, 555 n.19 (2000)).

Before piercing the veil, however, "a court must conclude after evaluating these factors that the parent corporation directed and controlled the subsidiary and used it for an improper purpose." *Id.*; *see also Evans*, 30 Mass. App. Ct. at 736 ("There is present in the cases which have looked through the corporate form an element of dubious manipulation and contrivance...."). "Control in and of itself is not sufficient to disregard the corporate entity." *Id.* (citing, *Scott*, 450 Mass. at 767-68).

In this case, even construing the Complaint's allegations in a light most favorable to Plaintiff, at best, he has alleged (only in conclusory fashion and certainly not with the requisite particularity required by Rule 9(b)) the existence of four of the twelve factors—common ownership, pervasive control, thin capitalization, and use in promoting fraud. Thus, the balance of Plaintiff's allegations weigh against holding Tatto responsible for Wozo's alleged misconduct. Nevertheless, that imbalance alone is not determinative. *TechTarget*, 2010 WL 4269602 (citing, *George Hyman Constr. Co. v. Gateman,* 16 F.Supp.2d 129, 158 (D. Mass. 1998) ("The factors are weighed, not counted.")). Instead, the Court must look further to the substance of the factors and the basis upon which Plaintiff purports to pierce the veil.

Plaintiff's stated purpose for alleging an alter ego theory against Tatto is to protect himself and the putative class from attempting to recover only from Wozo, which will be

purportedly unable to satisfy any judgment entered against it.  Plaintiff alleges in conclusory terms that Wozo was created and is controlled by Tatto's principals and was purposefully created as an "under-capitalized" entity from which Plaintiff and the putative class "would be unable to recover upon any judgment in their favor…."  (Compl. ¶¶ 30-37.)  Plaintiff does not, however, allege any factual matter to support such a conclusion and would be hard-pressed to do so.  Indeed, the only evidence now before the Court shows that Wozo is financially viable inasmuch as it offered to settle Plaintiff's individual claims in full, issued a check to Plaintiff for the maximum amount of damages to which he would be entitled if successful at trial, and further offered to reimburse him for all costs and attorneys' fees incurred to date.

Merely alleging that Wozo is undercapitalized, without more, is not sufficient to raise the threat of insolvency beyond the speculative level.  "The legal touchstone for adequacy of capital in a veil-piercing case is directed at whether a corporate entity was or was not set up for financial failure," and "the focus of capitalization inquiry is on the adequacy of *initial* funding."  *George Hyman Const. Co.*, 16 F. Supp. 2d at 152.  Thus, the "pertinent question" is whether Wozo's capitalization was "too thin" for it to perform its primary business functions at the time of its inception.  *Id.* at 152 (citing, *Evans,* 30 Mass. App. Ct. at 734).  There is absolutely nothing alleged in the Complaint that suggests this was the case.  Plaintiff has made no attempt to describe with any particularity the extent of Wozo's purported undercapitalization and certainly has not alleged that Wozo was unable to perform its intended business functions (i.e. providing subscribers, like Plaintiff, with the monthly posters and Super Rewards Points they requested).  In fact, Plaintiff alleges just the opposite.  (*See* Compl. ¶¶ 29, 40-41.)  Like the Complaint's other allegations, Plaintiff's conclusory allegations in this regard do not pass muster.

Moreover, Plaintiff has not alleged that any of Wozo principal's or Tatto itself have derived any pecuniary gain from the revenue generated by Wozo's business activities or that there has been any improper commingling of the two companies' assets.  Finally, and perhaps most importantly, Plaintiff does not allege that Wozo's operation as a separate business entity was intended to or actually did deceive Plaintiff or the putative class as to the true identity of the entity with whom they were dealing.  As Plaintiff's alter ego theory relies on vague and amorphous allegations that Tatto's principals were somehow involved in the promotion of Wozo's poster club, it fails to meet Rule 9(b)'s heightened pleading requirement.

In the end, the risk that Wozo will be unable to satisfy any judgment Plaintiff may later obtain is a risk inherent in any litigation and does not, alone, support piercing the corporate veil. *Evans*, 30 Mass. App. Ct. at 737-38 (risk that defendant "may become unable to answer to a judgment is inherent in any civil litigation").  That is especially true in light of the fact that the balance of Plaintiff's allegations weigh against piercing the veil.  Wozo cannot be considered an alter ego of Tatto and all claims asserted against Tatto stemming from Wozo's alleged misconduct necessarily fail and should be dismissed.

## IV.  CONCLUSION

For the foregoing reasons, Defendants Wozo, LLC and Tatto, Inc. respectfully request that the Court enter an Order (i) granting the instant motion in its entirety, (ii) dismissing all claims against Defendants Wozo and Tatto with prejudice, and (iii) providing such other and further relief as the Court deems equitable and just.

Respectfully submitted,

Dated:  April 29, 2011                    **WOZO, LLC and TATTO, INC.,**

By:  /s/ Daniel J. Urman
        One of Defendants' Attorneys

20

Daniel J. Urman, Esq.
6 Shipway Place
Charlestown, Massachusetts 02129
Tel:  (857) 205-9856
*durman@post.harvard.edu*