## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

**SUK JAE CHANG,** individually and on behalf of classes of similarly situated persons,

**Plaintiff(s),**

v.

**WOZO, LLC., TATTO, INC.,** and **ADKNOWLEDGE, INC.,**

**Defendants.**

Case No.  11-cv-10245-DJC

---

**Plaintiff's Opposition Memorandum to Adknowledge, Inc.'s Motion to Dismiss**

Todd S. Heyman (BBO # 643804)
Robert E. Ditzion (BBO # 660962)
SHAPIRO, HABER & URMY LLP
53 State Street
Boston, MA 02109
Tel: (617) 439-3939
Fax: (617) 439-0134
theyman@shulaw.com
rditzion@shulaw.com

Karl S. Kronenberger
(admitted *pro hac vice*)
Virginia A. Sanderson
(admitted *pro hac vice*)
KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
Tel: (415) 955-1155
Fax: (415) 955-1158
karl@KBInternetLaw.com
ginny@ KBInternetLaw.com

Attorneys for Plaintiff and the Classes

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................................ iii

I.      INTRODUCTION ................................................................................................1

II.     THE RELEVANT FACTUAL BACKGROUND ...............................................3

    A.      Plaintiff Responded To A Joint Advertisement That Deceptively
        Offered Both Super Rewards Points And A Poster for A 99-Cent
        Shipping Fee ...........................................................................................3

    B.      Adknowledge Authorized And Participated In The Deceptive
        Joint Marketing Venture With the Massachusetts-Based Defendants ....4

    C.      Adknowledge Was Not a Neutral "Interactive Service
        Provider" Merely Providing An Internet Forum For Wozo's
        Speech, But Instead Chose To Speak Jointly With Wozo To
        Promote Its Own Product Alongside Wozo's Product ...........................5

    D.      Adknowledge Authorized The Development, Creation, And
        Publication Of The Joint Internet Advertisements, And It Had
        Knowledge Of And Control Over The Content Of Such Advertisements..............6

    E.      Adknowledge Has Ample Resources To Defend Litigation
        In Massachusetts And Has Conducted Substantial And
        Profitable Business In Massachusetts ....................................................7

III.    ARGUMENT .......................................................................................................8

    A.      The Court Must Accept The Factual Allegations Of The
        Complaint Even If Such Facts Are Disputed By The Defendants..........8

    B.      Specific Jurisdiction Exists Over Adknowledge.....................................9

        1.      Plaintiff's Claims Arise Out Of Adknowledge's
            Massachusetts-Based Activities................................................9

        2.      Adknowledge Purposefully Availed Itself Of The
            Privilege Of Conducting Business in Massachusetts................13

        3.      The Gesalt Factors Are Also Readily Satisfied ........................14

    B.      Adknowledge's Deceptive Offer For Super Rewards Points
        Injured Chang.........................................................................................16

i

C.     The Communication Decency Act Protects Only Natural
       Intermediaries, Not Joint Speakers ........................................................................17

IV.    CONCLUSION .................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Federal Cases**

*Daynard v. Ness, Motley, Loadhold, Richardson & Poole, P.A.*
290 F.3d 42 (1st Cir. 2002) ...................................................................................................11, 12

*Universal Communication Systems, Inc. v. Lycos, Inc.*,
478 F.3d 413, 418 (1st Cir. 2007) ...................................................................................17, 18, 20

*Digital Equipment Corp. v. Alta Vista Technology, Inc.*,
960 F.Supp. 456, 468 (D. Mass. 1997) ............................................................................11, 14

*Hasbro, Inc. v. Clue Computing, Inc.*,
994 F.Supp. 34 (D. Mass. 1997) .......................................................................................10, 13

*Hocking v. U.S.*,
No. 10–11007, 2011 WL 1326646 (D. Mass. Apr. 1, 2011) ........................................................8

*Market Masters-Legal v. Parker Waichman Alonso, LLP*
No. 10-40119, 2011 WL 196929 (D. Mass. Jan. 20, 2011)........................................................11

*Optos, Inc. v. Topcon Medical Systems, Inc.*,
No. 10-12016, 2011 WL 841254 (D. Mass. Mar. 7, 2011) ................................................. *passim*

*Swift v. Zynga Game Network, Inc., et. al.*,
No. 09-05443, 2011 WL 4569889 (N.D. Cal. Nov. 2, 2010) ................................................17, 18

**State Cases**

*Island Oasis Frozen Cocktail Co. v. Fla. Bulk Sales, Inc.*,
No. 03-1696, 2004 WL 557300 (Mass. Super. Ct. Mar. 10, 2004)..........................................11

**Statutes**

47 U.S.C. §230.......................................................................................................................18

## I.      INTRODUCTION

Plaintiff submits this memorandum in opposition to Defendant Adknowledge, Inc.'s ("Adknowledge") motion to dismiss the First Amended Complaint ("FAC").  The primary argument asserted in its motion is that there is no jurisdiction over Adknowledge in Massachusetts because it is a Missouri corporation without offices or employees in Massachusetts.  Adknowledge is in the Internet advertising business and partnered with the Massachusetts-based Defendants here to jointly promote its own product alongside the product of the Massachusetts-based Defendants in a single, joint Internet advertisement that all Defendants published on the Internet.

Through this putative class action, Plaintiff Suk Jae Chang ("Chang") seeks relief under c. 93A for thousands of consumers who were victims of the Defendants' false and misleading joint Internet advertisements.  Adknowledge offers a product known as Super Rewards Points which are virtual currency points used in various online video games.  Adknowledge entered into a joint marketing venture with Massachusetts-based Defendant Wozo, LLC ("Wozo"), which was essentially an instrument of Massachusetts-based Defendant Tatto, Inc. ("Tatto"), whereby Adknowledge's Super Rewards Points would be jointly promoted with posters offered for sale by Wozo.

Specifically, the joint advertisement promised both a "free" poster and Super Rewards Points for a 99-cent shipping fee.  In reality, however, the consumer was subsequently enrolled in (and charged for) a monthly membership in a poster club at $29.99 per month, even though neither the $29.99 price nor the monthly membership was mentioned in the joint advertisement. Such misleading advertisements were deceptive in violation of c.93A.  Indeed, Congress has since passed a law that prohibits precisely this type of automatic enrollment in monthly

memberships without the affirmative assent of the consumer.   First Amended Complaint ("FAC") ¶47 (the Restore Online Shoppers Confidence Act).

Pursuant to the joint marketing promotion established through Defendants' contractual arrangement, the Massachusetts-based Defendants paid Adknowledge $19 for each consumer who both responded to the joint advertisement and paid the 99 cents required by the joint promotion.   Thus, Adknowledge earned substantial revenue, at the very least tens of thousands of dollars, through its joint marketing venture with the Massachusetts-based Defendants.

Adknowledge has moved to dismiss this action on three grounds.   As explained above, its primary argument is that there is no jurisdiction over Adknowledge in Massachusetts notwithstanding Adknowledge's decision to partner with Massachusetts-based companies to create the very joint marketing promotion that defrauded and injured Plaintiff Chang and other consumers, including Massachusetts consumers.

Second, Adknowledge argues that it cannot be responsible for any injury to Plaintiff Chang because he was deceived only by the Massachusetts-based Defendants, not Adknowledge. This argument requires a fanciful interpretation of the factual allegations.   The very first paragraph of the FAC could not be more clear that the Defendants, including Adknowledge, worked in concert to create an online promotional offer for a "free" poster and "other benefits" (in the case of Chang, Super Reward Points) without adequately the disclosing either the true price (a recurring charge of $29.99) or the true product being purchased (a monthly membership in a poster club).   Indeed, without Adknowledge's decision to include its Super Rewards Points in the deceptive promotional offer, Chang would never have been injured.   Accordingly, there is no dispute that the FAC states a claim against Adknowledge.

2

Third, Adknowledge argues that the Communication Decency Act ("CDA") precludes liability here because Adknowledge merely published the Internet speech of the Massachusetts-based Defendants, and did not participate in the speech itself. While the CDA does shield entities from liability for the speech of third parties when that speech is merely published on or through the entities' neutral interactive computer service (such as a web page, message board, or a chat room), the problem for Adknowledge is that the joint advertisement at issue here was obviously not speech exclusively made by the Massachusetts-based Defendants. The joint advertisement contained an offer for both the poster *and* Adknowledge's Super Rewards Points, together for a single 99-cent shipping fee. Adknowledge does not and *cannot* argue that the Massachusetts-based Defendants advertised the sale of Super Rewards Points without Adknowledge's express authorization. Accordingly, the joint advertisement at issue contained the speech of both Adknowledge and the Massachusetts-based Defendants. Because Adknowledge was a direct participant in the very speech at issue through its decision to develop and create the deceptive joint advertisement promoting its Super Rewards Points, Adknowledge did not serve as a neutral interactive computer service, and thus the CDA does not immunize it from liability here.

Accordingly, Adknowledge's motion to dismiss should be denied.

## II.    THE RELEVANT FACTUAL BACKGROUND

### A. Plaintiff Responded To A Joint Advertisement That Deceptively Offered Both Super Rewards Points And A Poster For A 99-Cent Shipping Fee.

Plaintiff Chang is a user of Adknowledge's Super Rewards Points. FAC, ¶72. In or about October 2010, Plaintiff saw an Internet advertisement for the Wozo Website stating that he could earn Adknowledge's Super Rewards Points and obtain a free poster by paying a 99-cent shipping fee. *Id.* at ¶73. The "promotional offer for a 'free' poster and other benefits" (in

Chang's case, Super Rewards Points) indicated that "the only cost associated with the offer is a 99-cent shipping fee" and did not "adequately disclose that … consumers are actually [also] purchasing a monthly membership in a poster club at 30 times the cost." *Id.* at ¶1.

Plaintiff clicked on this advertisement, which redirected him to the Wozo Website. *Id.* at ¶73. Like the joint advertisement, the pages necessarily accessed on the Wozo Website to complete the transaction also did not adequately disclose the existence of the monthly membership product and its cost, as well as other key terms and conditions of the transaction. *Id.* Plaintiff selected a poster from the Wozo Website in order to obtain the promised Super Rewards Points and paid the 99-cent shipping fee with his debit card. *Id.* at ¶74. At no time during the checkout process did any Defendant, including Adknowledge, adequately disclose to Plaintiff that he would be charged anything but the 99-cent shipping fee, let alone a recurring $29.99 fee for a monthly membership in a poster club. *Id.* Thus, without his authorization, Plaintiff's debit card was charged a $29.99 monthly membership subscription fee. *Id.* at ¶75. Because money was wrongfully withdrawn from Plaintiff's debit account, Plaintiff was damaged. *Id.*

### B. Adknowledge Authorized And Participated In The Deceptive Joint Marketing Venture With The Massachusetts-Based Defendants.

Adknowledge and the Massachusetts-based Defendants "created and developed [this] promotional campaign as joint ventures, including banners and other advertisements offering a free poster *and* Super Rewards Points to consumers for a 99-cent shipping fee." *Id.* at 60. None of the advertisements made "any reference to a monthly membership in the Wozo poster club, the automatic enrollment therein for those who participated in the promotion, or the $29.99 monthly membership fee associated therewith." *Id.* The inclusion of the Adknowledge Super Rewards Points in the Internet advertisements that also promoted the Wozo poster was designed to increase the appeal of the promotion to a wider audience of customers. *Id.* at ¶56.

4

Adknowledge and the Massachusetts-based Defendants each "placed such banners and other advertisements on the Internet." *Id.* at ¶60.

The Massachusetts-based Defendants paid Adknowledge $19 for each consumer, such as Plaintiff Chang, who clicked on the joint advertisements promoting both the poster and the Super Rewards Points and then paid the 99-cent shipping fee. *Id.* at ¶62. In addition to this financial partnership, the parties cooperated technologically. *Id.* Specifically, their respective computer servers communicated with each other so that they could each track how many participants in the promotion came through an advertisement that jointly promoted both the poster and Adknowledge's Super Rewards Points. *Id.* at ¶16.

### C. Adknowledge Was Not a Neutral "Interactive Service Provider" Merely Providing An Internet Forum For Wozo's Speech, But Instead Chose To Speak Jointly With Wozo To Promote Its Own Product Alongside Wozo's Product.

Adknowledge was not a neutral "interactive service provider" merely publishing the speech of the Massachusetts-based Defendants. Adknowledge itself elected to speak and publish jointly with the Massachusetts-based Defendants in order to promote its own product, Super Rewards Points, along with the posters offered by Wozo. As paragraph 61 of the FAC makes crystal clear, Adknowledge was not simply acting as a "neutral intermediary" publishing Wozo's advertisements on the Internet:

> On the contrary, Adknowledge agreed to jointly promote its own product, Super Rewards Points, with the Wozo Defendants' product, a purportedly free poster, in a single advertisement for a single price. Accordingly, both Adknowledge and the Wozo Defendants were each separately responsible for some of the information in the Internet advertisement. Adknowledge obviously could not advertise the sale of Wozo Defendants' posters without an agreement with the Wozo Defendants. Similarly, the Wozo Defendants could not advertise the sale of Super Rewards Points without an agreement with Adknowledge. However, through their agreement, each party to the transaction authorized the creation and development of the Internet advertisement that jointly promoted their respective products, and is responsible for the inclusion of at least some of the information contained in the

advertisement, specifically, the inclusion of their respective product in the joint promotion.

FAC, ¶61. In the affidavit of Michael R. Geroe ("Geroe Affidavit"), Adknowledge's general counsel, Mr. Geroe claims that the advertisements it displays on the Internet are "displayed somewhat like classified ads run in a newspaper." Docket No. 26-1, ¶13. Mr. Geroe neglects to inform the Court that there is a fundamental difference between a newspaper's classified ad section and Adknowledge's website that hosted the Defendants' joint promotion: the classified advertisements in a newspaper are for the products of the third parties that paid the newspaper to publish the advertisements, but those classified advertisements do not contain promotions for the sale of the newspaper itself. Here, the advertisements at issue are not limited to promoting the posters offered by the Massachusetts-based companies, but also jointly promote the Adknowledge's Super Rewards Points. Adknowledge chose to speak and publish advertisements *jointly* with the Massachusetts-based Defendants, and it is that *joint* speech that Plaintiff challenges here.

### D. Adknowledge Authorized The Development, Creation, And Publication Of The Joint Internet Advertisements, And It Had Knowledge Of And Control Over The Content Of Such Advertisements.

Through its agreement with the Massachusetts-based Defendants, Adknowledge authorized the development, creation, and publication of the joint Internet advertisements. *Id.* at ¶63. Through that same contractual arrangement, Adknowledge had the ability to control and did in fact control the content of the advertisements. *Id.* at ¶¶ 63-66.[1] Adknowledge also had

---

[1] The Geroe Affidavit identifies a contractual arrangement between Adknowledge and the Massachusetts-based Defendants, but Adknowledge fails to attach a copy of the contract. Docket No. 26-1. The Geroe Affidavit is carefully crafted to suggest that Adknowledge has no control over the content of the joint advertisements, but actually the affiant makes a much more limited claim, mainly, that it has no control over the Wozo Website and that it did not create the joint advertisements. *See, e.g.,* ¶¶ 16, 17, 21, 22. The affiant is careful not to claim that it had no

knowledge of the content of the joint Internet advertisement and provided customer service to consumers who responded to the joint advertisement because they were upset that the Super Rewards Points cost more than the 99 cents indicated in the joint advertisement. *See* FAC ¶¶68-71; Docket No. 26-1, ¶28 (Geroe Affidavit conceding it provides customer service in connection with the joint promotion); Exhibit A to Sarah Johnson Declaration (Email From Adknowledge Customer Service Representative to Ms. Johnson claiming that she knowingly consented to the terms of the joint promotion that were not adequately disclosed). Adknowledge's contention that it may disown the very speech it previously authorized, and then defended and ratified when dealing with angry customers, is simply belied by these facts. *Id.*

### E. Adknowledge Has Ample Resources To Defend Litigation In Massachusetts And Has Conducted Substantial And Profitable Business In Massachusetts.

Adknowledge is not a small company lacking in resources. Although it is headquartered in Missouri, it has international offices in Australia, Canada, and the United Kingdom, and domestic offices in San Francisco, Los Angeles, Florida, and the neighboring state of New York. *Id.* at ¶17. It claims to be the largest privately held Internet advertising network in the United States. *Id.* Earlier this year, it raised over $200 million in debt and equity financing, including from Bank of America and JMI Equity. *Id.* It closed 2010 with more than 330 employees and annual revenue exceeding $300 million dollars. *Id.*

Adknowledge's website is not a passive web page merely providing information about the company, but actively solicits advertisers and others to use its services through its website in order to generate revenue from such transactions. *Id.* at ¶18. Adknowledge solicits business

---

control over, or responsibility for, the joint advertisement itself (which was posted on Adknowledge's website's "offer wall" and promoted Adknoweldge's own product, Super Rewards Points). The affiant's decision to limit his contention in such a manner is hardly surprising given Adknowledge has complete control over, and hence responsibility for, who may promote its product and how that product can be promoted.

through its website in all states and does nothing to avoid soliciting business in Massachusetts. *Id.* Quite the opposite, it has solicited business in every state through its website, including Massachusetts. *Id.* It has over 10,000 advertising clients, including clients with a Massachusetts presence such as the Massachusetts-based Defendants here and the University of Phoenix, which has campuses in Westborough, Braintree, and Burlington, Massachusetts. *Id.* Through its joint business venture with the Massachusetts-based Defendants here, Adknowledge has been paid, at the very least, in the tens of thousands of dollars by these Massachusetts companies. *Id.* In addition, some victims of the deceptive promotion were Massachusetts residents. *Id.* at ¶¶18, 70.

## III. ARGUMENT

### A. The Court Must Accept The Factual Allegations Of The Complaint Even If Such Facts Are Disputed By The Defendants.

On a motion to dismiss, the Court must "accept[] plaintiff's allegations in the complaint as true and construe[] them in the light most favorable to the plaintiff[.]" *Hocking v. U.S.*, No. 10–11007, 2011 WL 1326646 at *1, n.1 (D. Mass. Apr. 1, 2011) (citations omitted). When resolving issues concerning personal jurisdiction over an out-of-state defendant, this Court has also held that it "accepts as true specific facts alleged by the plaintiff, *whether or not those facts are disputed*" by the out-of-state defendant. *Optos, Inc. v. Topcon Medical Systems, Inc.*, No. 10-12016, 2011 WL 841254 at *4 (D. Mass. Mar. 7, 2011) ("*Optos*") (emphasis added).[2]

---

[2] Here, Defendant Adknowledge has submitted a misleading affidavit that purports to establish "facts" through carefully drafted, vague language. *Compare* Geroe Affidavit, ¶16 ("Adknowledge … does not create or develop advertising content for or on behalf of the advertisers.") *with* FAC ¶63 ("Adknowledge made a decision to include an offer for its own product among the other content contained in the Internet advertisement that also promoted the Wozo Defendants' poster. Through its agreement with the Wozo Defendants, Adknowledge authorized the development, creation, and publication of the joint Internet advertisement."). The Geroe Affidavit carefully *implies* that that Adknowledge had no responsibility for the creation and development of any content in the joint advertisement, but, importantly, does not (and cannot) go quite that far. It is undisputed that Adknowledge decided to participate in the creation

### B.  Specific Jurisdiction Exists Over Adknowledge.

Here, Adknowledge argues that it would be unconstitutional to find that the Court has specific jurisdiction over Adknowledge.  In *Optos*, this Court extensively analyzed the test to determine whether the exercise of specific jurisdiction is constitutional:

> The First Circuit employs a tripartite analysis to determine whether specific jurisdiction is appropriate: 1) whether the claims arise out of or are related to the defendant's in-state activities, 2) whether the defendant has purposefully availed itself of the laws of the forum state and 3) whether the exercise of jurisdiction is reasonable under the circumstances.

*Optos*, 2011 WL 841254 at *5.

### 1.  Plaintiff's Claims Arise Out Of Adknowledge's Massachusetts-Based Activities.

First, there can be no dispute that Plaintiff's claim arises out of or relates to Adknowledge's in-state activities.  This first prong is, as this Court has noted, a "flexible, relaxed standard that focuses on the nexus between the plaintiff's claim and the defendant's contacts with the forum state." *Id.* (internal quotations and citations omitted).  Here, Adknowledge contracted with the Massachusetts-based Defendants to promote its Super Rewards Points through advertisements that also promoted the Massachusetts-based Defendants' posters.  Plaintiff Chang's injury was caused precisely because he was misled by just such a joint advertisement.  FAC, ¶¶ 1, 60-62, 72-75.[3]  The nexus between the Plaintiff's claim and Defendants' conduct could not be more clear.

---

and development of a joint advertisement to promote its own Super Rewards Points with the "free" poster and, accordingly, it cannot and does not dispute that it is responsible for the creation and development of that portion of the content of the joint advertisement.

[3] Adknowledge mischaracterizes Plaintiff's claim to challenge only the adequacy of the pages on the Wozo Website, and not the joint advertisement placed on Adknowledge's website's "offer wall." *Compare* Adknowledge Memo. In Support of Motion to Dismiss, Docket No. 27 at 10 with FAC ¶¶ 1, 60-75.

More poignantly, Adknowledge claims through the Geroe Affidavit (Docket No. 26-1, ¶¶22) that these advertisements promoting Super Rewards Points (which Adknowledge does not dispute it authorized) were entirely generated by the Massachusetts-based Defendants – yet simultaneously argues that its contract authorizing such conduct in Massachusetts does not constitute "in-state contact or conduct."  Adknowledge Memo. In Support of Motion to Dismiss, Docket No. 27 at 10.  This argument is nonsensical.  This is especially so because Adknowledge concedes that Wozo is in Boston, but then incredulously suggests that the complaint does not support a reasonable inference "that Adknowledge knew that Wozo was in Boston."  *Id.* Plaintiffs would be more than willing to amend the complaint to include an express allegation that Adknowledge knew that Wozo was in Boston, in light of its contractual relationship with Wozo that caused Wozo to pay, at the very least, tens of thousands of dollars to Adknowledge in connection with their joint marketing promotion.  Notably, despite ample opportunity, Geroe conspicuously does not contend Adknowledge did not know that Wozo was in Boston.

Even if Adknowledge did not specifically know that Wozo was based in Boston, that would not be sufficient to find the exercise of specific jurisdiction unconstitutional.  For example, in *Hasbro, Inc. v. Clue Computing, Inc.*, 994 F.Supp. 34 (D. Mass. 1997), Judge Woodlock found that a Colorado computer consulting corporation, Clue Computing, Inc., could be sued in Massachusetts for a trademark infringement claim by the board game maker, Clue, for its use of the website, www.clue.com.  Notwithstanding the Colorado company's absence of any real connection to Massachusetts, and without any indication that the company was aware of Clue's existence in Massachusetts, Judge Woodlock found that the mere use of the website domain name that was "continuously available to Massachusetts residents" was sufficient to satisfy the relatedness inquiry for specific jurisdiction.  *Id.* at 44.

Here, Adknowledge admits that it operated a website continuously available to Massachusetts residents in which it posted an advertisement supporting the joint promotion with the Massachusetts-based Defendants.   Geroe Affidavit, Docket No. 26-1, ¶¶11, 12, 29. Moreover, the complaint alleges that the putative class includes Massachusetts residents.  FAC, ¶¶16, 70 (including copy of a complaint from resident of Rockport, Massachusetts); *see also Digital Equipment Corp. v. Alta Vista Technology, Inc.*, 960 F.Supp. 456, 468 (D. Mass. 1997) (company's contract with Massachusetts company and maintenance of website that caused injury in question was sufficient to satisfy relatedness inquiry).   Indeed, it is difficult to identify any Adknowledge conduct that Plaintiff's claim could conceivably relate to any more closely than to Adknowledge's authorization of, and participation in, the joint marketing promotion with the Massachusetts-based Defendants.  Adknowledge certainly identifies none.[4]

Moreover, Adknowledge's attempt to distance itself from the conduct it authorized in Massachusetts simply does not survive scrutiny in light of binding First Circuit precedent.  In *Daynard v. Ness, Motley, Loadhold, Richardson & Poole, P.A.*, 290 F.3d 42 (1st Cir. 2002), the

---

[4] Adknowledge cites two unreported decisions in support of its argument against personal jurisdiction, *Island Oasis Frozen Cocktail Co. v. Fla. Bulk Sales, Inc.*, No. 03-1696, 2004 WL 557300 (Mass. Super. Ct. Mar. 10, 2004) and *Market Masters-Legal v. Parker Waichman Alonso, LLP*, No. 10-40119, 2011 WL 196929 (D. Mass. Jan. 20, 2011).  In neither case did the foreign defendant enter into a contractual relationship with a Massachusetts corporation to jointly promote their respective products together in a single advertisement, including in Massachusetts. Moreover, in *Optos*, this Court found relatedness even where the foreign corporation did not have any significant contact with Massachusetts, let alone a contract with a Massachusetts-based company.   In *Optos*, the foreign corporation merely employed a California resident that had previously worked for the Massachusetts Plaintiff in California.  Because the California resident had agreed to submit himself to the jurisdiction of a Massachusetts court, the Court found the relatedness prong was satisfied even with respect to the foreign corporation that, unlike the former employee, lacked any material connection to Massachusetts.  Here, Adknowledge knew very well that its joint promotion with the Massachusetts-based Defendants could lead to claims against it in any forum, but particularly Massachusetts, and likely included contractual provisions in its agreement to specifically address such contingencies (Adknowledge's contract with the Massachusetts-based Defendants has not been submitted to the Court).

11

First Circuit made clear that a court may impute the contacts of a Massachusetts defendant to a foreign defendant even in the absence of a formal "partnership, joint venture, or other particular agency relationship between the two defendants[.]"  *Daynard*, 290 F.3d at 57.  If the two defendants act in such a way that would leave the plaintiff or the public with the impression that such a relationship existed, then the conduct of the Massachusetts defendant may be imputed to the foreign defendant.   Here, the Defendants jointly promoted their product in a single advertisement for a single price.  FAC, ¶60.  Plaintiff Chang and the public could obviously reasonably believe that a joint venture, partnership, or agency relationship existed, given it would be difficult for the Massachusetts-based Defendants to sell Adknowledge's Super Rewards Points without some such relationship.   That Plaintiff "reasonably understood" such a relationship to exist is all that is required to impute the conduct of the entirely Massachusetts-based Defendants to that of Adknowledge.  *Daynard*, 290 F.3d at 59.

In addition, Adknowledge unequivocally accepted the benefits of the contractual relationship it had with the Massachusetts-based Defendants, and Adknowledge knowingly defended, and then ratified, the deceptive joint promotion when dealing with angry customers who reasonably believed the promotion to be one of Adknowledge's very own "Super Rewards Offers."  Exhibit A to Johnson Declaration (Adknowledge defended and ratified the deceptive promotion when responding to defrauded consumers without refuting the consumer's understanding that it was one of Super Rewards *own* offers); FAC, ¶62 (Massachusetts-based Defendants paid Adknowledge, at the very least, tens of thousands of dollars).  Such conduct is sufficient to create, at the very least, a reasonable basis for an understanding that an agency relationship exists, which is also sufficient to impute the conduct of the entirely Massachusetts-based Defendants to Adknowledge.  *Daynard*, 290 F.3d at 59-60 (noting that "the sole

requirement for ratification is a manifestation of assent or other conduct indicative of consent by the principal" and that by "knowingly accepting the benefits of the transaction initiated in Massachusetts, the … defendants ratified" the conduct which "ultimately gave rise to this lawsuit."). Adknowledge cannot authorize the Massachusetts conduct, defend and ratify that conduct, and then claim it looked the other way entirely to avoid personal jurisdiction here.

### 2. Adknowledge Purposefully Availed Itself Of The Privilege Of Conducting Business In Massachusetts

Because the Massachusetts-based Defendants' conduct can be properly imputed to Adknowledge, as explained above, there is no question that Adknowledge purposely availed itself of the privileges of conducting business in Massachusetts. Even without the imputation of such conduct, Adknowledge's own conduct would satisfy this test. It entered into a profitable joint venture with Massachusetts-based companies to promote its product alongside that of the Massachusetts-based companies' product. Adknowledge also concedes that its website allows merchants or advertisers from any state to conduct business with it (its website is not merely a passive source of information but an interactive mechanism for conducting business, *see* FAC ¶18), and that, through its website, it has in fact done business with Massachusetts companies such as Tatto and Wozo. Geroe Affidavit, Docket No. 26-1, ¶20. That alone has been held to be sufficient to establish purposeful availment, and particularly when the entity has entered into a contractual relationship to do business with a Massachusetts entity. *See Hasbro, Inc.*, 994 F.Supp. at 45 (foreign corporation's "Web site is interactive, encouraging and enabling anyone who wishes, including Massachusetts residents" to do business with the company, and that the "nature and quality of commercial activity that" the company "conducted over the Internet satisfies the 'purposeful availment' due process test."); *Id.* at 40 (noting that courts usually find that a website presence, a contractual relationship with a Massachusetts entity, and at least some

business done with Massachusetts residents sufficient to establish jurisdiction) (citing *Digital Equip. Corp.*, 960 F.Supp. 456).   Here, Adknowledge derived substantial revenue from its website business with its joint venture partners, the Massachusetts-based Defendants. Adknowledge can hardly argue it would be unfair if the benefits it derived from conducting business with these Massachusetts-based companies establish jurisdiction over it in this Court.

### 3.   The Gestalt Factors Are Also Readily Satisfied

As this Court explained in *Optos*:

> To determine whether the final prong, reasonableness, is met, courts in this circuit look to the so-called "Gestalt factors," including: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. *Cossaboon*, 600 F.3d at 33 n. 3.

*Optos*, 2011 WL 841254 at *5.

The first factor, the defendant's burden of appearing, is only meaningful where a defendant can show some kind of special or unusual burden, which is difficult in "the modern era" where travel between places such as New York and Puerto Rico is not considered to create an "especially ponderous burden."   *Id.* at *12 (internal quotations and citations omitted).   Here, Adknowledge has offices in neighboring New York (and Boston is much closer than Puerto Rico to New York), and Adknowledge operates an international business with revenues exceeding $300 million.   It cannot credibly there is an especially ponderous burden to appear in Court here.

The second factor, the forum's state's interest, also weighs heavily in Plaintiff's favor. The gravamen of Plaintiff's complaint is that two Massachusetts-based companies entered into various joint marketing ventures with a variety of other companies located throughout the country, including Adknowledge, to jointly promote their respective products in a deceptive

fashion.  The hub of the fraudulent activity was carried out in Massachusetts, though the spokes extended to various other states.[5]  Although the fraud reached residents inside and outside of Massachusetts, FAC ¶¶16, 70, no other state would have as great an interest as Massachusetts in cracking down on the alleged fraudulent scheme which was spearheaded by the Massachusetts-based companies.  Moreover, Adknowledge's argument, if accepted, would require that Plaintiff bring suit against Adknowledge in one state, and against the other defendants in another state. There is no reason that two different Courts should evaluate the merits of the Plaintiff's claims.

Similarly, the third factor, the Plaintiff's interest in obtaining relief, also weighs in Plaintiff's favor, because Mr. Chang can conveniently obtain all the relief he seeks, against _all_ Defendants, in a single forum in Massachusetts.  As this Court noted in *Optos*, "there is little reason to believe that it would be inconvenient for any non-parties who may be called as witnesses or otherwise assist the Court to appear in Massachusetts, and absent some such factor, the Court 'must accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience.'"  *Id.* at *12.  There is no reason to disturb Plaintiff's choice of forum in this action either.

The fourth factor, the judicial system interest in most effectively resolving the dispute, weighs in favor of Plaintiff for many of the reasons already discussed.  Adknowledge argues that the case should be brought in California, wrongly indicating that Mr. Chang's "lead counsel" is based in California.  Mr. Chang has retained counsel in both California and Massachusetts, each of which brings their own specialized expertise to this action.  Again, it makes no sense to

---

[5] Plaintiff Chang was the victim of a joint promotion of Adknowledge and the Massachusetts-based Defendants and, as a result, he has not asserted a claim against the other companies who were, like Adknowledge, partnering with the Massachusetts-based companies.  If a victim of the other joint promotions comes forward to assert a claim against the other "spokes" of the fraud, this case could be expanded or consolidated to include any such claim against other affiliates of the Massachusetts-based companies.

proceed with the same litigation in California and Massachusetts, especially given that Adknowledge itself claims that most of the relevant conduct occurred in Massachusetts. As in *Optos*, Adknowledge has not given any reason why this Court, "properly vested with personal jurisdiction, would have difficulty providing effective relief[.]" *Id.* at *12.

Adknowledge does not even seriously contest the fifth factor, the common interest of all sovereigns in promoting substantive social policies, and claims that no substantive policies are implicated by this action at all. It is not clear whether Adknowledge would argue that either Missouri or California would have a greater interest in promoting its substantive policies than Massachusetts. Regardless, there can be no question that the state where the hub of the fraudulent activity occurred has the greatest interest in promoting commerce free from deceptive and unfair business practices. Thus, all of the Gestalt factors have been satisfied.[6]

### C. Adknowledge's Deceptive Offer For Super Rewards Points Injured Chang.

On page 13 of Adknowledge's memorandum in support of its motion to dismiss, it appropriately devotes less than a page to argue that only Wozo injured Chang, not Adknowledge. As the FAC explains, Chang was lured into the scam here by a joint promotion offering both

---

[6] As argued herein, Plaintiff respectfully submits that specific jurisdiction over Adknowledge exists. In addition, Plaintiff also contends that Adknowledge's general business contacts in Massachusetts, through its website, business partners (advertisers, publishers, etc.) and customers, is sufficient for general jurisdiction as well. In the event the Court were to conclude otherwise, Plaintiff respectfully requests leave to conduct discovery concerning both facts related to specific jurisdiction (merely by way of example, the contract between Adknowledge and the Massachusetts' defendants) and Adknowledge's other Massachusetts contacts to determine whether the Court may exercise general jurisdiction over Adknowledge. Adknowledge claims over 10,000 advertising clients and does not identify how many publishers use its website. Even assuming Massachusetts did not possess a greater than average number of high technology companies than other states, that would suggest that Adknowledge has at least 200 Massachusetts advertising clients (10,000 divided by the 50 states). Adknowledge has many other kinds of business partners and customers as well, including publishers. Thus, Plaintiff should be entitled to discovery concerning its general business contacts in Massachusetts, which the Geroe affidavit conveniently fails to address.

Super Rewards Points and a "free" poster for a single 99-cent shipping fee.   FAC, ¶1 ("Defendants lure consumers with an online promotional offer for a 'free' poster and other benefits [Super Rewards Points].   According to Defendants, the only cost associated with the offer is a 99-cent shipping charge."); ¶¶73-74 (noting that none of the Defendants "adequately disclose[d] to Plaintiff that he would be charged for anything but the 99-cent shipping fee, let alone a recurring $29.99 fee for a monthly membership in a poster club.").   Not even the most twisted interpretation of the FAC could support Adknowledge's position here.   The joint advertisement was deceptive because it failed to adequately disclose the true terms of the transaction.   *Id.*   Thus, the joint advertisement violated c.93A and injured Chang.   Simply because the Wozo website was also deceptive in violation of c.93A does not excuse Adknowledge's liability for the deceptive joint advertisement that led Chang to the website in the first instance.

### D. The Communication Decency Act Protects Only Neutral Intermediaries, Not Joint Speakers

Adknowledge's final argument is that it is immunized from liability by the CDA because it was a neutral intermediary that merely published the speech of Wozo and had no role in the content of that speech.   *See Universal Communication Systems, Inc. v. Lycos, Inc.*, 478 F.3d 413, 418 (1st Cir. 2007).   To Adknowledge's credit, it acknowledges that the only court to address whether Adknowledge is entitled to protection by the CDA has concluded that it is *not*. Adknowledge Memo. In Support of Motion to Dismiss at 16 (citing *Swift v. Zynga Game Network, Inc., et. al.,* No. 09-05443, 2011 WL 4569889 (N.D. Cal. Nov. 2, 2010) (finding Adknowledge was *not* entitled to CDA protection).   While Adknowledge claims it lost the argument in *Zynga* because the record was less clear, any greater clarity here only bolsters the

conclusion that the CDA cannot shield Adknowledge from liability for its joint speech with the Massachusetts-based Defendants.

To be sure, Adknowledge is correct that if it merely had made a forum available for third party speech on the Internet, it could not be held liable for third parties who utilized that forum to speak.  47 U.S.C. §230(c) (1) ("No provider or user of an interactive computer service shall be treated as publisher or speaker of any information provided by another information content provider.").  "A key limitation, however, is that immunity only applies when the information that forms the basis for the state law claim has been provided by '*another* information content provider.'"  *Universal*, 478 F.3d at 419.  "Thus, an interactive computer service provider **remains liable for its own speech**." *Id.* (emphasis added).  This limitation on CDA protection is interpreted quite broadly according to the First Circuit:

> Section 230 defines "information content provider" to be "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." … This is a broad definition, covering even those who are responsible for the development of content only "in part."

*Universal*, 478 F.3d at 19 (emphasis added).

While the factual allegations in *Zynga* may indeed have been less clear, there is one very clear factual allegation here that distinguishes this case from the cases relied on by Adknowledge: the allegedly unlawful joint advertisement in the present case promoted Adknowledge's very own product, Super Rewards Points, alongside the Massachusetts-based Defendants' poster product, and the content of this *joint* speech was indisputably developed and created with Adknowledge's authorization and participation.[7]  Indeed, the Massachusetts-based

---

[7]  Adknowledge ignores the allegations that the joint advertisement did not adequately disclose the true cost of the promotion or the fact that it was selling a monthly membership rather than just Super Rewards Points and a "free" poster.  FAC ¶¶1, 73-74.  By focusing exclusively on the

Defendants could not have promoted Super Rewards Points unless Adknowledge had agreed to include that content in the joint promotion. While Adknowledge may not be responsible for all of the information in the joint advertisement (such as the inclusion of the "free" poster in the promotion), it cannot deny its responsibility for the content of the promotion "in part," because it is undisputed that the Super Rewards Points were included in the advertisement with the participation of Adknowledge. To escape liability here, Adknowledge would have to argue that it did not agree to the creation and development of a joint promotion for its Super Rewards Points alongside the "free" poster – a position that not even Adknowledge advances. Indeed, the FAC contains lengthy allegations making clear that Adknowledge fully and voluntarily agreed to the inclusion of Super Rewards Points in the joint promotion:

> Together, Defendants created and developed a promotional campaign as joint venturers, including banners and other advertisements offering a free poster *and* Super Rewards Points to consumers for a 99-cent shipping fee. Defendants, and each of them, placed such banners and other advertisements on the Internet.

---

Wozo website and not the joint advertisement, Adknowledge distorts the allegations of the FAC beyond reason. Plaintiff added allegations to the FAC after a meet and confer about this very issue. There can be no doubt that Plaintiff challenges the *joint* speech contained in the *joint* advertisement:

> On the contrary, Adknowledge agreed to jointly promote its own product, Super Rewards Points, with the Wozo Defendants' product, a purportedly free poster, in a single advertisement for a single price. Accordingly, both Adknowledge and the Wozo Defendants were each separately responsible for some of the information in the Internet advertisement. Adknowledge obviously could not advertise the sale of Wozo Defendants' posters without an agreement with the Wozo Defendants. Similarly, the Wozo Defendants could not advertise the sale of Super Rewards Points without an agreement with Adknowledge. **However, through their agreement, each party to the transaction authorized the creation and development of the Internet advertisement that jointly promoted their respective products, and is responsible for the inclusion of at least some of the information contained in the advertisement, specifically, the inclusion of their respective product in the joint promotion**.

FAC, ¶61 (emphasis added).

Adknowledge made a decision to include an offer for its own product among the other content contained in the Internet advertisement that also promoted the Wozo Defendants' poster. **Through its agreement with the Wozo Defendants, Adknowledge authorized the development, creation, and publication of the joint Internet advertisement.**

FAC, ¶¶59, 63 (emphasis added); *see also* FAC ¶¶ 61, 64-66.

If Adknowledge had merely published advertisements for the poster alone without adding content to the joint promotion, it is less likely that it could be held liable for the speech of the Massachusetts-based Defendants. That, unfortunately for Adknowledge, is not consistent with the factual allegations here. Instead, Adknowledge *jointly* spoke by creating and developing a joint promotion with the other Defendants. Adknowledge is responsible for the very deceptive content that misled Chang. Indeed, without the Super Rewards Points included in the joint advertisement, Chang would never have been injured in the first instance. While it may raise other defenses in this action, the CDA immunity argument simply cannot be squared with the fact that Adknowledge "is responsible, in whole or in part, for the creation or development of information" included in the joint advertisement that pertained to the deceptive offer of Super Rewards Points for a mere 99-cent shipping fee. *Universal*, 478 F.3d at 19. Indeed, there is no other party that could be responsible for such information besides Adknowledge.

## IV.   CONCLUSION

Plaintiff respectfully requests that the Court deny Adknowledge's motion to dismiss the First Amended Complaint.

Dated : May 13, 2011                    By:    /s/ Todd S. Heyman

                                        Todd S. Heyman (BBO # 643804)
                                        Robert E. Ditzion (BBO # 660962)
                                        SHAPIRO, HABER & URMY LLP
                                        53 State Street
                                        Boston, MA 02109
                                        Tel: (617) 439-3939
                                        Fax: (617) 439-0134
                                        theyman@shulaw.com
                                        rditzion@shulaw.com

                                        Karl S. Kronenberger
                                        (admitted *pro hac vice*)
                                        Virginia A. Sanderson
                                        (admitted *pro hac vice*)
                                        KRONENBERGER BURGOYNE, LLP
                                        150 Post Street, Suite 520
                                        San Francisco, CA 94108
                                        Tel: (415) 955-1155
                                        Fax: (415) 955-1158
                                        karl@KBInternetLaw.com
                                        ginny@ KBInternetLaw.com

                                        Attorneys for Plaintiff and the Classes


## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 13, 2011.

                                        /s/ Todd S. Heyman
                                        Todd S. Heyman