**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| **SUK JAE CHANG**, and **SARAH JOHNSON**, individually and on behalf of other similarly situated persons,<br><br>        **Plaintiffs,**<br><br>    v.<br><br>**WOZO, LLC, TATTO, INC.**, **ADKNOWLEDGE, INC.**, **LIN MIAO**, and **ANDREW BACHMAN**,<br><br>        **Defendants.** | **No.  11-cv-10245-DJC**<br><br><br>**Jury Trial Demanded**<br><br><br>**Leave to File Granted on February 25, 2013** |

**SECOND AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Suk Jae Chang and Sarah Johnson (collectively, "Plaintiffs") bring this action on behalf of themselves and all similarly-situated individuals and allege as follows:

**INTRODUCTION**

1.    This action concerns a scheme by Defendants Wozo, LLC, Tatto, Inc., Adknowledge, Inc., Lin Miao, Andrew Bachman, and each of them (collectively, "Defendants") to charge consumers for a monthly membership in a poster club at a cost of $29.99 without adequately disclosing the existence or cost of that product to consumers.  Defendants lure consumers with an online promotional offer for a "free"

1

poster and other benefits.  Defendants represent that the only cost associated with the offer is a 99-cent shipping charge.  However, Defendants fail to disclose adequately that, by ordering the "free" poster and submitting their debit or credit card information for payment of the 99-cent shipping fee, consumers are actually purchasing a monthly membership in a poster club at 30 times the cost of the product that was actually advertised, a single poster.  If the monthly membership is not cancelled within four days, the consumer's payment card is charged the first of many $29.99 monthly membership fees, and the consumer is automatically mailed two arbitrarily-chosen posters each month.

2.      In other words, Defendants are selling a completely different product than the one displayed on the web pages necessarily accessed in the process of completing the transaction to obtain the "free" poster.  Indeed, there is no mention of the "monthly membership" anywhere on such web pages.  As a result, instead of buying a poster for 99 cents (the purported cost of shipping), consumers are actually purchasing a monthly membership in a useless "poster club."  The consumers who participate in the "free" poster promotion are generally charged the first $29.99 monthly membership fee that appears on their credit card statement after the 4-day cancellation window has expired.

3.      Consumer rights websites and social networking message boards are replete with complaints about Defendants' "poster scam."  Indeed, it is clear that Defendants' poster club with its monthly membership is not designed to be operated as a legitimate business that could actually appeal to consumers absent Defendants' misrepresentations.  Few consumers, if any, would ever elect to buy a $29.99 monthly membership to receive only two posters per month, particularly when those posters are

arbitrarily selected by someone else.  As a result, it is hardly surprising that Defendants did not mention the monthly membership on the web pages that were necessarily accessed to complete the transaction.

4.      As alleged in greater detail below, Defendants have committed a pattern and practice of unfair and deceptive acts or practices in violation of Massachusetts General Laws Chapter 93A, Section 2(a) ("M.G.L. c. 93A § 2"), including but not limited to knowingly employing misleading and deceptive advertising which misrepresented and/or failed to adequately disclose the true terms of their offer.

5.      As alleged in greater detail below, certain Defendants have also violated the Electronic Funds Transfer Act, 15 U.S.C. § 1693 et seq. ("the EFTA") by initiating electronic transfers of funds from debit card accounts without first obtaining valid authorization in writing from the account holders.  In addition, certain Defendants violated the EFTA by failing to provide a copy of any purported written authorization at the time such authorization was allegedly made.

6.      Plaintiffs Suk Jae Chang and Sarah Johnson have been injured by Defendants' conduct as described herein.  Plaintiffs bring this class action individually and on behalf of all similarly-situated individuals.  Plaintiffs ask this Court to order Defendants to pay restitution and damages to these aggrieved consumers and assess costs against Defendants, and each of them, pursuant to M.G.L. c. 93A § 2 and the EFTA.

**PARTIES**

7.      Plaintiff Suk Jae Chang is an individual who resides in Arcadia, California.

8.      Plaintiff Sarah Johnson is an individual who resides in Gwinn, Michigan.

9.      Defendant Wozo LLC ("Wozo") is a Delaware limited liability company with its principal place of business in Boston, Massachusetts.  On information and belief, and as alleged herein, Wozo has an office at 101 Federal Street, Suite 1900, Boston, Massachusetts 02210 and conducts business from Defendant Tatto Inc.'s Boston headquarters located at 155 Federal Street, Suite 600, Boston, Massachusetts 02110.

10.     Defendant Tatto Inc. ("Tatto") is a Delaware corporation with its principal place of business in Boston, Massachusetts.  On information and belief, Tatto maintains its headquarters at 155 Federal Street, Suite 600, Boston, Massachusetts 02110.

11.     Defendant Adknowledge, Inc. ("Adknowledge") is a Missouri corporation with its principal place of business in Kansas City, Missouri and with other offices in the San Francisco area, Los Angeles, and New York City.

12.     Defendant Lin Miao ("Miao") is an individual and a principal of both Tatto and Wozo.  Miao owns property in Boston, Massachusetts and, on information and belief, was a Massachusetts resident during the relevant time period.

13.     Defendant Andrew Bachman ("Bachman") is an individual and a principal of both Tatto and Wozo.  Bachman owns property in Boston, Massachusetts and, on information and belief, was and is a Massachusetts resident.

14.     At all relevant times, each of the Defendants were acting as the agents, servants, and employees of their co-Defendants, and each of them, in doing the things hereinafter alleged, were acting in the scope of their authority as agents, servants, and employees and with the permission, consent, authorization and ratification of their co-Defendants.

//

**JURISDICTION AND VENUE**

15.     This Court has subject matter jurisdiction over Plaintiffs' claims for violation of the EFTA pursuant to 15 U.S.C. § 1693e and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367(a).

16.     On information and belief, this Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) over the state law claims asserted because the amount in controversy in this matter exceeds the sum or value of $5,000,000 exclusive of interests and costs, and this matter is a class action in which a member of each of the classes of plaintiffs is a citizen of a state different from any Defendant, and the so-called "local controversy" set forth in 28 U.S.C § 1332(d)(4) exception does not apply.

17.     This Court has personal jurisdiction over Wozo because Wozo maintains its headquarters within Massachusetts and conducts substantial business within Massachusetts, such that Wozo has significant continuous and pervasive contacts within the Commonwealth of Massachusetts.

18.     This Court has personal jurisdiction over Tatto because Tatto maintains its headquarters and employees within Massachusetts and conducts substantial business within Massachusetts, such that Tatto has significant continuous and pervasive contacts within the Commonwealth of Massachusetts.

19.     This Court has personal jurisdiction over Adknowledge because Adknowledge conducts substantial business within Massachusetts, including but not limited to business conducted with Wozo and Tatto, such that Adknowledge has significant   continuous   and   pervasive   contacts   within   the   Commonwealth   of

5

Massachusetts.  Not only did Adknowledge do business with Wozo and Tatto, but the companies cooperated technologically such that their respective computer servers communicated with each other so that they could each track how many participants in the Wozo poster promotion came through an advertisement that jointly promoted both Wozo's poster and Super Rewards, the latter of which is an Adknowledge virtual currency product as explained further herein.  On information and belief, like Plaintiffs, Massachusetts residents participated in the same Wozo poster promotion in response to a joint advertisement promoting both the poster offer and Super Rewards Points.

20.    On information and belief, Adknowledge became an independent company in approximately 2004.  Since that time, Adknowledge has grown substantially and has acquired numerous other companies.  It has locations in California, Florida, Missouri, New York, Australia, Canada, and the United Kingdom.  Adknowledge claims to operate the fourth-largest advertiser marketplace and claims to be the largest privately held Internet advertising network in the United States.  In January of 2011, Adknowledge announced that it raised over $200 million in debt and equity financing, including from Bank of America and JMI Equity.  It claims that it closed 2010 with over 330 employees and over $300 million in annual revenue.

21.    In addition, Adknowledge has other business partners, clients, advertisers, and affiliates located in Massachusetts and/or doing business in Massachusetts.  For example, one of its clients is the University of Phoenix, which has campuses in Westborough, Braintree, and Burlington, Massachusetts.  Adknowledge claims that it has over 10,000 advertisers that bid for traffic (such as entities like Tatto and Wozo) and that it generates over 280 million clicks per month.  It is virtually inconceivable that none

6

of these advertisers are located in Massachusetts and that none of the reportedly 3 billion clicks per year occur in Massachusetts.   This is especially so because Adknowledge solicits business through its website to all states and does nothing to avoid soliciting business in Massachusetts.   Quite the opposite, Adknowledge has solicited business with companies in every state through its website, including Massachusetts, and engaged in transactions with Massachusetts businesses, such as the Massachusetts-based Defendants here.   On information and belief, Adknowledge has been paid, at the very least, in the tens of thousands of dollars through its collaboration with the Massachusetts-based Defendants here.   Adknowledge's website is not a passive page merely providing information about the company, but actively solicits advertisers and others to use its services through its website in order to generate revenue from such transactions.

22.   This Court has personal jurisdiction over Miao because Miao owns real property in Massachusetts and, at all relevant times, Miao was a resident of Massachusetts.   Further, Miao conducts substantial business (including that challenged herein) within Massachusetts, such that Miao has significant continuous and pervasive contacts within the Commonwealth of Massachusetts.

23.   This Court has personal jurisdiction over Bachman because Bachman owns real property in Massachusetts and, at all relevant times, Bachman was a resident of Massachusetts.   Further, Bachman conducts substantial business (including that challenged herein) within Massachusetts, such that Bachman has significant continuous and pervasive contacts within the Commonwealth of Massachusetts.

24.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants Wozo and Tatto are headquartered in this judicial district, all Defendants are subject to personal jurisdiction in this judicial district, and a substantial number of the acts giving rise to the violations of law complained of herein occurred in or emanated from this judicial district.

### GENERAL ALLEGATIONS

### Alter Ego Allegations as to Wozo

**A. Tatto's Corporate Structure and History**

25.     Tatto is an online advertising company specializing in mobile marketing.

26.     On information and belief, Tatto was founded in 2005 by a group of students at Babson College, including Miao and Bachman.  On his LinkedIn profile, Miao touts himself as Tatto's "Founder and CEO."   Bachman has been listed as "President," "Co-Founder," and "Director of Global Sales" of Tatto.

27.     According to the WHOIS domain registry database ("WHOIS"), and corporate and other public records, Tatto has a business address located at 10 High Street, Suite 900, Boston, Massachusetts 02111.  However, Tatto's own website lists its address as 155 Federal Street, Suite 600, Boston, Massachusetts 02110.  According to the website of commercial real estate company Farley White Interests, at http://farleywhite.com/federal.php, 10 High Street and 155 Federal Street are the same building, which is located at the corner of Federal and High Streets in Boston.   Plaintiffs are informed and believe that Tatto either occupies, or has occupied, two floors of the same building, or at one point moved from one floor to the other.  Thus, 10 High Street,

Suite 900 and 155 Federal Street, Suite 600 are collectively referred to herein as "Tatto's Office."

28.     In 2008, Tatto won the Babson Student Business of the Year Award. However, Tatto's early success was soon overshadowed by scandal.  In the ensuing months and years, and under the direction of Miao and Bachman, Tatto earned a bad reputation as being responsible for a variety of notorious mobile phone and Internet consumer scams.

29.     For example, in 2009, Tatto had been banned by Facebook for sending deceptive advertisements on its network in violation of Facebook's policies.

30.     Tatto was also twice sanctioned by the Washington State Attorney General for deceptive advertising.   In the first incident in 2008, Tatto promised consumers to reveal the identity of a secret admirer or "LuvCrush."  When consumers clicked on the link they were directed to another page instructing them to enter their cell phone number in order to learn the identity of their admirer.  The page included an agreement for a paid horoscope text-messaging subscription costing $9.99 per month. If the consumer subscribed by providing a cell phone number, the consumer was sent a text message containing the name of a fictitious person.  Tatto settled with the Washington Attorney General for approximately $20,000 with an "assurance of discontinuance."   A few months later, Tatto paid approximately $500,000 to the Washington Attorney General to resolve claims of yet more deceptive advertising.

31.     TechCrunch, an industry-leading technology blog, has reported that Tatto is "the company at the very end of the line on most mobile scams," such as an IQ test link where the consumer's results are supposed to be sent by text message, but the

9

provision of the mobile phone number for the text message also enables Tatto to charge the consumer for a premium text-messaging subscription through the mobile phone company.

32.     Mark Pincus, the CEO of Zynga, an Internet game company that makes free games that contain offers from companies like Tatto, terminated its relationship with Tatto in 2009.  Pincus stated in response to criticism about Zynga accepting such offers in its games: "We have worked hard to police and remove bad offers.  In fact, the worst offender, tattoo [sic] media, referenced in the Techcrunch article, had already been taken down and permanently banned prior to the post [criticizing Zynga for bad offers in its games]."

**B. Miao's, Bachman's, and Tatto's Formation and use of Wozo as a Corporate Shell**

33.     The so-called "Wozo Poster Scam" at issue in this action was developed by Miao and Bachman, using Tatto's facilities and resources, long before Wozo, the company, was ever formed.

34.     On information and belief, in or about Fall 2009, Tatto acquired the domain <wozo.com> ("the Wozo Website"). At the time, Miao was personally listed as the administrative, technical, and registrant contact for the Wozo Website on its domain registration.  Miao's Tatto email address, lin@tattomedia.com, and the address for Tatto's Office were provided as the contact information for Tatto in the Wozo Website domain registration.

35.     On information and belief, on or about July 26, 2010, Tatto, Miao, Bachman and/or their representatives, employees, agents and assigns, formed Wozo

as a device to avoid liability by substituting a financially irresponsible limited liability company in the place of Tatto, Miao and Bachman.

36.     On information and belief, after Wozo was organized and formed, Tatto transferred ownership of the Wozo Website to Wozo.

37.     Through Tatto, Miao and Bachman originally designed and later promoted the Wozo "free" poster promotion to deceptively sell the monthly memberships that are the subject of this action.

38.     Specifically, using Tatto's facilities and resources, Miao and Bachman sought affiliates to work with them to promote the poster promotion, including the following specific solicitation efforts described below:

a.  On information and belief, on or about September 9, 2010, Bachman personally sent an email to advertising affiliates identifying himself as a "Founder of Tatto," and inviting them to promote "a poster subscription offer called Wozo" that he had "recently founded."

b.  On information and belief, on or about November 12, 2010, Bachman sent another email to advertising affiliates inviting them to promote the Wozo poster promotion.

39.     On information and belief, Wozo has never had a legitimate office of its own and its business is, and always has been, conducted by Miao and Bachman from Tatto's Office.

40.     Moreover, upon information and belief, Wozo actually did not have any employees, and Tatto employees carried out all work in connection with Wozo's business activities, including for example, call center employees that handled

11

complaints from the defrauded poster customers, and employees that received and stored posters which were returned to Tatto by customers seeking a refund after having been misled about the true terms and conditions of the poster promotion.  Indeed, some returned posters were stored in the offices of Tatto's CEO, Miao, and Bachman, now Tatto's president.   On further information and belief, Miao developed a reputation among Tatto employees for laughing when customers called to complain about the deceptive nature of the Wozo poster promotion.

41.     Upon information and belief, Miao and Bachman were the very persons who created Wozo in order to effectuate the deceptive poster promotion through an undercapitalized limited liability company in an attempt to shield themselves and Tatto from liability.  Upon information and belief, Miao and Bachman were responsible for the presentation of the web pages in connection with the poster promotion and had control over what was disclosed to consumers and the manner in which such disclosures were made (or not made).   Upon information and belief, Miao and Bachman are also responsible for the decision to have Tatto employees carry out all the work in connection with the poster promotion.

**C. The TechCrunch Article and Miao's, Bachman's, and Tatto's Post-"Scamville" Attempts to Distance Themselves from Wozo and Prevent Consumers from Seeking Legal Assistance**

42.     On October 18, 2010, an article was published in TechCrunch entitled "Free Posters! AKA Scamville, It's Back" (the "TechCrunch Article").  The TechCrunch Article repeatedly referred to the Wozo free poster offer as a "scam" for failing to conspicuously disclose that, by ordering a "free" poster, consumers were enrolling in a poster club with a monthly subscription fee.

43.     More importantly, the TechCrunch Article expressly identified Tatto, Miao, and Bachman as being "behind this most recent scam."  The TechCrunch Article quoted emails between the author and Miao wherein Miao denied any ownership interest in Wozo.  The article noted the ridiculousness of this claim given that Bachman had emailed advertisers regarding the "free" poster promotion, identifying himself as "Founder of Tatto."

44.     After publication of the TechCrunch Article, Miao and Bachman acted swiftly in a desperate attempt to distance themselves and Tatto from Wozo.

45.     On October 20, 2010, only two days after the TechCrunch Article, Miao and Bachman, acting through Tatto, entered into a "Virtual Office Agreement" with executive suite rental agency Regus PLC, in order to obtain an address for Wozo and create the appearance that Wozo had an office independent of Tatto's.  Miao personally filled out and executed the Virtual Office Agreement, providing the address of Tatto's Office as his contact information.  Miao, who in the TechCrunch Article claimed not to have any personal affiliation with Wozo, provided his Wozo email address— lin@wozo.com—and his personal cell phone number as further contact information for Wozo on the rental agreement.  On information and belief, Miao paid Regus using a Tatto American Express Business Card in Miao's name.

46.     On information and belief, on October 20, 2010, on the same day that the Virtual Office Agreement was executed, Miao and Bachman, acting through Tatto, changed the address for Wozo in WHOIS to the address of the Regus "Virtual Office," 101 Federal Street, Suite 1900, Boston, Massachusetts 02210.

47.     On information and belief, on October 20, 2010, only two days after the TechCrunch Article, Miao and Bachman, acting through Wozo, registered the domain name <discountposterwall.com>.  Plaintiffs believe that Miao's and Bachman's purpose in doing so was to re-launch the "free" poster offer at a website other than the Wozo Website, so as to prevent it from being recognized as the "scam" referenced in the TechCrunch Article.

48.     On information and belief, on October 21, 2010, only three days after the TechCrunch Article, Miao and Bachman, acting through Wozo, registered the domain name <wozoscam.com> (the "Wozo Scam Website").  As pictured in the screenshot below, the Wozo Scam Website purports to be the work of a "team of consumer protection advocates" entitled the "Consumer Protection Portal" soliciting complaints about the "free" poster offer:

//

//

//

//

//

//

//

//

//

//

//



**CONSUMER**
**PROTECTION PORTAL**
*Don't Let Them Get Away With It!*

Unauthorized Charge from Wozo.com?

If you have been charged without authorization by wozo.com†, you may be eligible to take part in a customer protection group to recover your money. A team of consumer protection advocates is investigating claims of unauthorized charges from wozo.com† following a poster or other merchandise purchase.

If you have received unauthorized charges, you may be entitled to recover money. Please contact us today. Fill out the form on the form below. Do not let them get away with it!

**Are You Angry? Be Heard**
If you have been charged without authorization by wozo.com†, you may be eligible to take part in a consumer protection group to recover your money.

**Personal Information**

**Name** *

First        Last

**Address** *

Street Address

Address Line 2

City                          State / Province / Region

                              Antigua and Barbuda

Postal / Zip Code             Country

**Phone Number** *

###  -  ###  -  ####

49.    The Wozo Scam Website informs consumers that "you may be entitled to recover money," and states "Do not let them get away with it!", without ever disclosing that the Wozo Scam Website was registered to Wozo or was being operated by Miao, Bachman, and Tatto.

50.    On information and belief, Miao and Bachman, acting through Tatto and Wozo, purchased pay-per-click and other advertising to promote the Wozo Scam Website to consumers—i.e., to members of the Class.

51.    On information and belief, Miao and Bachman, acting through Tatto and Wozo, registered, operated, and promoted the Wozo Scam Website with the fraudulent

15

intent of deceiving members of the Class and preventing them from seeking assistance from a legitimate law firm or consumer protection group that could result in legal action against Miao, Bachman, or Tatto.

### D. Adherence to the Fiction of Wozo as a Separate Entity would Sanction Fraud and Promote Injustice

52.   On information and belief, at all relevant times, Wozo was and is a mere corporate shell and naked framework over which Tatto, Miao and Bachman maintained dominant and pervasive control and through which Tatto, Miao and Bachman conducted their own business, including the fraudulent Wozo poster promotion conceived and operated by Miao and Bachman through Tatto.  Indeed, Wozo's sole business activity was the poster promotion and Miao and Bachman exercised full control over that promotion through Tatto.

53.   On information and belief, Wozo's officers, including Miao and Bachman, are also the principals, officers, and/or founders of Tatto, resulting in a unity of interest and ownership between the two entities.

54.   On information and belief, Miao and Bachman personally oversaw the day-to-day operations of Wozo and, at all relevant times, were responsible for all major decisions made by Wozo.   Miao and Bachman were personally involved in and responsible for the misconduct alleged herein.   Miao and Bachman also personally shared in the revenues earned by Wozo as a result of the misconduct.  As such, there exists a unity of interest and ownership between Miao and Bachman, on the one hand, and Wozo, on the other.

55.     Miao and Bachman, using Tatto's resources and facilities, created Wozo with the express intent of shielding themselves, and Tatto, from liability for the "free" poster offer and the poster club.

56.     Another reason Miao and Bachman decided to create Wozo as a separate limited liability company was to shield Tatto from more adverse media coverage in order to protect its reputation so that they could personally profit from an upcoming sale of Tatto.

57.     Avoiding additional bad publicity as an Internet scammer had benefits for Tatto and its officers.  The Wozo poster scam was not prominently linked to Tatto because of the creation of the undercapitalized, alter ego limited liability company, Wozo, even though, upon information and belief, only Tatto officers and employees were working on the Wozo poster promotion.  Instead, most of the public consumer complaints about the poster scam focused on Wozo.

58.     On April 11, 2011, Tatto was reportedly sold for $60 million dollars, and, on information and belief, its officers, including Miao and Bachman, profited significantly from its sale.  Since the sale of Tatto, Miao claims to have "started his own $10 million angel fund."  Similarly, Bachman has founded a venture capital firm, ARB Ventures.

59.     By virtue of the foregoing, adherence to the fiction of the separate existence of Wozo would, under the circumstances, sanction a fraud, promote injustice, and result in a fraudulent and injurious consequence in that Plaintiffs and those similarly-situated individuals upon whose behalf Plaintiffs bring this action would be unable to recover upon any judgment in their favor.

60.     For the reasons stated above concerning the allegations as to the alter ego status of Wozo, wherever the term "Wozo" is used hereinafter, said term shall refer to and include Miao, Bachman, and Tatto regardless of whether Miao, Bachman, or Tatto are also expressly mentioned.  Miao, Bachman, Tatto, and Wozo are collectively referred to herein as the "Wozo Defendants."

61.     On information and belief, at all times relevant, Miao, Bachman, Tatto and Wozo acted for each other in connection with the conduct hereinafter alleged and each of them performed the acts complained of herein or breached the duties herein complained of as agents of each other, and each is therefore fully liable for the acts of the other.

### The "Free" Poster Promotion

62.     Through the Wozo Website, the Wozo Defendants sell posters of popular music, film, television, and sports figures as well as "fine art" prints.  According to the "About Us" page of the Wozo Website, "Wozo.com has provided 100's of thousands of customers with the largest selection of posters and art prints at the lowest prices."

63.     On information and belief, the Wozo Defendants formed the Wozo poster club, wherein members of the poster club would receive an automatic shipment of two posters per month from the Wozo Website in exchange for payment of a $29.99 monthly membership fee.

64.     On information and belief, concurrent with the formation of the Wozo poster club, the Wozo Defendants launched a promotional campaign, wherein they placed banners and other advertisements on the Internet offering a free poster to

consumers for a 99-cent shipping fee.   These advertisements did <u>not</u> adequately disclose the following information:

    a.   That consumers who ordered a "free" poster from the Wozo Website would be automatically charged  a $29.99 per month membership fee in the Wozo poster club;

    b.   That consumers who ordered a "free" poster from the Wozo Website had to cancel their monthly membership in the Wozo poster club within four (4) days of ordering a "free" poster in order to avoid being charged the monthly membership fee in the Wozo poster club;

    c.   That the debit or credit card information submitted by consumers who ordered a "free" poster from the Wozo Website would be retained by the Wozo Defendants; or

    d.   That consumers who ordered a "free" poster from the Wozo Website and did not cancel their monthly membership in the Wozo poster club within the four-day window would be charged a $29.99 monthly membership fee on the debit or credit card provided to the Wozo Defendants for the purpose of paying the 99-cent shipping fee.

65.   On information and belief, when a consumer clicked on an Internet advertisement for the Wozo "free" poster offer, the consumer was redirected to the Wozo Website to select a poster.

66.   On information and belief, at all times relevant, <u>none</u> of the web pages necessarily accessed by a consumer to complete an order for a "free" poster adequately disclosed any of the relevant information listed out above.

67.    Screenshots substantially matching the web pages necessarily accessed by a consumer to complete an order for a "free" poster appear below:





//

//

//

//

//





68.     The above screenshots make no mention of a monthly membership, the cost of such a monthly membership, the fact that such cost would be automatically charged to the consumer unless the undisclosed monthly membership was cancelled within four days, or that the consumer's credit or debit card information used to pay the shipping cost of the "free" poster would be retained by certain Defendants in order to charge those cards for the monthly membership.

69.     In addition, there is a pre-checked box indicating that the customer agrees to all terms and conditions, though the text by that box is not a hyperlink to the so-called terms and conditions of the deal.  Congress has recently passed a law in response to abusive practices called the Restore Online Shoppers Confidence Act, which specifically prohibits opt-out online membership programs like the one the Wozo Defendants fraudulently sold in connection with the "free" poster promotion.

70.     On information and belief, the Wozo Defendants retained the debit or credit card information submitted by consumers who ordered a "free" poster from the Wozo Website without the express authorization of the cardholders.

71.     On information and belief, the Wozo Defendants charged all consumers who ordered a "free" poster from the Wozo Website, and did not cancel their monthly membership in the Wozo poster club within the four-day window, a $29.99 monthly membership fee.   The $29.99 fee was charged, without the authorization of the cardholders, to the debit or credit card originally provided to the Wozo Defendants.

72.     The Wozo Defendants willfully and knowingly concealed the existence, automatic enrollment, terms, and cost of the monthly membership in the Wozo poster club to consumers viewing and responding to the Wozo "free" poster promotion.

73.     By failing to adequately disclose the existence, automatic enrollment, terms, and cost of the monthly membership in the Wozo poster club to consumers prior to their submission of a "free" poster order, the Wozo Defendants willfully and knowingly charged the consumers for a monthly membership in the Wozo poster club without the consumers' knowledge and consent.

74.     By enrolling consumers in a monthly membership in the Wozo poster club without adequately disclosing the existence of the monthly membership product and its cost (as well as other terms and conditions of the transaction), the Wozo Defendants willfully and knowingly charged consumers' debit and credits cards the $29.99 monthly membership fee without proper written authorization of the cardholders.

75.     Because the Wozo Defendants' "free" poster promotion was a deceptive and unfair business practice, it has been the subject of significant criticism.   Outraged

consumers complained about the failure to adequately disclose the true nature of the transaction.  Presumably in response to such criticism, Defendants later changed the website for the promotion to more accurately disclose the nature of the transaction. Screenshots substantially matching more recent versions of the website pages appear below:



76.     Unlike previous versions of these web pages, the above website screenshots disclose the existence of the monthly membership, the cost of the monthly membership, and that consumers' debit and credit cards would be automatically charged for the membership if the consumers did not cancel within four days.

77.     Upon information and belief, Defendants charged thousands of monthly memberships to consumers before modifying their website to more accurately disclose the nature of the transaction.

//

//

## Adknowledge's Partnership with the Wozo Defendants

78.    On information and belief, the Wozo Defendants extended the scope and appeal of the Wozo "free" poster promotion by forming strategic partnerships within the online advertising, gaming, and social networking industries to offer additional "free" benefits to consumers, including but not limited to virtual currency.

79.    Over the past several years, the marriage of social networking websites with traditional video games has resulted in the growing popularity of role-playing and "simulation" games.  Notable examples include *Second Life*, *FarmVille*, and *Mafia Wars*. The virtual worlds created by these games contain economic structures, wherein players exchange virtual currency or goods within the game, usually to increase their power or standing as a player.

80.    Some virtual currency platforms are monetized—that is, a player can obtain virtual currency for use within a game by either (1) using real money to purchase virtual currency, or (2) purchasing products from the platform's advertising partners. Accordingly, these monetized platforms use virtual currency to earn real money for gaming companies, platform operators, and their affiliated advertisers.

81.    On information and belief, Adknowledge owns and operates a virtual currency platform called "Super Rewards," the units of which are commonly referred to as "Super Rewards Points."  Super Rewards Points may be used in a wide variety of online games.

82.    On information and belief, the Wozo Defendants partnered with Adknowledge to offer Super Rewards Points as part of the Wozo Defendants' "free" poster promotion.   Together, Defendants created and developed a promotional

27

campaign as joint venturers, including banners and other advertisements offering a free poster *and* Super Rewards Points to consumers for a 99-cent shipping fee. Defendants, and each of them, placed such banners and other advertisements on the Internet.  These Internet advertisements did not make any reference to a monthly membership in the Wozo poster club, the automatic enrollment therein for those who participated in the promotion, or the $29.99 monthly membership fee associated therewith.

83.    Adknowledge was not simply acting as a neutral intermediary placing Internet advertisements for the Wozo Defendants in various locations on the Internet. On the contrary, Adknowledge agreed to jointly promote its own product, Super Rewards Points, with the Wozo Defendants' product, a purportedly free poster, in a *single* advertisement for a *single* price.  Accordingly, both Adknowledge and the Wozo Defendants were each separately responsible for some of the information in the Internet advertisement.   Adknowledge obviously could not advertise the sale of Wozo Defendants' posters without an agreement with the Wozo Defendants.  Similarly, the Wozo Defendants could not advertise the sale of Super Rewards Points without an agreement with Adknowledge.  However, through their agreement, each party to the transaction authorized the creation and development of the Internet advertisement that jointly promoted their respective products, and is responsible for the inclusion of at least some of the information contained in the advertisement, specifically, the inclusion of their respective product in the joint promotion.

84.    In addition the parties cooperated technologically such that they could track and share information about the results of the joint promotion.   This was

necessary because, pursuant to their agreement and on information and belief, the Wozo Defendants agreed to pay Adknowledge $19 for each consumer who purchased the purportedly "free" poster after clicking on the Internet advertisement that jointly promoted both the Super Rewards Points and the poster for a 99-cent shipping fee.

85.     Adknowledge made a decision to include an offer for its own product among the other content contained in the Internet advertisement that also promoted the Wozo Defendants' posters.   Through its agreement with the Wozo Defendants, Adknowledge authorized the development, creation, and publication of the joint Internet advertisement.

86.     Adknowledge also had the ability to control or set restrictions by contract on the terms of any sale of its product and the content of any advertisement promoting its product.   Upon information and belief, Adknowledge did in fact include certain contractual provisions in its agreement with the Wozo Defendants to control the content of the advertisement.

87.     In addition, Adknowledge obviously had the option to decline to promote its product in Internet advertisements that also promoted the Wozo Defendants' posters, particularly if the Wozo Defendants were unwilling to agree to whatever content restrictions Adknowledge sought to impose or could have sought to impose.

88.     Stated differently, Adknowledge had full control over whether an offer for its product would be included along with the other content in the joint Internet advertisement.

89.     Because a joint promotion was likely to be lucrative to Adknowledge, it elected to authorize the creation, development, and publication of the joint Internet advertisement.

90.     Adknowledge had the ability to review the Internet advertisement, and, upon information and belief, did in fact review the joint Internet advertisement.   On information and belief, Adknowledge provides, as a service to its publishers (such as Facebook and Zynga), ratings of Adknowledge's advertisements (such as the Wozo joint Internet advertisement) based on each advertisement's content.   Adknowledge rates its advertisements on a spectrum ranging from "maximum user experience" (meaning a simple or inexpensive offer that yields less advertising revenue) to "maximum monetization" (meaning a costly or complex offer that yields high advertising revenue).   Adknowledge's ratings system enables its publishers to choose how aggressive they want the advertisements on their websites to be.  Of course, in order to assign an accurate rating to a particular advertisement, including the Wozo joint Internet advertisement, Adknowledge must review and assess it.

91.     Because the 99-cent "shipping" fee described in the joint Internet advertisement was obviously insufficient to cover the costs of the poster, the shipping expenses, the Super Rewards Points, the advertising campaign, and the $19 payment to Adknowledge, Adknowledge, as a sophisticated business entity and experienced Internet advertiser, either knew of, or was reckless in failing to ascertain, the unfair, deceptive and fraudulent nature of the Wozo Defendants' "free" poster promotion described in the joint Internet advertisement.

92.     Moreover, public information was also readily available to Adknowledge that the Wozo poster promotion was a deceptive advertisement designed to defraud consumers of $29.99 per month.  Consumers repeatedly complained on the Internet about the fraudulent promotion through Facebook, Ripoff Report, Scam Informer, and other websites.   Some examples of these public complaints on the Internet are displayed below:



**Stephen**

the company www.wozo.com will bait you with a free movie poster for .99 cent shipping then charge your card for 29.99 A MONTH if you don't catch it in time. No where in the order process does it mention a monthly subscription fee to whatever they are selling and once you go into their fine print do you see it but they only give you 5 days from the time you placed your order to cancel it, by then it's to late and they got you for 30 bucks. If you're not paying attention to your bank account then they will keep getting you for 30 a month! Once you call and try to cancel it all they get is your email and phone number and say they will email you a cancellation notice in 1-2 days.

about 6 months ago · Report



**Stephen**

They are a complete "rip-off" and been getting away with it for years. Just think at $29.99 if they sucker 1000 people a year without any recourse, that is a lot of money. Complain and make them spend that money.

about 6 months ago · Report



**Athena**

Just realized I got scammed, was charged $29.99, found all the evidence showing how shaddy Wozo is and I'm calling my bank tomorrow.
>.<
Wozo just gave me a serious headache.

about 4 months ago · Report



**Drake**

nooooooooo i got scamed as well!!!! but i never got an ID to log on to that site, how can i stop them from charging me every month?!

about 3 months ago · Report



**Allison**

SCAM SCAM SCAM! My husband got suckered in by their cheap deals and almost invisible fine print. Ended up spending $60 on 3 posters. Stupid.

about 4 months ago · Report



**Laura** ▮▮▮▮▮▮

Deanna, I do that also. The first time I called I wrote down the man's name and employee id number, I asked if there a supervisor or manager I could speak with to confirm. He said he was the only one working there. I hung up and waited for the email to come through, never did, so I called back. The next guy introduced himself as "Ed" at the begining of the call (WASN'T ONLY ONE PERSON SUPPOSED TO BE THERE?!!!!!) and when I asked him at the end of the call for his employee number he said his name was CHRIS and gave me a more than likely employee number. When I asked again what his name was, he then became very irritated and annoyed with me, being very snarky.

He said all he can do is have a manager email me in the next 2 days. I asked "Ed/Chris" what his managers name was. He said "I don't know the managers name, I just take the orders and cancel them". HE DIDN'T KNOW THE NAME OF HIS BOSS?????????????? REALLY??????????!!!!!!!!!!!!!!!!!! That right there screams SCAM and SHADY to me :(

And for the record, NO EMAIL has come through yet either. UGH.

This offer is a scam and is preying on innocent people. Look up the company online and read all the complaints of them stealing money. Not very reassuring.

about 6 months ago · Report

---

Report: #648189

# Complaint review: Wozo.com LLC

**Reported By:** amc (Rockport Massachusetts United States of America)

**Wozo.com LLC Company fraudulently took $29.99 from me despite multiple efforts to cancel Boston, Massachusetts**

*Consumer Comment: Wozo

**Wozo.com LLC**
33 Broad Street Suite 901
Boston Massachusetts 02210
United States of America
Phone: 8774123128
Web Address: www.wozo.com

**Category:** Miscellaneous Companies

**Submitted:** Wednesday, October 06, 2010
Last posting: Tuesday, November 16, 2010

  Share





was connected to this company's website through a facebook ad. The offer suggested through their page was that I would receive a poster for 99 cents if I joined their poster club. However, I was supposed to have a period of 5 days to decide if I wanted the membership or not and they would not charge the standard monthly membership charge if I cancelled. Once the order was placed the window closed. I expected some confirmation as stated when the order was placed but received none. I did not have the name of the company, only Poster Club. A search online proved fruitless. I then did some research through the "rewards" program that provided the link. I discovered the website address at that point. There is no phone number listed on their website, only an email address (support@wozo.com). I repeatedly emailed this address to cancel my account but got no response. I tried numerous times to log in to my supposed account but the password would not work. Finally I noticed through my credit card's online transaction list that a charge of $29.99 was pending through my account. I immediately filed a dispute through teh credit card company.  I got the phone number from the transaction and called wozo.com. After speaking to two representatives and a supervisor (his name is James Daniels), no one would help with this. They cancelled my account but insisted that they would not reverse the $29.99 charge since they said that I did not cancel in time. I made multiple efforts to cancel, they just ignored them. They never sent me a confirmation so I had no contact information. They do not include any telephone information through their website. I feel I was taken advantage of as an unsuspecting consumer. What recourse do I have to dispute this? I don't feel that I should have been charged the $29.99 since I did try multiple times to cancel and they just ignored my attempts until the days went by.  The poster that I did order and paid for still hasn't arrived, even though the company is less than an hour from me.  If I wasn't so over the top angry at this point I would take a drive down there and demand some satisfaction.

This report was posted on Ripoff Report on 10/6/2010 1:56:59 PM and is a permanent record located here:
http://www.ripoffreport.com/bbb-better-business-bureau/wozo-com-llc/wozo-com-llc-company-fraudule-b6926.htm.
Ripoff Report has an exclusive license to this report. It may not be copied without the written permission of Ripoff Report.

Report: #666616

# Complaint review: WOZO

**Reported By:** vonnie (stuart Florida United States of America)

WOZO I singed up for a poster for 99 cents. I called on the 5th day to cancel. I was told I could not cancel the 29.99 charge to my account. That I would received 2 more posters the next month and then m Internet

**WOZO**

Internet
United States of America
Phone: 7726340588
Web Address: <u>wozo.com LLC</u>

**Category:** <u>Credit Card Fraud</u>

**Submitted:** Tuesday, November 30, 2010
Posted: Tuesday, November 30, 2010

  Share

**Report - Rebuttal - Arbitrate**

💬1  💬0  💬0
Author  Consumer  Employee

**Respond to this report!**     Arbitrate
[ File a Rebuttal ] ❓   **Remove Reports?**
No! Better yet!
**Also a victim?**     Arbitrate to set the
[ File a Report ] ❓   record straight!



I ordered a poster for .99 on-line. I called 5 days afterward to cancel when I got a 29.99 charge on my banking account. I called to cancel and was told they could not reverse the charge because it was after 4 days and I was entered into a monthly club. They said they would cancel my subscription and I would be sent 2 more posters for the month I was subscribed to. It has been 7 weeks and I have received nothing, not the initial poster that I ordered, nor the 2 additional posters that they charged my account for. I have called multiple times and always keep getting the same response-"Give it one more week, or we are checking on it" The last time I called I told them just to refund the money to my account as I have not yet received anything after 7 weeks. Again I was told "Give it one more week." This is a SCAM. DO NOT ORDER FROM THIS COMPANY. THEY WILL STEAL FROM YOU>

This report was posted on Ripoff Report on 11/30/2010 10:41:29 AM and is a permanent record located here:
http://www.ripoffreport.com/credit-card-fraud/wozo/wozo-i-singed-up-for-a-poster-7ec4b.htm.
Ripoff Report has an exclusive license to this report. It may not be copied without the written permission of Ripoff Report.

Report: #656786

# Complaint review: WOZO.COM

**Reported By:** bajent (grundy center Iowa United States of America)

WOZO.COM BEWARE they keep charging you for a membership , Internet

**WOZO.COM**

Internet Internet
United States of America
Phone: 800-471-9464
Web Address: <u>wozo.com</u>

**Category:** <u>Internet Marketing Companies</u>

**Submitted:** Saturday, October 30, 2010
Posted: Saturday, October 30, 2010

  Share

**Report - Rebuttal - Arbitrate**

💬1  💬0  💬0
Author  Consumer  Employee

**Respond to this report!**     Arbitrate
[ File a Rebuttal ] ❓   **Remove Reports?**
No! Better yet!
**Also a victim?**     Arbitrate to set the
[ File a Report ] ❓   record straight!



wozo scam--ordered a poster to get farmtown cash on facebook, didnt see anything about having to sign up to be a member. Got charged $29.99 for a membership I never agreed to join. Called and canceled, next month got charged another $29.99 membership fee. Called them a second time and was told they canceled my membership but cant't promise a refund!!!

STAY AWAY FROM WOZO THEY WILL STIFF YOU FOR YOUR HARD EARNED MONEY

This report was posted on Ripoff Report on 10/30/2010 7:16:25 AM and is a permanent record located here:
http://www.ripoffreport.com/internet-marketing-companies/wozo-com/wozo-com-beware-they-keep-cha-399c7.htm.
Ripoff Report has an exclusive license to this report. It may not be copied without the written permission of Ripoff Report.

Report: #654882

# Complaint review: WOZO LLC

**Reported By:** Kirk (Mesa Arizona United States of America)

**WOZO LLC WOZO Online Scam, Bait & Switch, 99 cent poster offer then charges you $29.99 rip off, thieves BOSTON, Massachusetts**

**WOZO LLC**
101 Federal Street
BOSTON Massachusetts 02210
United States of America
Phone: 1-877-412-3128
Web Address: www.wozo.com/

**Category:** Art Galleries

**Submitted:** Monday, October 25, 2010
**Posted:** Monday, October 25, 2010





  Share

Wozo stole my money through a Publisher Clearing House Offer for 99 cent posters, then they charged my Account $29.99, they state I agreed to their terms, which I did not, they say you have 4 days to cancel, I did not know of 4 days, besides I have received nothing from them so how could I make a decision in 4 days had I known? I called their Customer Service and they stubbonly stood by their terms and conditions saying I agreed, I did not. I would have never agreed to any such terms. They refused to refund me the money. They are lowlife thieves who do not care how they get the money.

This report was posted on Ripoff Report on 10/25/2010 10:41:54 AM and is a permanent record located here: http://www.ripoffreport.com/art-galleries/wozo-llc/wozo-llc-wozo-online-scam-bai-abc69e.htm. Ripoff Report has an exclusive license to this report. It may not be copied without the written permission of Ripoff Report.

Report: #657504

# Complaint review: Wozo.com

**Reported By:** Timothy (New Smyrna Beach Florida U.S.A.)

**Wozo.com Wozo LLC Unethical Practices Internet**

**Wozo.com**
33 Broad Street
Internet 02210
United States of America
Phone: 1-800-471-9464
Web Address: www.wozo.com

**Category:** Credit Card Fraud

**Submitted:** Monday, November 01, 2010
**Posted:** Monday, November 01, 2010





  Share

I was on facebook, playing Farmtown when I got the offer for "farmcash" for signing on with this company for a one time purchase. I went through the process and it was to be a total of .99 only.   4 days later they charged my card an additional 29.99.  I searched for terms and conditions the day of the purchase and then after the additional charge was made.  There was NO terms and conditions to be found on their site.  I called them 3 times and they all would tell me a supervisor would call which never happened.  I told them on the third call, I was tired of hearing that and nobody ever called.  This Kristen finally cancelled to account which was going to be 29.99 ever month!   She then sent me an email with  the terms and conditions and a screenshot of where I agreed to it.  The problem was, they were not available at the time and I never saw what they showed in the screenshot.    It was completely dishonest.  They sent the same to my bank and my bank (Wachovia) ruled in their favor after getting those items, which I had explained to them.  But I have no written proof, because I never saw it coming.  I had no idea that I would be charged    This is a lousy and unethical way to make money, and I told them so.   It is not the amount, but is the principal.

This report was posted on Ripoff Report on 11/1/2010 8:53:13 PM and is a permanent record located here: http://www.ripoffreport.com/credit-card-fraud/wozo-com/wozo-com-wozo-llc-unethical-pr-4d373.htm. Ripoff Report has an exclusive license to this report. It may not be copied without the written permission of Ripoff Report.

## WOZO.com Scammed me out of 29.99 Internet

8th of Nov, 2010 by **User791387**

### WOZO.com Scammed me out of 29.99 Internet

From: **WOZO.com**

I signed up for a poster and had to pay shipping (99cents) only. Then I was charged $29.99 for not canceling my 4day trial. I received no correspondence from this company in regard to having an account or that my four day trial was pending. After trying to cancel my account I was told that I could get my second poster and then cancel. I received my first poster without picking it. I asked how I would know that I had to pick a poster when I was not aware that I had to. The agent couldn't explain this.

The first agent I spoke to didn't even know the name of her supervisors who were all conveniently "in a meeting." After reading the many reports here, I will have to make sure that my account has been canceled as I do not trust this company. I'm going to dispute the charge with my bank, but I fear I will get nowhere due to the supposed 4-day trial cancellation policy that I tried to enact. If you can't cancel your account, don't know you need to pick a product, and can't reach an agent with knowledge, why is this company still in business???

 Track this Report     0 Comment | Post a commnet

## Wozo poster comp. took .99 and 29.99 in nov.and 29.99 in dec.2010 Boston, Massachusetts

12th of Jan, 2011 by **User796169**

### Wozo poster comp. took .99 and 29.99 in nov.and 29.99 in dec.2010 Boston, Massachusetts

From: **Wozo poster comp**

On Oct 25th 2010 I sent for a .99 poster four days later they took 29.99 out of my account.I called them and they said I joined a poster club.The were asked to cancel on Nov.4th by phone.Then on Dec.2nd they took another 29.99 out or my checking account.I called them and they said just send the posters back and we will refund your money.Now they say the never got the posters back and will not refund my $.I have contacted the post office 3 times and I have not got any where.I am now trying to get my bank to stop payment.I live on S.S.I and can not afford such problems.B This has become a major problem for me.Wozo is a major ripoff!Laura Indianapolis In.

Track this Report     0 Comment | Post a commnet

93.     Some of those complaints explicitly mentioned Super Rewards as part of

the fraudulent promotion:



**Gene**
whew! and here i thought i was the only one! several times i have completed thieir
offers ~ only to not get tokens...and when i request them..."send email"...which i
did...and for 2 weeks..NOTHING..gave up on that...

Then the WOZO offer...free poster...NOT!
WOZO charged me 29.99 (not mentioned anywhere in the offer or website) ~ all super
rewards did was change the phrasing...

about 7 months ago





**Alicia**

This solicitation is in no way associated with, endorsed by or run in conjunction with TSG, Swagbucks.com or any of its partners. Neither TSG, Swagbucks.com or any of its partners make any guarantees as to the legitimacy of this promotion or its results. Always exercise caution when sharing any sensitive, personal information.

(I'm not sure I had to post that since it has to do with Swagbucks Special Offers, but did it just in case)

I'm here to warn anyone here about the Wozo poster offer. It's on several walls (Offer Wall/Payment Wall, and maybe Offerpal and Super Rewards) and offers you a "free" (plus shipping = 99 cents) poster through their "special offer" from a select few posters on their site. I was thinking, oh cool, 99 cents for 380 Swagbucks, pretty awesome, right? Wrong. This is what happened to me, as I told the Wozo customer service people: "Wozo Support,

I recently took advantage of your special deal and ordered a "Breakfast at Tiffany's" poster for only $.99, which was shipped to me last week, and I didn't open it because I assumed that just that poster would be inside, and I was planning on giving it as a birthday present to a friend. I was very confused when a second package from you showed up at my doorstep this morning. When I opened it, I found a "Breakfast at Tiffany's" poster, as well as a "The Expendables" poster and a "The Big Bang Theory" poster. I thought it was just a fluke, but when I opened my original poster package that I received last week, I also discovered that it contained the same posters ("Breakfast at Tiffany's", "The Expendables", and "The Big Bang Theory"). When I went online and logged into my Wozo account, it only listed one order - the original one for only the 99 cent "Breakfast at Tiffany's" poster (as shown in this screen capture: http://img713.imageshack.us/img713/1281/wozoorders.png )

When I looked at my bank statement, it showed that I was charged once for the 99 cent poster on September 13, but then I was charged $29.99 by Wozo on September 18th, as shown in this screen capture: http://img709.imageshack.us/img709/2111/wozocharges.jpg ."

I asked for a refund, and luckily they quickly replied, saying that I would get a refund as soon as they got the posters back, and gave me the address. Meaning that I have to pay to ship those *five* extra posters back when it was their "error".

She neglected to tell me what my friend (who also ordered a poster and found two extra) found out after reading the fine print on the site. It's like Columbia House is to DVDs, I guess, and unless you cancel, they charge you every month for three posters ($29.99). They did not advertise anything while I was checking out for the one 99 cent poster, and I'm guessing a lot of people got duped. I told them to cancel my account as soon as they received the posters and refunded me.

Those who have done this offer, check your posters, and call and cancel your account with them ASAP. Those considering this offer, don't and save yourself the trouble. I don't plan to do business with them again, and I have half a mind to write Swagbucks a very irate email asking them to remove Wozo from their special offers.

about 6 months ago

//

//

//

**Plaintiff Suk Jae Chang**

94.     Plaintiff Chang is a user of Super Rewards Points.

95.     In or about October 2010, Plaintiff Chang saw an Internet advertisement for the Wozo Website stating that he could earn Super Rewards Points and obtain a free poster by paying a 99-cent shipping fee.   Plaintiff Chang clicked on the advertisement, which redirected him to the Wozo Website.   At the time, the pages necessarily accessed on the Wozo Website to obtain a "free" poster appeared substantially similar to the deceptive screenshots described above**,** in that they did not adequately disclose the existence of the monthly membership product and its cost, as well as other terms and conditions of the transaction.

96.     Plaintiff Chang selected a poster from the Wozo Website in order to obtain the promised Super Rewards Points and paid for the 99-cent shipping fee with his debit card.  At no time during the checkout process did any Defendant adequately disclose to Plaintiff Chang that he would be charged for anything but the 99-cent shipping fee, let alone a recurring $29.99 fee for a monthly membership in a poster club.

97.     Without his authorization, Plaintiff Chang's debit card was later charged by Wozo for a $29.99 monthly membership subscription fee.   As a result, money was wrongfully withdrawn from Plaintiff Chang's debit account and Plaintiff Chang has been damaged.

**Plaintiff Sarah Johnson**

98.     Plaintiff Johnson is a user of Super Rewards Points.

99.     In or about October 2010, Plaintiff Johnson saw an Internet advertisement for the Wozo Website stating that she could earn Super Rewards Points and obtain a

free poster by paying a 99-cent shipping fee.   Plaintiff Johnson clicked on the advertisement, which redirected her to the Wozo Website.   At the time, the pages necessarily accessed on the Wozo Website to obtain a "free" poster appeared substantially similar to the deceptive screenshots described above, in that they did not adequately disclose the existence of the monthly membership product and its cost, as well as other terms and conditions of the transaction.

100.   Plaintiff Johnson selected a poster from the Wozo Website in order to obtain the promised Super Rewards Points and paid for the 99-cent shipping fee with her debit card.   At no time during the checkout process did any Defendant adequately disclose to Plaintiff Johnson that she would be charged for anything but the 99-cent shipping fee, let alone a recurring $29.99 fee for a monthly membership in a poster club.

101.   Without her authorization, Plaintiff Johnson's debit card was later charged by Wozo for a $29.99 monthly membership subscription fee.   As a result, money was wrongfully withdrawn from Plaintiff Johnson's debit account and Plaintiff Johnson has been damaged.

102.   On October 18 and 19, 2010, Plaintiff Johnson exchanged several emails with a representative of Adknowledge, wherein Adknowledge's representative acknowledged knowing that persons who ordered a "free" poster and Super Rewards Points were enrolled in a poster club with a monthly membership fee of $29.99. Adknowledge's representative defended the charge to Plaintiff Johnson's debit card, explaining that the charge was "made to qualify for [Super Rewards] points."

//

//

**CLASS ACTION ALLEGATIONS**

103.   This action is brought pursuant to Federal Rule of Civil Procedure 23, M.G.L. c. 93A § 9(2), and the EFTA.

104.   Plaintiffs bring the first cause of action on their own behalf and as the representatives of all similarly-situated persons who participated in Wozo's "free" poster promotion and were charged for a monthly membership in the Wozo poster club at a time when the monthly membership was not referenced on the pages of the Wozo Website that were necessarily viewed to complete the transaction (collectively, "the Wozo Class").

105.   Plaintiffs bring the second cause of action on their own behalf and as representatives of all similarly-situated members of the Wozo Class who were offered Super Rewards Points for their participation in the Wozo Defendants' "free" poster promotion and were charged for a monthly membership in the Wozo poster club at a time when the monthly membership was not referenced on the pages of the Wozo Website that were necessarily viewed to complete the transaction (collectively, "the Super Rewards Class").

106.   Plaintiffs bring the third cause of action on their own behalf and as representatives of all similarly-situated members of the Wozo Class whose debit cards were charged for a monthly membership subscription in the Wozo poster club at a time when the monthly membership was not referenced on the pages of the Wozo Website that were necessarily viewed to complete the transaction (collectively, "the Debit Card Class").

107.    The Wozo Class, the Super Rewards Class, and the Debit Card Class are collectively hereinafter referred to as "the Classes."

108.    A class action is proper under Federal Rule of Civil Procedure 23 because:

a.  Each of the Classes is so numerous that joinder of all members is impracticable;

b.  There are questions of law and fact that are common to the each of the Classes;

c.  The claims of the representative Plaintiffs are typical of the claims of the each of the members of the Classes, and the representative Plaintiffs will fairly and adequately protect the interests of each of the Classes.

109.    A class action is the superior method of adjudicating this controversy because, under Rule 23(b)(3), questions of law and fact common to the members of the Classes predominate over any question affecting only individual members.

110.    The common questions of law and fact include:

a.  Whether Defendants engaged in a scheme to deceive and defraud consumers by charging them for a monthly membership in the Wozo poster club without having adequately disclosed the existence of the monthly membership product or the cost of that product;

b.  The identity of the participants in the deceptive and unlawful scheme;

c.  The duration of the deceptive and unlawful scheme and the nature and character of the acts performed by Defendants in furtherance thereof;

41

    d.  Whether the alleged deceptive and unlawful scheme violated M.G.L. c. 93A, § 2;

    e.  Whether the conduct of Defendants, as alleged herein, violated the EFTA;

    f.  Whether the conduct of Defendants, as alleged herein, caused injury to Plaintiffs and the Classes;

    g.  The appropriate measure of damages suffered by Plaintiffs and the Classes;

    h.  Whether, by reason of Defendants' violations of M.G.L. c. 93A § 2, Plaintiffs, the Wozo Class, and the Super Rewards Class are entitled to recover statutory damages under M.G.L. c. 93A § 9(3); and

    i.  Whether, by reason of Defendants' violations of the EFTA, Plaintiffs and the Debit Card Class are entitled to recover statutory damages.

111.   Plaintiffs can and will fairly and adequately represent and protect the interests of the Classes because:

    a.  All of the questions of law and fact regarding the liability of Defendants are common to each of the Classes and predominate over any individual issues that may exist, such that by prevailing on their own claims, Plaintiffs will necessarily establish the liability of Defendants to all members of each of the Classes;

    b.  Without the representation provided by Plaintiffs, it is unlikely that any member of the Classes would receive legal representation and/or obtain recourse for the misconduct carried out by Defendants; and

    c.  Plaintiffs have retained competent attorneys who are experienced both in the conduct of class actions and the law governing online advertising, e-contract,

and online payment systems.   Plaintiffs' counsel have the necessary resources to litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary responsibility to the members of the Classes and are determined to discharge those duties to obtain the best possible recovery for the Classes.

## FIRST CAUSE OF ACTION

### Violation of M.G.L. c. 93A

### (By Plaintiffs on Behalf of the Wozo Class
### Against Miao, Bachman, Tatto, and Wozo)

112.   Plaintiffs, individually and on behalf of the members of the Wozo Class, reallege and incorporate by reference all of the allegations set forth above in the preceding Paragraphs.

113.   At all relevant times, Wozo and Tatto were engaged in trade or commerce within the Commonwealth of Massachusetts, including the trade or commerce of selling posters online and/or providing online advertising from their Massachusetts headquarters.

114.   In or about 2010, the Wozo Defendants, and each of them, caused and directed the placement of banner ads and other advertisements on the Internet offering a free poster to consumers for a 99-cent shipping fee.

115.   Plaintiffs and the Wozo Class members saw one of the Wozo Defendants' advertisements on the Internet offering a free poster to consumers for a 99-cent shipping fee and, in response thereto and as a direct and proximate result thereof, Plaintiffs and the Wozo Class members ordered a "free" poster from the Wozo Website.

116.    Neither the advertisements, nor any of the pages on the Wozo Website necessarily accessed by Plaintiffs or the Wozo Class members in the process of submitting their orders for a "free" poster, adequately disclosed the following information:

a. The existence of a second product that had to be ordered along with the "free" poster, specifically, a monthly membership in the Wozo poster club;

b. That consumers who ordered a "free" poster from the Wozo Website would be automatically charged for a monthly membership in the Wozo poster club;

c. That consumers who ordered a "free" poster from the Wozo Website had to cancel their monthly membership in the Wozo poster club within four (4) days of ordering a "free" poster in order to avoid any charges related to their monthly membership in the Wozo poster club;

d. That the debit or credit card information submitted by consumers who ordered a "free" poster from the Wozo Website would be retained by the Wozo Defendants; or

e. That consumers who ordered a "free" poster from the Wozo Website and did not cancel their monthly membership in the Wozo poster club within the four-day window would be charged a $29.99 monthly membership fee on the debit or credit card provided to the Wozo Defendants for the purpose of paying for the 99-cent shipping fee.

117.    Plaintiffs and the Wozo Class members submitted their orders for a "free" poster from the Wozo Website without receiving adequate disclosure that they would be automatically enrolled in the Wozo poster club, and that they had to cancel their

membership within four (4) days in order to avoid any charges related thereto, or that failure to cancel within the 4-day window would result in a monthly charge of $29.99 to their debit or credit cards.

118.   The Wozo Defendants caused the debit and credit cards submitted by Plaintiffs and the Wozo Class members to be charged for a monthly membership in the Wozo poster club.

119.   The Wozo Defendants' conduct described herein constituted unfair and deceptive acts or practices and thus violated M.G.L. c. 93A § 2.

120.   Moreover, the Wozo Defendants' representations to Plaintiffs and the Wozo Class members regarding the "free" poster promotion violated at least the following General Regulations of the Massachusetts Attorney General:

a.  940 C.M.R. 3.02(2) by making statements in an advertisement that misrepresent the offered product in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised product to another;

b.  940 C.M.R. 3.04 by making claims that have the tendency of deceiving buyers as to the value or price of a product;

c.  940 C.M.R. 3.05(1), 3.16(2) and 6.04(2) by failing to adequately disclose relevant information concerning a product, which failure has the capacity or tendency or effect of deceiving buyers or prospective buyers in a material respect;

d.  940 C.M.R. 3.05(2) by employing an advertisement that misleads or tends to mislead buyers or prospective buyers as to the product being offered for sale;

e. 940 C.M.R. 3.06(3) by concealing or disguising the obligation or contract involved or falsely representing that the plan does not involve any obligation or contract;

f. 940 C.M.R. 3.13(1)(a)(1) by failing to disclose to a buyer prior to the agreement the price or cost of any services to be provided;

g. 940 C.M.R. 3.13(2) by representing or implying, in advertising or otherwise, that a product may be purchased for a specified price when such is not the case;

h. 940 C.M.R. 3.13(3) by offering a product at a price less than the cost thereof to the Wozo Defendants as a "loss leader" used in inducing the buyer to make the purchase and sold only in combination with the purchase of other merchandise or services on which the seller recovers such loss;

i. 940 C.M.R. 3.13(4)(a) by failing to clearly and conspicuously disclose to a buyer, prior to the consummation of a transaction, the exact nature and extent of the Wozo Defendants' refund, return, or cancellation policy;

j. 940 C.M.R. 3.16(1) by engaging in oppressive or unconscionable acts or practices;

k. 940 C.M.R. 6.03(2) by using advertisements which are untrue, misleading, deceptive, fraudulent, or insincere offers to sell; and

l. 940 C.M.R. 6.04(1) by making material representations in advertising that the Wozo Defendants know or should know are false or misleading or have the tendency or capacity to be misleading.

121.    The Wozo Defendants' violation of the regulations enumerated in the preceding paragraph also violates M.G.L. c. 93A § 2(a) because regulations promulgated by the Massachusetts Attorney General under c. 93A § 2(c) provide that any act or practice violates Chapter 93A, § 2 if "It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection…" 940 C.M.R. § 3.16(3).

122.    As alleged herein, the Wozo Defendants also violated the EFTA by making electronic fund transfers from the accounts of Plaintiffs and the Debit Card Class members without first obtaining their valid authorization in writing, without providing them with a copy of any purported written authorization, and without disclosing the terms and conditions thereof in readily understandable language.

123.    Pursuant to the EFTA, 15 U.S.C. § 1693o(c), every violation of the EFTA constitutes a violation of the Federal Trade Commission Act ("the FTC Act"), 15 U.S.C. § 45(a).

124.    Pursuant to M.G.L. c. 93A § 2(b), in construing M.G.L. c. 93A § 2(a), "the Courts will be guided by the interpretations" of unfair and deceptive acts or practices in the conduct of any trade or commerce given by the Federal Trade Commission to the FTC Act.

125.    Every violation of the EFTA by the Wozo Defendants, as alleged herein, thus constitutes a violation of the FTC Act and, in turn, a violation of M.G.L. 93A § 2(a).

126.    The violations of M.G.L. c. 93A § 2(a) by the Wozo Defendants were done willfully, knowingly, and in bad faith.

127.   As a direct and proximate result of the conduct of the Wozo Defendants, Plaintiffs and the Wozo Class members were harmed.

128.   Each Plaintiff sent the Wozo Defendants a written demand for relief pursuant to M.G.L. c. 93A § 9, identifying the claimants and reasonably describing the unfair acts or practices relied upon and the injuries suffered, at least 30 days prior to filing suit against a defendant.

129.   As of the date of this Second Amended Complaint, the Wozo Defendants, and each of them, have refused to make a reasonable offer of relief.  This refusal to grant relief was made in bad faith with knowledge or reason to know that the acts of the Wozo Defendants violated M.G.L. c. 93A § 2(a).

130.   As a result of the Wozo Defendants' violations of M.G.L. c. 93A §§ 2(a), 9, the Wozo Defendants are liable to Plaintiffs and the Wozo Class for up to three times the damages incurred, or at the very least the statutory minimum award of $25, together with interest, costs and attorneys' fees.

## SECOND CAUSE OF ACTION

### Violation of M.G.L. c. § 93A

### (By Plaintiffs on Behalf of the Super Rewards Class Against Adknowledge)

131.   Plaintiffs, individually and on behalf of the members of the Super Rewards Class, reallege and incorporate by reference all of the allegations set forth above in the preceding Paragraphs.

132.   At all relevant times, Adknowledge was engaged in trade or commerce within the Commonwealth of Massachusetts, including the trade or commerce of

engaging in promotional partnerships with Massachusetts-based entities and providing Internet-based services to Massachusetts residents.

133.   In or about 2010, Adknowledge created, developed and placed banner ads and other advertisements on the Internet offering a free poster and Super Rewards Points to consumers for a 99-cent shipping fee.

134.   Plaintiffs and the Super Rewards Class members saw one of Adknowledge's advertisements on the Internet offering a free poster and Super Rewards Points to consumers for a 99-cent shipping fee and, in response thereto and as a direct and proximate result thereof, Plaintiffs and the Super Rewards Class members ordered a "free" poster from the Wozo Website.

135.   Neither the advertisements, nor any of the pages on the Wozo Website necessarily accessed by Plaintiffs or the Super Rewards Class members in the process of submitting their orders for a "free" poster, adequately disclosed the following information:

   a.   The existence of a second product that had to be ordered along with the "free" poster, specifically, a monthly membership in the Wozo poster club;

   b.   That consumers who ordered a "free" poster from the Wozo Website would be automatically charged for a monthly membership in the Wozo poster club;

   c.   That consumers who ordered a "free" poster from the Wozo Website had to cancel their monthly membership in the Wozo poster club within four (4) days of ordering a "free" poster in order to avoid any charges related to their monthly membership in the Wozo poster club;

49

    d.   That the debit or credit card information submitted by consumers who ordered a "free" poster from the Wozo Website would be retained by the Wozo Defendants; or

    e.   That consumers who ordered a "free" poster from the Wozo Website and did not cancel their monthly membership in the Wozo poster club within the four-day window would be charged a $29.99 monthly membership fee on the debit or credit card provided to the Wozo Defendants for the purpose of paying for the 99-cent shipping fee.

136.   Plaintiffs and the Super Rewards Class members submitted their orders for a "free" poster and Super Rewards Points without receiving adequate disclosure that they would be automatically enrolled in the Wozo poster club, that they had to cancel their membership within four (4) days in order to avoid any charges related thereto, or that failure to cancel within the 4-day window would result in a charge of $29.99 to their debit or credit cards.

137.   The debit and credit cards submitted by Plaintiffs and the Super Rewards Class members were subsequently charged for membership in the Wozo poster club.

138.   Adknowledge's conduct described herein constituted unfair and deceptive acts or practices and thus violated M.G.L. c. 93A § 2.

139.   More specifically, Adknowledge's representations to Plaintiffs and the Super Rewards Class members regarding the "free" poster and Super Rewards Points promotion violated at least the following General Regulations of the Massachusetts Attorney General:

a. 940 C.M.R. 3.02(2) by making statements in an advertisement that misrepresent the offered product in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised product to another;

b. 940 C.M.R. 3.04 by making claims that have the tendency of deceiving buyers as to the value or price of a product;

c. 940 C.M.R. 3.05(1), 3.16(2) and 6.04(2) by failing to adequately disclose relevant information concerning a product, which failure has the capacity or tendency or effect of deceiving buyers or prospective buyers in a material respect;

d. 940 C.M.R. 3.05(2) by employing an advertisement that misleads or tends to mislead buyers or prospective buyers as to the product being offered for sale;

e. 940 C.M.R. 3.06(3) by concealing or disguising the obligation or contract involved or falsely representing that the plan does not involve any obligation or contract;

f. 940 C.M.R. 3.13(2) by representing or implying, in advertising or otherwise, that a product may be purchased for a specified price when such is not the case;

g. 940 C.M.R. 3.13(3) by offering a product at a price less than the cost thereof to Adknowledge as a "loss leader" used in inducing the buyer to make the purchase and sold only in combination with the purchase of other merchandise or services on which the seller recovers such loss;

h. 940 C.M.R. 3.16(1) by engaging in oppressive or unconscionable acts or practices;

i. 940 C.M.R. 6.03(2) by using advertisements which are untrue, misleading, deceptive, fraudulent, or insincere offers to sell; and

j. 940 C.M.R. 6.04(1) by making material representations in advertising that Adknowledge knows, or should know, are false or misleading or have the tendency or capacity to be misleading.

140.    Adknowledge's violation of the regulations enumerated in the preceding paragraph also violates M.G.L. c. 93A § 2(a) because regulations promulgated by the Massachusetts Attorney General under c. 93A § 2(c) provide that any act or practice violates Chapter 93A, § 2 if "It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection…" 940 C.M.R. § 3.16(3).

141.    The violations of M.G.L. c. 93A § 2(a) by Adknowledge were done willfully, knowingly, and in bad faith.

142.    As a direct and proximate result of the conduct of Adknowledge, Plaintiffs and the Super Rewards Class members were harmed.

143.    On January 13, 2011, Plaintiff Chang, by and through his attorneys, sent Adknowledge a written demand for relief pursuant to M.G.L. c. 93A § 9, identifying the claimants and reasonably describing the unfair acts or practices relied upon and the injuries suffered.

144.   Each plaintiff sent Adknowledge a written demand for relief pursuant to M.G.L. c. 93A § 9, identifying the claimants and reasonably describing the unfair acts or practices relied upon and the injuries suffered at least 30 days before filing suit.

145.   As of the date of this Complaint, Adknowledge has refused to make a reasonable offer of relief to Plaintiffs or the Super Rewards Class.  This refusal to grant relief was made in bad faith with knowledge or reason to know that the acts of Adknowledge violated M.G.L. c. 93A § 2(a).

146.   As a result of Adknowledge's violations of M.G.L. c. 93A §§ 2(a), 9, Adknowledge is liable to Plaintiffs and the Super Rewards Class for up to three times the damages that Plaintiffs and the Super Rewards Class incurred, or at the very least the statutory minimum award of $25, together with interest,  costs and attorneys' fees.

### THIRD CAUSE OF ACTION

### Violation of 15 U.S.C. § 1963 et seq.

### (By Plaintiffs on Behalf of the Debit Card Class Against the Wozo Defendants)

147.   Plaintiffs, individually and on behalf of the members of the Debit Card Class, herein reallege and incorporate by reference all of the allegations set forth above in the preceding Paragraphs.

148.   The purpose of the EFTA is "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693.  The primary objective of the EFTA "is the provision of individual consumer rights." *Id.*

149.   The EFTA defines "account," in relevant part, as "a demand deposit, savings deposit, or other asset account . . . established primarily for personal, family, or household purposes." 15 U.S.C. § 1693a(2).

150.   The EFTA defines "consumer" as "a natural person." 15 U.S.C. § 1693a(5).

151.   The EFTA defines "electronic fund transfer," in relevant part, as "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account." 15 U.S.C. § 1693a(6).

152.   The EFTA defines "preauthorized electronic fund transfer," in relevant part, as "an electronic fund transfer authorized in advance to recur at substantially regular intervals." 15 U.S.C. § 1693a(9).

153.   The EFTA requires, in relevant part, that "[t]he terms and conditions of electronic fund transfers involving a consumer's account shall be disclosed at the time the consumer contracts for an electronic fund transfer service…." 15 U.S.C. § 1693c(a).

154.   The EFTA requires, in relevant part, that "[a] preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." 15 U.S.C. § 1693e(a).

155.   Section 205.10(b) of what is known as "Regulation E," 12 C.F.R. § 205.10(b), provides that, for purposes of the EFTA, "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or

similarly authenticated by the consumer.  The person that obtains the authorization shall provide a copy to the consumer."

156.   Plaintiffs and the Debit Card Class members each maintained an "account" as that term is defined in 15 U.S.C. § 1693a(2).

157.   Plaintiffs and the Debit Card Class members are each "consumers" within the meaning of 15 U.S.C. § 1693a(5).

158.   As alleged herein, the Wozo Defendants engaged in "preauthorized electronic fund transfers," as that term is defined in 15 U.S.C. § 1693a(9), by electronically debiting funds, in the form of the monthly membership fee, from the accounts of Plaintiffs and the Debit Card Class members on a monthly or other substantially regular basis.

159.   As alleged herein, the Wozo Defendants violated 15 U.S.C. § 1693e(a) by making electronic fund transfers from the accounts of Plaintiffs and the Debit Card Class members without first obtaining their valid authorization in writing.

160.   As alleged herein, the Wozo Defendants violated 15 U.S.C. § 1693e(a) and 12 C.F.R. § 205.10(b) by making electronic fund transfers from the accounts of Plaintiffs and the Debit Card Class members without providing them with a copy of any purported written authorization.

161.   As alleged herein, the Wozo Defendants violated 15 U.S.C. § 1693c(a) by making electronic fund transfers from the accounts of Plaintiffs and the Debit Card Class members without adequately disclosing the terms and conditions thereof.

162.   As a direct and proximate result of the conduct of the Wozo Defendants, Plaintiffs and the Debit Card Class members were harmed.

163.    Plaintiffs, individually and on behalf of the Debit Card Class, seeks actual damages, statutory damages, and costs of suit, including reasonable attorneys' fees, under 15 U.S.C. § 1693m.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated as described herein, pray for relief as follows:

1.    For an order certifying the proposed   classes and appointing Plaintiffs representatives of the classes;

2.    For actual damages under 15 U.S.C. § 1693m;

3.    For treble damages under M.G.L. c. 93A § 9;

4.    For statutory damages under M.G.L. c. 93A § 9 and 15 U.S.C. § 1693m;

5.    For attorneys' fees and costs of suit under M.G.L. c. 93A § 9 and 15 U.S.C. § 1693m;

6.    For prejudgment and post-judgment interest at the highest rate provided by law; and

7.    For such other relief as the Court may deem just and proper.

Respectfully submitted,

Dated : February 27, 2013                    By:   _/s/Karl S. Kronenberger_____

Thomas G. Shapiro (BBO 454680)
Robert E. Ditzion (BBO # 660962)
SHAPIRO, HABER & URMY LLP
53 State Street
Boston, MA 02109
Tel: (617) 439-3939
Fax: (617) 439-0134
tshapiro@shulaw.com
rditzion@shulaw.com

Karl S. Kronenberger
(admitted *pro hac vice*)
Virginia A. Sanderson
(admitted *pro hac vice*)
KRONENBERGER ROSENFELD, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
Tel: (415) 955-1155
Fax: (415) 955-1158
karl@KRInternetLaw.com
ginny@KRInternetLaw.com

Attorneys for Plaintiffs and the Classes

## CERTIFICATE OF SERVICE

I, hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 27, 2013.

/s/Karl S. Kronenberger
Karl S. Kronenberger