**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **SARAH JOHNSON**, individually and on behalf of other similarly situated persons,<br><br>        **Plaintiff,**<br><br>    **v.**<br><br>**WOZO, LLC, and TATTO, INC.**,<br><br>        **Defendants.** | **No.  11-cv-10245-DJC** |

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

Plaintiff Sarah Johnson ("Plaintiff") moves for an order preliminarily approving a class action settlement, certifying the class as defined herein for purposes of settlement, appointing Plaintiff as class representative and her attorneys as class counsel, approving the proposed plan for class notice, and setting further deadlines.  A form of proposed order (which is also attached as Exhibit C to the Settlement Agreement filed on September 20, 2013) (Doc. No. 111) is attached hereto.

The grounds for this motion, as more fully set forth in the memorandum filed herewith, are that the proposed settlement provides a potentially full recovery to the class, is supported by the policy generally favoring settlement, and satisfies the objectives and procedural requirements of Federal Rule of Civil Procedure 23.

Respectfully submitted,

Dated: October 15, 2013

   /s/ Thomas G. Shapiro         
Thomas G. Shapiro (BBO# 454680)

i

SHAPIRO HABER & URMY LLP
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
tshapiro@shulaw.com

/s/ Virginia Sanderson
Karl S. Kronenberger (admitted *pro hac vice*)
Virginia Sanderson (admitted *pro hac vice*)
KRONENBERGER ROSENFELD, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
karl@KRInternetLaw.com
ginny@KRInternetLaw.com

Attorneys for Plaintiff and the Class

## LOCAL RULE 7.1 CERTIFICATION

The undersigned certifies that he/she has conferred with counsel for defendants who support this motion.

/s/ Virginia Sanderson

**TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................... 1

II.  BACKGROUND ...................................................................................................... 1

    A. Factual Allegations ....................................................................................... 1

    B. Procedural History......................................................................................... 3

    C. Litigation, Discovery, and Settlement Negotiations ......................................... 4

III. SUMMARY OF THE SETTLEMENT ..................................................................... 6

    A. Settlement Class ........................................................................................... 6

    B. Settlement Benefits for Class Members ......................................................... 6

    C. Electronic Notice an Claims Process ............................................................. 6

    D. Attorneys' Fees, Costs, and Incentive Awards ............................................... 7

IV. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............................... 8

    A. Criteria for Preliminary Approval .................................................................. 8

    B. The benefits of the Settlement far outweigh any rewards of litigation because
       the Settlement provides a potentially full recovery to the Class ...................... 9

    C. The Settlement was negotiated at arms' length and there are no "subtle signs"
       of collusion ................................................................................................. 10

V.  FOR PURPOSES OF SETTLEMENT, THE COURT SHOULD CERTIFY THE
    CLASS AND APPOINT PLAINTIFF AS CLASS REPRESENTATIVE ..................... 12

    A. Numerosity ................................................................................................. 13

    B. Commonality .............................................................................................. 13

    C. Typicality ................................................................................................... 14

    D. Adequacy of Representation ........................................................................ 15

    E. Predominance ............................................................................................. 16

    F. Superiority .................................................................................................. 17

VI. CLASS COUNSEL SATISFY THE REQUIREMENTS OF RULE 23(G) ................. 18

VII.THE NOTICE PLAN SATISFIES DUE PROCESS AND SHOULD BE
    APPROVED ......................................................................................................... 18

    A. Method of Notice ........................................................................................ 19

    B. Content of Notice ....................................................................................... 20

    C. Claim Form................................................................................................. 21

    D. Request for Exclusion ................................................................................. 21

    E. Claims Administration ................................................................................. 21

VII. PLAINTIFF RESPECTFULLY REQUESTS THAT THE COURT SET A SCHEDULE FOR FINAL APPROVAL ........................................................................................... 22

IX. CONCLUSION ................................................................................................. 23

## TABLE OF AUTHORITIES

### Cases

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) ............................... 12-13, 16

*Andrews v. Bechtel Power Corp.*,
  780 F.2d 124 (1st Cir. 1985) ....................................................................................... 15

*Ashley v. Reg'l Transp Dist. & Amalgamated Transit Union Div. 1001 Pension Fund Trust*,
  No. 05-CV-01567-WYD-BNB, 2008 WL 384579 (D. Colo. Feb. 11, 2008) ................. 9

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013) ............................................................... 14

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) ............................................ 19

*Giusti-Bravo v. U.S. Veterans Admin.*,
  853 F. Supp. 34 (D.P.R. 1993) ................................................................................... 10

*Hochstadt v. Boston Scientific Corp.*,
  708 F. Supp. 2d 95 (D. Mass. 2010) .......................................................................... 15

*In re Atl. Fin. Mgmt., Inc. Sec. Litig.*,
  718 F. Supp. 1012 (D. Mass. 1988) .............................................................................. 8

*In re Credit Suisse-AOL Sec. Litig.*,
  253 F.R.D. 17 (D. Mass. 2008) ................................................................................... 14

*In re LivingSocial Mktg. & Sales Practice Litig., 11-CV-0745*,
  2013 WL 1181489 (D.D.C. Mar. 22, 2013) ................................................................... 9

*In re Lupron Mktg. & Sales Practices Litig.*,
  345 F. Supp. 2d 135 (D. Mass. 2004) ........................................................................ 10

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*,
  270 F.R.D. 45 (D. Mass. 2010) ..................................................................................... 8

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ...................................................................................... 19

*Liles v. Del Campo*,
  350 F.3d 742 (8th Cir. 2003) ........................................................................................ 8

*Mangone v. First USA Bank*,
  206 F.R.D. 222 (S.D. Ill. 2001) ................................................................................... 11

*Margaret Hall Found., Inc. v. Atl. Fin. Mgmt., Inc.*,
   CIV.A. 82-2534-T, 1987 WL 15884 (D. Mass. July 30, 1987) ............................. 13, 16

*McCuin v. Sec'y of Health & Human Servs.*,
   817 F.2d 161 (1st Cir. 1987) ............................................................................... 13

*McKinnie v. JP Morgan Chase Bank, N.A.*,
   678 F. Supp. 2d 806 (E.D. Wis. 2009) ................................................................. 11

*O'Brien v. Brain Research Labs, LLC*,
   CIV.A. 12-204, 2012 WL 3242365 (D.N.J. Aug. 9, 2012) ..................................... 9

*Overka v. Am. Airlines, Inc.*,
   265 F.R.D. 14 (D. Mass. 2010) ...................................................................... 13, 16

*Payne v. Goodyear Tire & Rubber Co.*,
   216 F.R.D. 21 (D. Mass. 2003) ........................................................................... 13

*Stokes v. Saga Int'l Holidays, Ltd.*,
   376 F. Supp. 2d 86 (D. Mass. 2005) ............................................................... 11-12

*Swack v. Credit Suisse First Boston*,
   230 F.R.D. 250 (D. Mass. 2005) ......................................................................... 17

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) ..................................................... 13-14

*Weinberger v. Great N. Nekoosa Corp.*,
   925 F.2d 518 (1st Cir. 1991) ........................................................................... 11-12

## Statutes

15 U.S.C. § 1693 ..................................................................................................... 3

M.G.L. c. 93A § 2 ................................................................................................ 3, 17

## Rules

Fed. R. Civ. P. 23 ........................................................................................... *passim*

Federal Rule of Civil Procedure 41 ..................................................................... 3-4

## Other Authorities

W. Rubenstein et al., Newberg on Class Actions § 11.27 (4th ed. 2012 West) ............ 12

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

### I.     INTRODUCTION

Plaintiff Sarah Johnson ("Plaintiff") and Defendants Wozo, LLC ("Wozo") and Tatto, Inc. ("Tatto") (collectively, "Defendants") have negotiated an agreement (the "Settlement" or the "Agreement") that, if approved by the Court, will provide a full or nearly full recovery for the putative class members (the "Class Members" or, collectively, the "Class").  Accordingly, by this unopposed motion, Plaintiff respectfully requests an order in the form attached to the motion, preliminarily approving the Settlement, conditionally certifying a settlement Class, approving the appointment of Plaintiff as Class Representative and the law firms of Shapiro Haber & Urmy LLP and Kronenberger Rosenfeld, LLP as Class Counsel, approving and directing the distribution of the Class Notice and setting a schedule for final approval proceedings.

### II.     BACKGROUND

#### A. Factual Allegations

Wozo formerly operated and/or marketed a website, located at <wozo.com> (the "Wozo Website") offering posters for sale.  (Second Amended Complaint [Doc. No. 83] [hereinafter for citation purposes, "SAC"] ¶¶ 40–41.)  In or around June 2010, Wozo formed the "Poster Club," wherein members of the Poster Club would receive an automatic shipment of two posters per month from the Wozo Website in exchange for payment of a $29.99 monthly membership fee.  (*Id.* ¶ 63.)

Plaintiff alleges that Defendants launched a promotional campaign wherein they placed banners and other advertisements on the Internet offering a free poster to consumers, who were only required to pay a 99-cent shipping fee (the "Free Poster

1

Promotion"). (*Id.* ¶ 64.) Plaintiff alleges that Defendants did not disclose the fact that, by ordering a "free" poster, persons were automatically enrolled in the Poster Club and a monthly membership fee would be charged to the same credit or debit card used to pay for the 99-cent shipping fee. (*Id.*) Specifically, Plaintiff alleges that Defendants' advertisements concerning the Free Poster Promotion did <u>not</u> adequately disclose the following information:

  a) That consumers who ordered a "free" poster from the Wozo Website for a 99-cent shipping fee would be automatically charged for a monthly membership in the Poster Club;

  b) That consumers who ordered a "free" poster from the Wozo Website had to cancel their monthly membership in the Poster Club within four (4) days of ordering a "free" poster in order to avoid any charges related to their monthly membership in the Poster Club;

  c) That the debit or credit card information submitted by consumers who ordered a "free" poster from the Wozo Website would be retained by Defendants; or

  d) That consumers who ordered a "free" poster from the Wozo Website and did not cancel their monthly membership in the Poster Club within the four-day window would be charged a $29.99 monthly membership fee on the debit or credit card provided to Defendants for the purpose of paying for the 99- cent shipping fee.

(*Id.*) Plaintiff further alleges that none of the web pages necessarily accessed by consumers to complete their orders for a "free" poster adequately disclosed the foregoing information. (*Id.* ¶ 66.)

2

Plaintiff alleges that Defendants' employment of this misleading and deceptive advertising violated Massachusetts General Laws Chapter 93A, Section 2(a) ("M.G.L. c. 93A § 2"). (*See, e.g.*, *id.* ¶ 4.)  Plaintiff also alleges that Defendants violated the Electronic Funds Transfer Act, 15 U.S.C. § 1693 <u>et seq</u>. (the "EFTA") by initiating electronic transfers of funds from debit card accounts without first obtaining valid authorization in writing from the account holders. (*See, e.g.*, *id.* ¶ 5.)

Defendants dispute these and all allegations made by Plaintiff, deny that they have engaged in any wrongdoing, and deny all of the claims that are asserted in the case (the "Action").

## B. Procedural History

On or about February 14, 2011, Suk Jae Chang ("Chang") filed this putative class action.  On or about April 15, 2011, the First Amended Complaint was filed in the Action, asserting the same claims. (Doc. No. 23.)

On or about May 23, 2012, Adknowledge filed Cross Claims in the Action against Wozo and Tatto for contractual and equitable indemnity and breach of contract, which Adknowledge re-alleged on April 23, 2013 in connection with its responsive pleading to the Second Amended Complaint (the "Cross Claims"). (Doc. Nos. 66, 91.)

On or about February 27, 2013, the SAC was filed. (Doc. No. 83.) The SAC added Sarah Johnson as a representative plaintiff and individuals Lin Miao and Andrew Bachman as defendants. (*Id.*)

On or about April 23, 2013, Chang filed a motion to dismiss himself from the Action pursuant to Federal Rule of Civil Procedure 41(a)(2) without prejudice to his

rights as a member of the Class.  (Doc. No. 86.) On September 10, 2013, the Parties filed a stipulation agreeing to Chang's voluntary dismissal. (Doc. No. 104.)

On or about September 10 and 20, 2013, pursuant to the Parties' Stipulation, Plaintiff voluntarily dismissed her claims against Adknowledge pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) and against Miao and Bachman pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), and Adknowledge voluntarily dismissed the Cross Claims against Tatto and Wozo pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii).  (Doc. Nos. 105, 106, 110.)  As discussed more fully below, Plaintiff only agreed to such dismissals because the Parties had reached a global agreement, contingent on said dismissals, which provided a full recovery for the Class.

### C.  Litigation, Discovery, and Settlement Negotiations

The Parties have conducted a thorough examination and investigation of the facts and law relating to the matters set forth in the Action, which included, among other things, the exchange of discovery and participation in settlement negotiations.

Defendants moved to dismiss the First Amended Complaint on various grounds, which motion the Court denied after briefing and oral argument.  (Doc. No. 54.)

Through discovery, Wozo provided Plaintiff's counsel with a spreadsheet in Excel format (the "Spreadsheet") containing what Wozo represented to be its best understanding of a) all individuals who may have paid any monthly fees for the Poster Club prior to November 2, 2010, when Wozo revised the Website, and who did not receive a full refund for these fees directly from Wozo; b) amounts that include at least all monthly fees that may have been paid by such individuals to Wozo in connection with the Poster Club (totaling $295,602.61); and c) the amounts and recipients of all

refunds of monthly fees paid directly by Wozo (totaling $1,409.53).   (Declaration of Virginia Sanderson in Support of Motion for Preliminary Approval of Class Settlement ["Sanderson Decl."] ¶ 2.)

Regarding chargebacks—that is, refunds initiated by Class Members through their financial institution—Wozo represented and warranted that it does not possess complete or searchable records of chargebacks received by Class Members from their respective credit or debit card issuers.   (*Id.* ¶ 3.) Consequently, the Spreadsheet does not account for consumers whose monthly fees were ultimately charged back to them, which could be a substantial percentage of putative Class Members.   (*Id.*)

The Parties have engaged in extensive settlement negotiations over an extended period of time.   (*Id.* ¶ 4.) Plaintiff and Defendants ultimately reached an agreement, subject to the dismissal of Adknowledge and the individual defendants, as well as this Court's approval, that Wozo would pay $250,000.00 in settlement of the Action (the "Settlement Amount")—that is, approximately 85% of the total amount of monthly membership fees collected by Wozo during the class period.   If even 15% of the participants obtained a refund through the chargeback procedure (and the parties estimate that percentage is probably much higher), then the Settlement Amount provides a <u>full</u> recovery to the Class.   (*Id.* ¶ 5.)   Under these circumstances, the Parties believe that the Action is best resolved by a class-wide settlement rather than continued litigation.

Only after the terms of the Settlement were agreed upon, the parties negotiated the amount of attorneys' fees and expenses to be paid by Defendants independent of the Settlement Amount, subject to approval of the Court.   (*Id.* ¶ 6.)

On September 20, 2013, the Parties filed a Stipulation of Settlement.  (Doc. No. 111.)  Plaintiff now seeks the Court's preliminary approval of the Settlement.

## III.      SUMMARY OF THE SETTLEMENT[1]

### A. Settlement Class

The proposed Class is:

All persons who participated in Wozo's Poster Club promotion and were charged for monthly membership fees in the Wozo Poster Club between September 1, 2010 and November 1, 2010, and who did not receive a full refund from Wozo.

(Agreement ¶ 4.1.)

### B. Settlement Benefits for Class Members

The Settlement Amount consists of a payment of $250,000 by Defendants (Agreement ¶ 5.1.), which has been deposited in escrow held by their counsel. (*Id.* ¶ 5.2.)

### C. Electronic Notice and Claims Process

The Claims Administrator will create and host a dedicated Settlement Web Site where the Class Notice, the online Claim Form, and contacts for obtaining additional information will be posted.  (Agreement ¶ 6.1.)  The Claims Administrator will distribute the Class Notice and Claim Form to each Class Member by email and, if undeliverable by that method, through other means.  (*Id.* ¶¶ 6.2, 7.7.)  Class Members will be able to submit Claim Forms online through the Settlement Web Site, or they can print a copy of the Claim Form from the Settlement Web Site and mail it to the Claims Administrator. (*Id.* ¶ 6.4.)

//

---

[1]  Capitalized terms used herein have the meaning ascribed to them in the Agreement.

Each Class Member who submits a valid Claim Form within the Claim Period will receive a Cash Payment in the amount of his or her Total Individual Amount—that is, the total, non-refunded amount paid by the Class Member to Defendants during the Class Period.  (*Id.* ¶¶ 7.9.1, 7.9.2.)  If the total amount to be paid to all Class Members exceeds the Settlement Amount, each Class Member shall receive a Cash Payment in the amount of the pro rata share of his or her total—which will be no less than 84.98% of the total amount paid by the Class Member.[2]  (*Id.* ¶ 7.9.2.)  The Class Notice will be individualized so that each Class Member will be informed of the minimum and maximum payments he or she can expect.  (*Id.* ¶ 8.2.2.)

## D. Attorneys' Fees, Costs, and Incentive Awards

At the time of the final approval hearing, Class Counsel will make a separate motion for an Attorneys' Fees Award, and an Incentive Award for Plaintiff.

Regarding attorneys' fees and expenses, Defendants have agreed not to contest Class Counsel's request for an Attorneys' Fee Award of $250,000.  (Agreement ¶¶ 10.1, 3.3.)  Importantly, Defendants have agreed to pay the Attorneys' Fee Award separately—that is, <u>the Attorneys' Fee Award will not be paid from the Settlement Amount</u>.  (*Id.*)  Class Counsel will provide the Court with full briefing on this request in advance of the Final Approval Hearing, but in the interim will note that the agreed-upon amount represents a substantial discount of actual fees and costs given the time expended on this protracted case.  (*Id.* ¶ 10.2.)

//

---

[2] As indicated above, if no Class Members obtained a charge back of what they paid for Poster Club membership, each Class Member will receive 84.98% of what they paid.  To the extent that some Class Members received charge backs of their payments, the settlement payments will be a larger percentage of what they paid, potentially up to 100.

Class Counsel will also file an application for approval of an Incentive Award of $500 for Plaintiff, to be paid from the Settlement Amount.   (*Id.* ¶¶ 10.2, 10.3.) Defendants have agreed not to oppose the approval of an Incentive Award up to $500. (*Id.* ¶ 10.2.) The Incentive Award shall be in addition to the benefits due to Plaintiff as a Class Member pursuant to the Agreement.  (*Id.*)

## IV.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.  Criteria for Preliminary Approval

Federal Rule of Civil Procedure 23(e) requires judicial approval of any proposed class action settlement.  The approval process takes place in two stages, the first of which is preliminary approval.

In determining whether preliminary approval is appropriate, the Settlement need only be potentially fair as "significant hurdles must be met and cleared if a final settlement is to be approved." *In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 64 (D. Mass. 2010) (quoting *Liles v. Del Campo*, 350 F.3d 742, 746 (8th Cir. 2003)).  Where the settlement is reached prior to formal class certification, the courts also look to see whether the agreement was made at arms' length or whether any signs of collusion are present.  *See, e.g.*, *In re Atl. Fin. Mgmt., Inc. Sec. Litig.*, 718 F. Supp. 1012, 1015 (D. Mass. 1988).

Here, the proposed Settlement is fair because it provides a potentially full recovery—the gold standard of class action settlements.  As such, the benefits of Settlement outweigh any potential rewards of litigation.  In addition, the Agreement was reached as the result of lengthy negotiations at arms' length and there are no signs of collusion.

8

**B. The benefits of the Settlement far outweigh any rewards of litigation because the Settlement provides a potentially full recovery to the Class.**

As indicated above, the Settlement provides a potentially full recovery to the entire Class, and a minimum recovery of 84.98% of maximum damages, with no deduction for attorneys' fees and expenses and settlement administration expenses.

Class settlements that provide for a full recovery are reasonable and fair when juxtaposed with the risks of less than full recovery inherent in any litigation. *See, e.g.*, *In re LivingSocial Mktg. & Sales Practice Litig.*, 11-CV-0745, 2013 WL 1181489, at *9 (D.D.C. Mar. 22, 2013); *Ashley v. Reg'l Transp. Dist. & Amalgamated Transit Union Div. 1001 Pension Fund Trust*, No. 05-CV-01567-WYD-BNB, 2008 WL 384579, at *3 (D. Colo. Feb. 11, 2008) (proposed settlement preliminarily approved due to potential for full recovery); *compare to O'Brien v. Brain Research Labs, LLC*, CIV.A. 12-204, 2012 WL 3242365, at *19 (D.N.J. Aug. 9, 2012) (approving class settlement for substantially less than full compensation while noting that the "best possible recovery for each class member" would be a full refund).

In contrast to the recovery provided through the Settlement, there are a number of obstacles facing Plaintiff if the Settlement is not approved.   First, the consumer transactions at issue are now three years old, as is the evidence to prove them.   As the Court is well aware, substantial time and effort was expended during the initial pleadings stage of the case.   Multiple motions to dismiss were filed, and on the Parties' agreement, the Court stayed discovery during the thirteen months it took to resolve these early motions.   (Doc. No. 35 and subsequent Electronic Endorsement of May 25,

2011.)   Absent a settlement, Defendants would likely appeal any judgment against them, in part based on the issues raised in the motions to dismiss.

**C. The Settlement was negotiated at arms' length and there are no "subtle signs" of collusion.**

Even though the Parties reached the Agreement prior to formal class certification, the proposed Settlement does not have any of the "subtle signs" of collusion that might give a court pause.   Notably, it has taken the Parties significant motion practice, discovery, and nearly three years to reach this agreement.   *See, e.g.*, *Giusti-Bravo v. U.S. Veterans Admin.*, 853 F. Supp. 34, 42 (D.P.R. 1993) (no allegation of collusion could colorably be made where case was actively litigated for two years and settlement negotiated for three).   Extensions for purposes of continuing settlement negotiations have been requested and granted.   (Doc. Nos. 98, 100, 108, 109.) Moreover, to call the case "contentious" at times would be an understatement.   *See, e.g.*, *In re Lupron Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004) (no signs of collusion in case that was "vigorously contested").

The fact that Adknowledge and the individual defendants have been dismissed prior to this filing, while admittedly uncommon, is not a sign of collusion.   Defendants were unable to finalize the Settlement while still bearing the risks associated with Adknowledge's Cross Claims and other potential claims.   Plaintiff only agreed to these dismissals because the Settlement included a full recovery for the Class and because Defendants had already funded the Settlement Amount in a demonstration of good faith. At the time settlement negotiations advanced, the individual defendants had not yet appeared, answered, or otherwise moved.   In addition, the dismissals were made

without prejudice and pursuant to stipulations with each dismissed party that, if the Settlement is not approved and performed as set forth in the Agreement, Plaintiff may re-file against the dismissed parties.  (Sanderson Decl., Exs. B–C.)  As such, the dismissals did not prejudice Plaintiff or the Class in any manner.  If anything, the prolonged and atypical negotiations that culminated in the dismissals are proof of a lack of collusion between the Parties.

The fact that any unclaimed funds in the Settlement Amount revert to Defendants is also not proof of collusion or bad faith.  As several federal courts have observed, the "reversion of unclaimed funds to the defendant is not objectionable when class members receive full recovery for their damages and the parties agree to the reversion." *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (citing *Mangone v. First USA Bank*, 206 F.R.D. 222, 230 (S.D. Ill. 2001)).  All class members did receive the posters they purchased through the Poster Club and nothing in the settlement will require them to return any of the posters they purchased.

Finally, the amount of the Attorneys' Fee Award, and the fact that it will not be paid from the Settlement Amount, are not signs of collusion.  As will be set forth more fully in Class Counsel's application for the Attorneys' Fee Award, while the agreed-upon $250,000 award coincidentally mirrors the Settlement Amount, it was negotiated separately after the Settlement terms were agreed upon, and it represents a <u>significant</u> discount of the actual hourly fees accrued by Class Counsel in the preparation for and litigation of this Action over the course of nearly three years.

"Arm's length negotiations of attorneys' fees that would not diminish the common fund available to the members of the class action do not have the potential for the evils

of extortion and collusion." *Stokes v. Saga Int'l Holidays, Ltd.*, 376 F. Supp. 2d 86, 89 (D. Mass. 2005) (citing *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir. 1991)).   Moreover, the limited circumstances where they do present a potential for conflict of interest—namely, a concern that a lower settlement fund was negotiated in exchange for a more favorable fees award—are not present here, where the Class will potentially receive a full recovery.[3]   Thus, for all of these reasons, there are no signs of collusion that would prevent the Court from preliminarily approving the fair and reasonable Settlement.

## V.   FOR PURPOSES OF SETTLEMENT, THE COURT SHOULD CERTIFY THE CLASS AND APPOINT PLAINTIFF AS CLASS REPRESENTATIVE

Class certification for settlement purposes is relatively common and may be appropriately granted so long as the requirements of Federal Rule of Civil Procedure 23 are met.   *See* W. Rubenstein et al., *Newberg on Class Actions* § 11.27 (4th ed. 2012 West).   There are two principal differences between a request to certify a settlement-only class and a request to certify a litigation class.   The first is that the existence of a proposed settlement is relevant to settlement-only certification.   *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).   For instance, the settlement may aid in determining whether absent class members' interests are being represented, or whether the plaintiffs' claims are typical of the claims being settled on behalf of absent class members.   The second difference is that in considering a motion to certify a settlement-only class, the Court "need not inquire

---

[3] Similarly, in order to protect the potentially full recovery available to the Class, the Parties agreed that Defendants would pay the Claims Administrator separate and apart from the Settlement Amount. (Agreement ¶ 7.3.)

whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Id.* at 620.

An analysis of the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3)—namely, numerosity, commonality, typicality, adequacy, predominance, and superiority—show that certification of the proposed Settlement Class is appropriate in this case.

### A. Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members would be impracticable.  "[D]istrict courts may draw reasonable inferences from the facts presented to find the requisite numerosity."  *Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14, 18 (D. Mass. 2010) (quoting *McCuin v. Sec'y of Health & Human Servs.*, 817 F.2d 161, 167 (1st Cir. 1987)).  Here, there are approximately 5,760 Class Members. (Sanderson Decl., ¶ 2.)  Clearly, this is far too many people to practically join in a single suit, and numerosity is readily satisfied.

### B. Commonality

"The commonality threshold is relatively easy to meet." *Overka*, *supra*, 265 F.R.D. at 18.  Rule 23(a)(2) requires that "there are questions of fact or law common to the class," but it "does not require that all issues be common for the class." *Id.* (citing *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003); *Margaret Hall Found., Inc. v. Atl. Fin. Mgmt., Inc.*, CIV.A. 82-2534-T, 1987 WL 15884 (D. Mass. July 30, 1987)).  Thus, commonality may be demonstrated when the claims of all class members "depend on a common contention" and "even a single common question will do."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 2556, 180 L. Ed. 2d 374

(2011) (quotation omitted).   The common contention must be such that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."   *Id.* at 2551.

Here, the requisite common issue is that Plaintiff and each Class Member, in responding to the Free Poster Promotion, were unwittingly and wrongfully enrolled in the Poster Club and charged monthly membership fees.   Thus, Plaintiff and the Class make the common factual and legal allegation that Defendants enrolled them in the Poster Club and charged them monthly membership fees without their informed consent in violation of state and federal law.   In addition, because Defendants' own records identify the amounts charged to Class Members, the Class damages can be measured with a common methodology that is directly connected to the alleged wrong.   *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433, 185 L. Ed. 2d 515 (2013)–35 (2013). These common factual and legal questions satisfy the commonality requirement.

### C. Typicality

Rule 23(a)(3) also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  "The representative plaintiff satisfies the typicality requirement when its injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff's claims and those of the class are based on the same legal theory." *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008).

As discussed above, the entire Class was affected by the same conduct—i.e., Defendants' failure to disclose that, by ordering a "free" poster and paying for the 99-cent shipping fee, participants were enrolling in the Poster Club and would be charged a

$29.99 monthly membership fee.  Plaintiff, like all Class Members, participated in the Free Poster Promotion during the Class Period and was surprised when she later discovered a charge for the Poster Club membership fee on her bank statement.  Thus, Plaintiff's claim is identical to the claims of every other Class Member and the typicality requirement is satisfied.

### D. Adequacy of Representation

The Court must also consider whether "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4). "This entails a two-prong showing: 'The moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation.'" *Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d 95, 103 (D. Mass. 2010) (quoting *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985).

Here, there is no conflict between the claims of Plaintiff and the Class, and Plaintiff's counsel has vigorously pursued the Class's claims.  Moreover, Plaintiff's counsel have litigated or been appointed class counsel in a number of consumer cases. (*See generally*, Declaration of Karl S. Kronenberger in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Settlement ["Kronenberger Decl."]; Declaration of Thomas G. Shapiro in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Settlement ["Shapiro Decl."])  Therefore, the adequacy requirements have been met.

//

### E.  Predominance

In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3).  Plaintiff is seeking class certification pursuant to Rule 23(b)((3), which permits class certification upon a showing of predominance and superiority—i.e., that the questions common to class members' legal claims predominate over those individualized questions, and that a class proceeding is superior to any alternative methods for resolving the controversy.

"To establish predominance under Rule 23(b)(3), [Plaintiff] must demonstrate that the proposed class is 'sufficiently cohesive to warrant adjudication by representation.'" *Overka*, *supra*, 265 F.R.D. 14 at 19 (quoting *Amchem*, *supra*, 521 U.S. at 623).  "No rote formula can determine the answer to this inquiry.  Determination of predominance goes to the root of why class certification motions lie within the discretion of the district court, because a determination of predominance requires a common sense judgment regarding what the case is really about, and whether it would be more efficient to try the case as a class suit." *Margaret Hall Found.*, *supra*, 1987 WL 15884 at *4.

In this case, because the claims focus on Defendants' uniform business practices, common factual and legal questions overwhelm any individualized inquiries. These common questions of law and fact include:

a. Whether Defendants engaged in a scheme to deceive and defraud consumers by charging them for a monthly membership in the Poster Club without having adequately disclosed the existence of the Poster Club or the cost of monthly membership;

16

    b.   Whether the alleged conduct of Defendants in failing to disclose the existence of the Poster Club or associated costs violated M.G.L. c. 93A, § 2;

    c.   Whether the conduct of Defendants in charging the Class Members' debit cards the monthly membership fees without their express written consent violated the EFTA; and

    d.   Whether Defendants' conduct, as alleged in the Action, caused injury to Plaintiffs and the class.

If the case proceeded to trial, these questions would be resolved based on common evidence. Thus, because liability turns on the propriety of the manner and methods by which Defendants operated the Poster Club and the Free Poster Promotion, the predominance requirement is satisfied.

## F. Superiority

The Class also satisfies the "superiority" prerequisite, which requires that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The superiority criterion's purpose is the promotion of judicial economy and examines whether "adjudication of numerous separate lawsuits covering the same or substantially similar issues . . . would be an inefficient allocation of limited court resources." *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 273 (D. Mass. 2005). Thus, the requirement of superiority is easily met where, as here, the claims of individual class members are small because there is a "very real risk that potential class members with relatively small claims would not have the financial incentives or wherewithal to seek legal redress for their injuries." *Id.* In this case, the dispute concerns membership fees of $29.99 per month. Thus, the relatively

small damages of any one Class Member makes a class action the superior method for adjudicating these claims.

### VI.   CLASS COUNSEL SATISFY THE REQUIREMENTS OF RULE 23(G)

Rule 23(c)(1)(B) provides that "[a]n order that certifies a class action . . . must appoint class counsel under Rule 23(g)."  In appointing class counsel, the court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).

Here, Class Counsel have substantial experience representing plaintiffs in class actions and other forms of complex litigation.  (*See generally*, Kronenberger Decl.; Shapiro Decl.)  Class Counsel's knowledge of the applicable law, the time and resources they committed to the prosecution of this case, and the work they did in diligently prosecuting it from pre-filing through settlement is described in detail above and is best exemplified by the result achieved.  For these reasons, the Court should appoint Class Counsel as provided in the proposed order accompanying this Motion.

### VII.   THE NOTICE PLAN SATISFIES DUE PROCESS AND SHOULD BE APPROVED

Rule 23 requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal," Fed. R. Civ. P. 23(e)(1), which includes "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P.

23(c)(2)(B).  With respect to method of notice, "[t]here is not statutory or due process requirement that all class members receive actual notice by mail or other means; rather, individual notice must be provided to those Class members who are identifiable through reasonable effort."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974).  With respect to content, notice is sufficient if it "adequately apprise[s] class members of all material elements of the settlement agreement."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012).

The following is a summary of the notice plan set forth in the Agreement. Because this plan provides the best notice practicable under the circumstances, and is reasonably calculated to provide individual notice to all Class Members, and meets the requirements of Rule 23, it warrants approval.

### A.  Method of Notice

The Agreement provides for a three-pronged notice plan involving individual notice by email, follow-up notice to those not reached through email by other means, such as mail or phone, and a dedicated Settlement Web Site.  (Agreement ¶¶ 6.1, 6.2, 7.7.)

Regarding notice by email, as part of the process of ordering a poster through the Free Poster Promotion, all Class Members were required to provide a valid email address.  (*See, e.g.*, screenshots pictured in SAC at 21.)  Wozo has maintained a database of the names as well as the email and physical addresses for each Class Member, as provided by the Class Member at the time he or she completed the order. (Agreement ¶ 2.11.)  The Class Administrator will use this database to send an individual email to each Class Member.  (*Id.* ¶ 7.7, 8.1.)  Said email will include a copy

of the Class Notice pre-filled with information specific to the Class Member, a Claim Form pre-filled with information specific to the Class Member, and a link to the Settlement Web Site. (*Id.* ¶ 6.2, 7.7, 8.1, 8.2, 8.3, Exs. A–B.)

Regarding notice by other means, for all emails that are returned undeliverable, the Claims Administrator will make further, reasonable attempts to contact the Class Members associated with these email addresses by confirming the accuracy of their information and following up through other channels, including postal address, other email address, or phone numbers.  (*Id.* ¶ 8.3.)

Regarding the Settlement Web Site, the Class Administrator will establish a dedicated Settlement Web Site posting at least the Class Notice, the online Claim Form, contacts for obtaining additional information, and such other information as required by Rule 23(c)(2)(B).  (*Id.* ¶ 6.1.)

**B. Content of Notice**

The Class Notice, which is appended to the Agreement as Exhibit B, is accurate, informative, and written in plain, easy to understand language.  More importantly, it satisfies the requirements of Rule 23.  The Class Notice meets the standards of Rule 23(c)(2)(B) because it states: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  (See Agreement, Ex. B.)  In addition, the Class Notice satisfies the requirements of Rule 23(e) because it describes the benefits to be provided under the

Settlement, provides Class Members with information on how to obtain a copy of the Agreement, and notifies Class Members of their right to request exclusion from or object to the Settlement.

### C.  Claim Form

To receive benefits under the Settlement, Class Members will be required to submit a Claim Form.  A pre-filled Claim Form will be emailed to each Class Member as part of the notice process.  (Agreement ¶ 6.2 & Ex. A.)  The Claim Form may be submitted either electronically via the Settlement Web Site or mailed to the Class Administrator.  (*Id.* ¶ 6.4.)

### D.  Request for Exclusion

To be excluded from the Settlement, Class Members must submit a request for exclusion to the Settlement Administrator within forty-five (45) days after the completion of the dissemination of the Class Notice.  (Agreement ¶ 8.4.)

### E.  Claims Administration

The Parties have agreed on the appointment of Kurtzman Carson Associates (commonly referred to as "KCC") as the Claims Administrator.  (Agreement ¶ 3.7.)  The Claims Administrator shall be responsible for administering the Settlement by sending, processing, reviewing, and approving Claim Forms submitted by the Class Members, and maintaining a record of persons who have excluded themselves from the Class.  (*See Id.* ¶ 7.2 and Agreement, generally.) Under the Agreement, the fees and expenses of the Claims Administrator will be paid by Defendants and <u>not</u> from the Settlement Amount.  (*Id.* ¶ 7.3.)

//

## VIII.   PLAINTIFF RESPECTUFLLY REQUESTS THAT THE COURT SET A
## SCHEDULE FOR FINAL APPROVAL

As outlined in the Agreement and the proposed order accompanying this motion, the next steps in the approval process for the Settlement are to notify the Class Members of the proposed settlement, allow Class Members an opportunity to opt-out or file any objections, and hold a Final Approval (or "Fairness"[4]) Hearing.  The following is the schedule set forth in the Agreement and proposed by Plaintiff:

| | |
|---|---|
| Deadline for Defendants to transfer Class Information Database to Class Administrator | 7 business days after Preliminary Approval |
| Deadline for Class Administrator to establish Settlement Web Site | 10 business days after Preliminary Approval |
| Deadline for Claims Administrator to complete dissemination of Class Notice ("Class Notice Date") | 25 business days after Preliminary Approval |
| Deadline for Class Members to opt-out of the Settlement | 45 days after Class Notice Date |
| Deadline for Class Members to file written objection to any aspect of the Settlement | 45 days after Class Notice Date |
| Deadline for Class Members who intend to appear at Final Approval Hearing through counsel to file notice of appearance | 21 days before Final Approval Hearing |
| Deadline for Class Counsel to file (1) application for approval of Attorneys' Fee Award and Incentive Award, and (2) memorandum in support of proposed final order and judgment | 10 days before Final Approval Hearing |

---

[4] While the Agreement uses the phrase "Final Approval Hearing," the Class Notice uses the phrase "Fairness Hearing" to refer to the same event because it better conveys to Class Members that the hearing serves as their opportunity to be heard by the Court on issues related to the fairness of the Settlement.

| Date of Final Approval Hearing | At the Court's Discretion |
|---|---|
| Deadline for Class Members to submit a Claim Form | 120 days after Class Notice Date |

## IX.    CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that the Court preliminarily approve the proposed class action Settlement, and for purposes of said Settlement, certify the Class, appoint Plaintiff as Class Representative, appoint Class Counsel, and approve the proposed notice plan and schedule.


Respectfully submitted,

Dated: October 15, 2013

 /s/ Thomas G. Shapiro
Thomas G. Shapiro (BBO# 454680)
SHAPIRO HABER & URMY LLP
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
tshapiro@shulaw.com

 /s/ Virginia Sanderson
Karl S. Kronenberger (admitted *pro hac vice*)
Virginia Sanderson (admitted *pro hac vice*)
KRONENBERGER ROSENFELD, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
karl@KRInternetLaw.com
ginny@KRInternetLaw.com

Attorneys for Plaintiff and the Class

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 15, 2013.


      /s/ Virginia Sanderson