**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| **SARAH JOHNSON**, individually and on behalf of other similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>**WOZO, LLC, and TATTO, INC.**,<br><br>Defendants. | No.  11-cv-10245-DJC |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF AMENDED CLASS SETTLEMENT

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ........................................................................................... 1

II.    OVERVIEW OF THE ACTION .................................................................... 2

    A.    Factual Allegations .............................................................................. 2

    B.    Procedural History ............................................................................... 4

    C.    Litigation, Discovery, and Original Settlement Negotiations .............. 5

    D.    Escrow of the Settlement Amount ...................................................... 7

    E.    Preliminary Approval of Original Settlement ...................................... 7

    F.    The FTC Action .................................................................................. 7

    G.    Preliminary Approval of the Amended Settlement .............................. 8

III.   SUMMARY OF THE AMENDED SETTLEMENT .................................... 8

    A.    Settlement Class .................................................................................. 8

    B.    Settlement Benefits for Class Members .............................................. 9

    C.    Electronic Notice and Claims Process ................................................ 9

    D.    Attorneys' Fees, Costs, and Incentive Award ................................... 10

    E.    The Benefit to Class Members .......................................................... 12

IV.    THE COURT SHOULD CONFIRM ITS CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT OF PLAINTIFF AS CLASS REPRESENTATIVE, AND APPOINTMENT OF CLASS COUNSEL .................................................... 12

V.     THE AMENDED SETTLEMENT WARRANTS FINAL APPROVAL ....................... 14

    A.    Class Notice complied with the Court's Preliminary Approval Order, Rule 23(c) and (e), and due process. ........................................................................ 14

    B.    The Amended Settlement is "fair, adequate, and reasonable." ........................ 15

        1.    The Amended Settlement provides a full recovery to the Class. .................. 16

        2.    The Amended Settlement was negotiated at arms' length and there are no "subtle signs" of collusion. ........................................................................ 18

3.     The reaction of the Class supports approval of the Amended Settlement. ... 19

VI.     CONCLUSION ................................................................................................ 20

## TABLE OF AUTHORITIES

**Cases**

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 ................................................................................................... 12

*Ashley v. Reg'l Transp Dist. & Amalgamated Transit Union Div. 1001 Pension Fund Trust*,
    No. 05-CV-01567-WYD-BNB, 2008 WL 384579 (D. Colo. Feb. 11, 2008) ............... 16

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir.1974) ........................................................................... 15

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
    100 F.3d 1041 (1st Cir. 1996) ...................................................................... 15

*Durrett v. Housing Authority of the City of Providence*,
    896 F.2d 600 (1st Cir. 1990) ......................................................................... 15

*Giusti-Bravo v. U.S. Veterans Admin.*,
    853 F. Supp. 34 (D.P.R. 1993) ...................................................................... 18

*Gulbankian v. MW Mfrs., Inc.*,
    No. CIV.A. 10-10392-RWZ, 2014 WL 7384075 (D. Mass. Dec. 29, 2014) ............... 14

*In re LivingSocial Mktg. & Sales Practice Litig.*, 11-CV-0745,
    2013 WL 1181489 (D.D.C. Mar. 22, 2013) ................................................... 16

*In re Lupron Mktg. & Sales Practices Litig.*,
    345 F. Supp. 2d 135 (D. Mass. 2004) ........................................................... 18

*In re Lupron Mktg. and Sales Practices Litig.*,
    228 F.R.D. 75 ................................................................................................. 16

*Kingsborough v. Sprint Commc'ns Co., L.P.*,
    No. CIV.A. 14-12049-NMG, 2015 WL 1605506 (D. Mass. Apr. 8, 2015) ................. 19

*New England Carpenters Health Benefits Fund v. First DataBank, Inc.*,
    602 F. Supp. 2d 277 (D. Mass.) .................................................................... 15

*O'Brien v. Brain Research Labs, LLC*,
    CIV.A. 12-204, 2012 WL 3242365 (D.N.J. Aug. 9, 2012) ........................... 17

*Stoetzner v. U.S. Steel Corp.*,
    897 F.2d 115 ................................................................................................. 19

*United States v. Cannons Engineering Corp.*,
    729 F. Supp. 1027 (D. Mass. 1989) ............................................................ 15

*Williams v. Costco Wholesale Corp.*,
  No. 02CV2003 IEG(AJB), 2010 WL 2721452 (S.D. Cal. July 7, 2010) ..................... 19

**Statutes**

15 U.S.C. §§ 1693 <u>et seq</u>. .............................................................................. 4

M.G.L. c. 260 § 5A ...................................................................................... 17

M.G.L. c. 93A § 2 ........................................................................................ 4

**Rules**

Fed. R. Civ. P. 23 ................................................................................*passim*

Fed. R. Civ. P. 41 .................................................................................... 4, 5

## I.      INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiff Sarah Johnson submits this memorandum in support of her motion for final approval of a negotiated class settlement with Defendants Wozo, LLC ("Wozo") and Tatto, Inc. ("Tatto") (collectively, "Defendants").  The terms of the settlement are set forth in the Amended Settlement Agreement (Doc. No. 130-1), which was filed with the Court on January 30, 2015 in connection with Plaintiff's unopposed motion for preliminary approval (Doc. No. 129).  The Court preliminarily approved the Amended Settlement on February 25, 2015. (Doc. No. 131.)  The Fairness Hearing is scheduled for June 17, 2015 at 2:00 p.m.

Plaintiff brought this class action on behalf of consumers who, like Plaintiff, were victims of an allegedly unlawful Internet scheme perpetrated by Defendants.  Plaintiff has alleged that Defendants operated an online "Poster Club," as described more fully below, wherein consumers who accepted an offer of a free poster were unwittingly enrolled in the Poster Club and charged monthly membership fees.  Plaintiff has alleged that Defendants failed to adequately disclose either the existence of or costs associated with the Poster Club in violation of Massachusetts and federal law.

After years of litigation, which was extended by a pending enforcement action by the Federal Trade Commission against Tatto and related parties in the Central District of California concerning unrelated claims (the "FTC Action"), Plaintiff and Defendants entered into the proposed Amended Settlement, which is presently before the Court.  In reaching this settlement, the parties identified 5,672 unique Class Members. (Declaration of Karen Rogan Re: Notice Procedures ("Rogan Decl.") ¶ 4.)   The Amended Settlement Agreement establishes a $250,000 Settlement Fund for the

benefit of the Class.  (Amended Settlement Agreement, attached to Sanderson Decl. as Ex. A [hereinafter "ASA" for citation purposes] ¶ 5.1.)  The Settlement Fund has been deposited in escrow and is currently held by the Claims Administrator pursuant to the terms of the Amended Settlement Agreement, as approved by the FTC, the Receiver, and the Court in the FTC Action. After payment of the Claims Administrator's fees and the Incentive Award to Plaintiff, each Class Member who has timely submitted a Claim will receive a 100% refund of their Poster Club membership fees.

In summary, the Amended Settlement provides substantial monetary benefits to Class Members and it represents the product of diligent efforts by Class Counsel to obtain the best possible result for the Class.  The Amended Settlement is fair, adequate, and reasonable, and it is the result of extensive, arm's-length negotiations between Class Counsel and counsel for Defendants and, at times, counsel for the Receiver in the FTC Action.  The Amended Settlement provides Class Members with a full recovery today and eliminates the delay and risk that would inevitably result from continued litigation.  For the reasons set forth herein, and in the accompanying declarations and documentation, Plaintiff and Class Counsel respectfully request that the Court grant this motion and finally approve the Amended Settlement.

## II.     OVERVIEW OF THE ACTION

### A. Factual Allegations

Wozo formerly operated and/or marketed a website, located at <wozo.com> (the "Wozo Website"), offering posters for sale.  (Second Amended Complaint [Doc. No. 83] [hereinafter for citation purposes, "SAC"] ¶¶ 40–41.)  In or around June 2010, Wozo formed the "Poster Club," wherein members of the Poster Club would receive an

automatic shipment of two posters per month from the Wozo Website in exchange for payment of a $29.99 monthly membership fee.  (*Id.* ¶ 63.)

Plaintiff alleges that Defendants launched a promotional campaign wherein they placed banners and other advertisements on the Internet offering a free poster to consumers, who were only required to pay a 99-cent shipping fee (the "Free Poster Promotion").  (*Id.* ¶ 64.)  Plaintiff alleges that Defendants did not disclose the fact that, by ordering a "free" poster, persons were automatically enrolled in the Poster Club and a monthly membership fee would be charged to the same credit or debit card used to pay for the 99-cent shipping fee.  (*Id.*)  Specifically, Plaintiff alleges that Defendants' advertisements concerning the Free Poster Promotion did <u>not</u> adequately disclose the following information:

a) That consumers who ordered a "free" poster from the Wozo Website for a 99-cent shipping fee would be automatically charged for a monthly membership in the Poster Club;

b) That consumers who ordered a "free" poster from the Wozo Website had to cancel their monthly membership in the Poster Club within four (4) days of ordering a "free" poster in order to avoid any charges related to their monthly membership in the Poster Club;

c) That the debit or credit card information submitted by consumers who ordered a "free" poster from the Wozo Website would be retained by Defendants; or

d) That consumers who ordered a "free" poster from the Wozo Website and did not cancel their monthly membership in the Poster Club within the four-day window would be charged a $29.99 monthly membership fee on the debit or

3

credit card provided to Defendants for the purpose of paying for the 99- cent shipping fee.

(*Id.*)

Plaintiff alleges that Defendants' employment of this misleading and deceptive advertising violated Massachusetts General Laws Chapter 93A, Section 2(a) ("M.G.L. c. 93A § 2"). (*See, e.g.*, *id.* ¶ 4.) Plaintiff also alleges that Defendants violated the Electronic Funds Transfer Act, 15 U.S.C. § 1693 <u>et seq</u>. (the "EFTA") by initiating electronic transfers of funds from debit card accounts without first obtaining valid authorization in writing from the account holders. (*See, e.g.*, *id.* ¶ 5.)

Defendants dispute these and all allegations made by Plaintiff, deny that they have engaged in any wrongdoing, and deny all of the claims that are asserted in the case (the "Action").

### B. Procedural History

On or about February 14, 2011, Suk Jae Chang ("Chang") filed this putative class action. On or about April 15, 2011, the First Amended Complaint was filed (Doc. No. 23), and on February 27, 2013 a Second Amended Complaint was filed, adding Sarah Johnson as a plaintiff and individuals Lin Miao and Andrew Bachman as defendants. (Doc. No. 83.) Then defendant Adknowledge filed Cross Claims against Wozo and Tatto for contractual and equitable indemnity and breach of contract (the "Cross Claims"). (Doc. Nos. 66, 91.)

On or about April 23, 2013, Chang filed a motion to dismiss himself from the Action pursuant to Federal Rule of Civil Procedure 41(a)(2) without prejudice to his

rights as a member of the Class.  (Doc. No. 86.) On September 10, 2013, the Parties filed a stipulation agreeing to Chang's voluntary dismissal. (Doc. No. 104.)

On or about September 10 and 20, 2013, pursuant to the Parties' Stipulation, Plaintiff voluntarily dismissed her claims against Adknowledge pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) and against Miao and Bachman pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), and Adknowledge voluntarily dismissed the Cross Claims against Tatto and Wozo pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii).  (Doc. Nos. 105, 106, 110.) Plaintiff only agreed to such dismissals because the Parties had reached a global agreement, contingent on said dismissals, which provided a full recovery for the Class.

## C. Litigation, Discovery, and Original Settlement Negotiations

The Parties have conducted a thorough examination and investigation of the facts and law relating to the matters set forth in the Action, which included, among other things, the exchange of discovery and participation in settlement negotiations.

Defendants moved to dismiss the First Amended Complaint on various grounds, which motion the Court denied after briefing and oral argument.  (Doc. No. 54.)

Through discovery, Wozo provided Plaintiff's counsel with a spreadsheet in Excel format (the "Spreadsheet") containing what Wozo represented to be its best understanding of (a) all individuals who may have paid any monthly fees for the Poster Club prior to November 2, 2010, when Wozo revised the Website, and who did not receive a full refund for these fees directly from Wozo;(b) amounts that include at least all monthly fees that may have been paid by such individuals to Wozo in connection with the Poster Club (totaling $295,602.61); and (c) the amounts and recipients of all refunds of monthly fees paid directly by Wozo (totaling $1,409.53).  (Declaration of

Virginia Sanderson in Support of Motion for Preliminary Approval [Doc. No. 115] [Prelim. App. Decl.] ¶ 2; *see also* ASA ¶ 2.9)

Regarding chargebacks—that is, refunds initiated by Class Members through their credit cards—Wozo represented and warranted that it does not possess complete or searchable records of chargebacks received by Class Members from their respective credit or debit card issuers.  (Prelim. App. Decl. ¶ 3; ASA ¶ 2.10 )  Consequently, the Spreadsheet does not account for consumers whose monthly fees were ultimately charged back to them, which could be a substantial percentage of putative Class Members.[1]  (*Id.*)

The Parties have engaged in extensive settlement negotiations over an extended period of time.  (Prelim. App. Decl. ¶ 4.)  Plaintiff and Defendants ultimately reached an agreement, the "Original Settlement," subject to the dismissal of Adknowledge and the individual defendants, as well as this Court's approval, that Wozo would pay $250,000.00 in settlement (the "Settlement Amount")—that is, approximately 85% of the total amount of monthly membership fees collected by Wozo during the class period.  If even 15% of the participants obtained a refund through the chargeback procedure (and the parties estimate that percentage is probably much higher), then the Settlement Amount would provide a <u>full</u> recovery to the Class.  (*Id.* ¶ 5.)   Under these circumstances, Plaintiff believed that the Action was best resolved by a class-wide settlement rather than continued litigation.

---

[1] Indeed, the lack of chargeback records is the reason why the parties had to structure the Amended Settlement as a so-called "claims-made" settlement.  However, the usual concerns with such a settlement are inapplicable here.  First, Defendants waived the right to challenge any Claim filed on the grounds that the Class Member had received a refund either through Defendants or the chargeback process.  Second, any remaining portion of the Settlement Fund after payment of the Claims, the Class Administrator Fee, the Incentive Award, and Attorneys' Fees reverts to the FTC Receiver and thereby will also be used for the benefit of consumers.

Only after the terms of the Original Settlement were agreed upon, the parties negotiated the amount of attorneys' fees and expenses to be paid by Defendants independent of the Settlement Amount, subject to approval of the Court.  (*Id.* ¶ 6.)

### D. Escrow of the Settlement Amount

By agreement of the parties, Defendants funded the Settlement Amount by placing $250,000 in escrow with Defendants' counsel (the "Escrow Account") prior to Plaintiff's filing of her motion for preliminary approval of the Original Settlement.  (ASA ¶ 5.2.)  The parties' agreement did not require Defendants to place in escrow the additional funds to pay attorneys' fees or the Class Administrator.

### E. Preliminary Approval of Original Settlement

On October 15, 2013, Plaintiff filed her unopposed motion for preliminary approval of the Original Settlement. (Doc. No. 112.)  On April 11, 2014, the Court issued the Order granting preliminary approval of the Original Settlement. (Doc. No. 118.)

### F. The FTC Action

On December 5, 2013, after Plaintiff had moved for preliminary approval of the Original Settlement, but before preliminary approval was granted, the FTC initiated an action against various persons and entities, including Defendant Tatto and former Defendants Lin Miao and Andrew Bachman, related to charges on consumers' mobile phone bills.  See *FTC v. Tatto, Inc.*, *et al.*, No. 13-8912 (C.D. Cal.) (the "FTC Action").

The U.S. District Court for the Central District of California entered an *ex parte* temporary restraining order freezing the assets of the defendants in the FTC Action. Although stipulated judgments have since been entered as to all defendants in the FTC Action, as of the filing of this motion, Plaintiff believes the asset freeze remains in effect

as part of a receivership created through said judgments.  The asset freeze and stipulated judgments prohibit the Defendants in the instant case from performing their monetary obligations under the Original Settlement.

Due to the material change in circumstances caused by the FTC Action, the parties sought, and obtained, extensions of time from this Court to meet and confer with counsel for the receiver in the FTC Action and revise the Settlement Agreement. (Doc. No. 121, 124.)  With the input of counsel for the receiver and the FTC, the parties reached the Amended Settlement, which is summarized in Section III.  In the FTC Action, Johnson also sought, and obtained, an order from the United States District Court for the Central District of California authorizing the release of the Escrow Account from the asset freeze and receivership in the FTC Action for purposes of satisfying the Amended Settlement, subject to the oversight and approval of this Court.  (See Declaration of Virginia Sanderson in Support of Motion for Preliminary Approval of Revised Settlement [Doc. No. 130] Exs. E & F.)

G.       Preliminary Approval of the Amended Settlement

On February 27, 2015, the Court preliminarily approved the Amended Setlement. (Doc. No. 131.)

III.    SUMMARY OF THE AMENDED SETTLEMENT[2]

A. Settlement Class

The proposed Class is:

All persons who participated in Wozo's Poster Club promotion and were charged for monthly membership fees in the Wozo Poster Club between September 1, 2010 and November 1, 2010, and who did not receive a full refund from Wozo.

---

[2]  Capitalized terms used herein have the meaning ascribed to them in the Agreement.

(ASA ¶ 4.1.)

**B. Settlement Benefits for Class Members**

The Settlement Amount consists of a payment of $250,000 by Defendants (ASA ¶ 5.1.), which was deposited in escrow held by their counsel. (*Id.* ¶ 5.2.)  On March 6, 2015, pursuant to the conditional release of the amounts held in escrow from the Asset Freeze by the Court in the FTC Action, and this Court's preliminary approval of the Amended Settlement Agreement, the Settlement Amount was transferred in full to the Class Administrator.  Based on the Claims filed to date, the Settlement will provide a full refund to all Class Members who have filed Claims.

**C. Electronic Notice and Claims Process**

Pursuant to the Court's Order Granting Preliminary Approval, on or before March 13, 2015, the Claims Administrator established a dedicated website at <wozoclassaction.com> where the Class Notice, Claim Form, Preliminary Approval Order, and Amended Settlement Agreement were posted, along with answers to frequently asked questions.  (Rogan Decl. ¶ 7.)  Class Members were able to submit claims online via the website.  (*Id.*)  The Claims Administrator also distributed the Class Notice as follows:

- On March 24, 2014, the Notice and Claim Form (collectively, the "Notice Package") were mailed or emailed to each of the persons on the Class Member List.  (*Id.* ¶ 5.)

- 2,651 Class Members were sent Notice Packages by mail and 3.021 Class Members were sent Notice Packages by email.  (*Id.*)

9

- 738 emailed Notice Packages were undeliverable and these Class Members were sent Notice Packages by mail.  (*Id.*)

- 11 of the Notice Packages sent by mail were returned to the Claims Administrator by the U.S. Postal Service with forwarding addresses.  The Claims Administrator caused the Class Member List to be updated with the new addresses and Notice Packages to be re-mailed to the updated addresses. (*Id.* ¶ 6.)

- As of June 1, 2015, the Claims Administrator has received a total of 780 Notice Packages returned by the U.S. Postal Service without forwarding address information.  The Claims Administrator conducted address searches using public source databases to attempt to locate new addresses for all of these Class Members.  As of June 1, 2015, these searches have resulted in 472 updated addresses, to which the Claims Administrator promptly remailed Notice Packages.  (*Id.*)

As of this filing, the Claims Administrator has received 265 timely Claim Forms and 1 timely Opt-Out.  (*Id.* ¶¶ 8, 10.)  The individual submitting the single Opt-Out does not object to the Amended Settlement, but instead feels that he was mistakenly included as a Class Member, possibly due to an issue he had with identity theft during the relevant time period. (*Id.*, Ex. C.)

### D.  Attorneys' Fees, Costs, and Incentive Award

Pursuant to the Amended Settlement Agreement and the Order Granting Preliminary Approval, ten days after the expiration of the Claim Period—*i.e.,* on or after

July 27, 2015—Class Counsel will make a separate motion for an Attorneys' Fee Award.

Regarding attorneys' fees and expenses, Defendants have agreed not to contest Class Counsel's request for an Attorneys' Fee Award of $250,000.  (ASA ¶¶ 10.1, 3.3.) Under the Original Settlement, Defendants were to pay the Claims Administrator fees and the Attorneys' Fee Award separately from Settlement Amount, but due to the FTC Action, they no longer have the ability to do so.  Accordingly, under the Amended Settlement, subject to final approval by the Court, the Attorneys' Fee Award shall be paid out of any portion of the Settlement Amount remaining after (i) the Claims Administrator has been paid,(ii) all Cash Payments have been paid to Class members, and (iii) the Incentive Award for Plaintiff has been paid.. (*Id.* ¶ 10.2.)  It is for this reason that Class Counsel is deferring its motion for Attorneys' Fee Award until after the Claim Period.  Class Counsel will provide the Court with full briefing on a fee request at that time, but in the interim will note that the agreed-upon amount represents a substantial discount of actual fees and costs given the time expended on this protracted case.  (*Id.* ¶ 10.2.)

Regarding the Incentive Award, Class Counsel will also file an application for approval of an Incentive Award of $500 for Plaintiff, to be paid from the Settlement Amount.  (*Id.* ¶¶ 10.2, 10.3.)  Defendants have agreed not to oppose the approval of an Incentive Award up to $500.  (*Id.* ¶ 10.2.) The Incentive Award shall be in addition to the benefits due to Plaintiff as a Class Member pursuant to the Agreement.  (*Id.*)  This Incentive Award is reasonable and warranted by Plaintiff's willingness to stick with the case through many years of litigation.

11

### E.  The Benefit to Class Members

Even after the Claim Administrator's fees and the Incentive Award are deducted from the Settlement Fund, the remaining portion of the fund is sufficient to provide a <u>full recovery</u> to all Class Members who submitted a timely Claim Form.  (Rogan Decl. ¶ 10 [regarding number of Claims received].)   Thus, the proposed Amended Settlement provides 100% of the aggregate Class damages as well as 100% of the average per-Class Member damages.  Plaintiff could not expect to obtain a more favorable result through ongoing litigation.   Moreover, the FTC Action has effectively prevented Defendants from paying any additional amount.

## IV.    THE COURT SHOULD CONFIRM ITS CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT OF PLAINTIFF AS CLASS REPRESENTATIVE, AND APPOINTMENT OF CLASS COUNSEL

Federal Rule of Civil Procedure 23(e) requires court approval of any settlement that effects the dismissal of a class action.  Settlement agreements reached before class certification must be reviewed as to both the requirements for class certification and the fairness of the settlement.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 621–22 (1997).  A class action is to be certified where, as here, the class satisfies the four prerequisites of Rule 23(a)—numerosity, commonality, typicality and adequacy—as well as one of the three subsections of Rule 23(b).   Although the usual standards for Rule 23(a) and (b) certification apply in the settlement context, issues regarding trial management are not to be considered since here will obviously be no trial.  *Amchem*, *supra*, 521 U.S. at 621–22.

In the preliminary approval order, the Court granted class certification for settlement purposes, finding that "the prerequisites for a class action under Rule 23 of the Federal Rules of Civil Procedure have been satisfied in that (a) the number of Class Members is so numerous that joinder of all Members thereof is impracticable; (b) there are questions of law and fact common to the Class; (c) the claims of Plaintiff are typical of the Class she seeks to represent;… (e) the questions of law and fact common to the members of the Class predominate over any questions affecting only individual Class Members; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy." (Doc. No. 131 ¶ 3.)  The satisfaction of these prerequisites has remained true through administration of the Amended Settlement, and it is clear that a class action remains the superior means of resolving the Class Members' claims against Defendants.  For all of the reasons set forth in Plaintiff's Unopposed Motion for Preliminary Approval of Amended Class Settlement (Doc. No. 129 at 10-18), as well as those set forth herein, the Court should finally certify the class for settlement.

In the preliminary approval order, the Court also found that "Plaintiff and her counsel will fairly and adequately represent the interests of the Class." (Doc. No. 131 ¶ 3.)  The Court appointed the law firms of Shapiro Haber & Urmy LLP and Kronenberger Rosenfeld, LLP as Class Counsel.  (*Id.* ¶ 6.)   The Court appointed Plaintiff as representative of the Class.  (*Id.* ¶ 5.)  Plaintiff and Class Counsel have continued to honor their respective obligations to the Class throughout administration of the Amended Settlement.  Thus, for all of the reasons set forth in Plaintiff's Unopposed Motion for Preliminary Approval of Amended Class Settlement (Doc. No. 129 at 16, 18–

19), the Court should confirm its appointment of Plaintiff as representative of the Class and the law firms of Shapiro Haber & Urmy LLP and Kronenberger Rosenfeld, LLP as Class Counsel.

## V.     THE AMENDED SETTLEMENT WARRANTS FINAL APPROVAL

### A. Class Notice complied with the Court's Preliminary Approval Order, Rule 23(c) and (e), and due process.

Federal Rule of Civil Procedure 23(c)(2) requires the Court to ensure that the Amended Settlement provides the Class with the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Notice is satisfactory where it provides class members with detailed information regarding the lawsuit and settlement, the proposed compensation structure, and an explanation of how individual claims will be processed and calculated. *See, e.g.*, *Gulbankian v. MW Mfrs., Inc.*, No. CIV.A. 10-10392-RWZ, 2014 WL 7384075, at *4 (D. Mass. Dec. 29, 2014). Furthermore, notice is considered adequate when it sets forth the nature of the action, defines the class to be cerfied, identifies the class claims and defenses at issue, and explains to class members that they may enter an appearance through counsel if so desired, or request exclusion form the settlement class, and that any judgment will be binding on all class members. *See* Fed. R. Civ. P. 23(c)(2)(B).

The notice plan approved by the Court in its preliminary approval order has been—and continues to be—carried out by the Claims Administrator in compliance with the order as well as due process and Rule 23. As discussed above, this notice plan included the dissemination of Notice by email and mail, the creation and ongoing

14

maintenance of the Settlement Website, and the establishment of both online and traditional mail channels for receiving Claims, requests for exclusions, objections, notices of intention to appear, and any other communications regarding this action and the Amended Settlement.  (Rogan Decl., ¶¶ 4–7.)

**B.  The Amended Settlement is "fair, adequate, and reasonable."**

The authority to approve a class settlement is committed to the sound discretion of the trial court.   *See, e.g.*, *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1044 (1st Cir. 1996).

Under Rule 23(e), a court should approve the settlement of a class action if it is "fair, adequate and reasonable."  *See, e.g.*, *Durrett v. Housing Authority of the City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990).  When sufficient discovery has been conducted and the parties have bargained at arms-length, without collusion, there is a presumption in favor of the settlement.  *See, e.g.*, *United States v. Cannons Engineering Corp.*, 729 F. Supp. 1027, 1036 (D. Mass. 1989).  While, unlike other circuits, the First Circuit has not established a precise test of fairness, many courts within the Circuit have relied on some combination of the following factors:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the  risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, 602 F. Supp. 2d 277, 280-81 (D. Mass.) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d

Cir.1974); and *In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 93–94 (D.Mass.2005)). Other courts have pared down the foregoing list to only those factors relevant to the case at hand. *Id.*

Here, the Amended Settlement embodies all of the key features of a settlement that is fair, reasonable, adequate, and in the best interests of the Class Members. The Amended Settlement is fair because it provides a full recovery to all Class Members who have submitted Claim Forms—the gold standard of class action settlements. As such, the benefits of the Amended Settlement outweigh any potential rewards of litigation. In addition, the Amended Settlement was reached as a result of lengthy negotiations at arms' length and there are no signs of collusion. Finally, as a result of the FTC Action, Defendants are unable to withstand any greater judgment. Thus, the settlement meets all of the criteria necessary for final approval.

### 1. <u>The Amended Settlement provides a full recovery to the Class.</u>

As indicated above, the Amended Settlement provides a full recovery to all Class Members who have filed timely claims. Moreover, the parties suspect that if the Settlement Amount had not been placed into Escrow pursuant to the Original Settlement, it would have been difficult to facilitate any recovery for the Class in light of the FTC Action.

Class settlements that provide for a full recovery are reasonable and fair when juxtaposed with the risks of less than full recovery inherent in any litigation. *See, e.g.*, *In re LivingSocial Mktg. & Sales Practice Litig.*, 11-CV-0745, 2013 WL 1181489, at *9 (D.D.C. Mar. 22, 2013); *Ashley v. Reg'l Transp Dist. & Amalgamated Transit Union Div. 1001 Pension Fund Trust*, No. 05-CV-01567-WYD-BNB, 2008 WL 384579, at *3 (D.

16

Colo. Feb. 11, 2008) (proposed settlement preliminarily approved due to potential for full recovery); *compare to O'Brien v. Brain Research Labs, LLC*, CIV.A. 12-204, 2012 WL 3242365, at *19 (D.N.J. Aug. 9, 2012) (approving class settlement for substantially less than full compensation while noting that the "best possible recovery for each class member" would be a full refund).

In contrast to the recovery provided through the Amended Settlement, there are a number of obstacles facing Plaintiff and the Class if the Amended Settlement is not approved.  First and foremost, with the exception of the Settlement Amount—which has only been conditionally released from the receivership in the FTC Action for purposes of the Amended Settlement—Defendants' funds have been depleted through the FTC Action.  Second, due to the protracted path of this case, the consumer transactions at issue are now over four years old, as is the evidence to prove them.  As the Court is well aware, substantial time and effort was expended during the initial pleadings stage of the case.  Multiple motions to dismiss were filed, and on the Parties' agreement, the Court stayed discovery during the thirteen months it took to resolve these early motions. (Doc. No. 35 and subsequent Electronic Endorsement of May 25, 2011.) Third, the four-year statute of limitations for actions under the Consumer Protection Statute has now expired, so any new claims filed by victims of the Wozo Poster Club, which only ran during 2010, will be time-barred.  M.G.L. c. 260 § 5A.  Similarly, the one-year limitations period under the EFTA has long passed for persons who paid their Membership Fees with a debit card. 15 U.S.C. § 1693m(g).  Thus, absent approval of the terms set forth in the Amended Settlement, any recovery for Class Members would be extremely unlikely.

**2.  The Amended Settlement was negotiated at arms' length and there are no "subtle signs" of collusion.**

Even though the Parties reached the Agreement prior to formal class certification, the proposed Settlement does not have any of the "subtle signs" of collusion that might give a court pause.  Notably, it has taken the Parties significant motion practice, discovery, working with non-parties such as the FTC, and several years to reach this agreement.  *See, e.g.*, *Giusti-Bravo v. U.S. Veterans Admin.*, 853 F. Supp. 34, 42 (D.P.R. 1993) (no allegation of collusion could colorably be made where case was actively litigated for two years and settlement negotiated for three).  Extensions for purposes of continuing settlement negotiations have been requested and granted. (Doc. Nos. 98, 100, 108, 109.)   Moreover, to call the case "contentious" at times, particularly in the early stages of the case, would be an understatement.  *See, e.g.*, *In re Lupron Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004) (no signs of collusion in case that was "vigorously contested").

Finally, the amount of the Attorneys' Fee Award, and the fact that the Parties agreed upon it through a so-called "clear sailing" provision, is not a sign of collusion in this unique case.  As will be set forth more fully in Class Counsel's application for the Attorneys' Fee Award, it was negotiated separately after the Original Settlement terms were agreed upon, and it represents a <u>significant</u> discount of the actual hourly fees accrued by Class Counsel in the preparation for and litigation of this Action over the course of four years.  Moreover, under the Amended Settlement, Class Counsel has borne the heaviest burden of the effect of the FTC Action because there will not be sufficient funds, after the Class Administrator and the Class Members have been paid,

to approximate anything near the $250,000 Attorneys' Fee Award agreed upon by the parties pursuant to the Original Settlement.

Thus, for all of these reasons, there are no signs of collusion that would prevent the Court from preliminarily approving the fair and reasonable Settlement.

### 3. <u>The reaction of the Class supports approval of the Amended Settlement.</u>

The absence of objections to a proposed class settlement raises a presumption that the terms are favorable to class members. *See, e.g.*, *Kingsborough v. Sprint Commc'ns Co., L.P.*, No. CIV.A. 14-12049-NMG, 2015 WL 1605506, at *3 (D. Mass. Apr. 8, 2015); *see also Williams v. Costco Wholesale Corp.*, No. 02CV2003 IEG(AJB), 2010 WL 2721452, at *5 (S.D. Cal. July 7, 2010) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118–19 (3d Cir. 1990) (concluding that when "only" 29 members of 281 class members objected, the response of the class as a whole "strongly favors settlement").

The deadline for Class Members to submit claims or requests for exclusions or to file an objection was May 8, 2105.  (Rogan Decl., ¶¶ 8–9.)  **<u>No objections</u>** were received by the Class Administrator.  (*Id.* ¶ 8.)  Moreover, only one opt-out request was received; although this particular consumer used language approximating an opt-out, he explained that his reason for opting out was because he believed he was inadvertently included within the Class as a result of identity theft years ago.  (*Id.* ¶ 8 & Ex. C.) Accordingly, no issues have been raised by the Class regarding the fairness of the Amended Settlement.

19

## VI.     CONCLUSION

For the reasons discussed above, Plaintiff respectfully requests that the Court:

(1)     Certify the Class for purposes of the settlement, and find that Class Counsel and Plaintiff have fairly and adequately represented the Class with respect to this litigation and the Amended Settlement;

(2)     Find that the Class Notice and settlement administration program established and implemented pursuant to the Amended Settlement Agreement satisfies Rule 23(e) of the Federal Rules of Civil Procedure and the requirements of Due Process; and

(3)     Enter a final judgment and order dismissing this action, and awarding Attorneys' Fees and an Incentive Fee to Plaintiff in an amount to be determined after close of the Claims Period.

Respectfully submitted,

Dated:  June 5, 2015                     /s/ Virginia Sanderson
                                         Thomas G. Shapiro (BBO# 454680)
                                         SHAPIRO HABER & URMY LLP
                                         2 Seaport Lane
                                         Boston, MA 02110
                                         Telephone: (617) 439-3939
                                         tshapiro@shulaw.com

                                         Karl S. Kronenberger (admitted *pro hac vice*)
                                         Virginia Sanderson (admitted *pro hac vice*)
                                         KRONENBERGER ROSENFELD, LLP
                                         150 Post Street, Suite 520
                                         San Francisco, CA 94108
                                         Telephone: (415) 955-1155
                                         karl@KRInternetLaw.com
                                         ginny@KRInternetLaw.com

                                         Attorneys for Plaintiff and the Class

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 5, 2015.


_____/s/ Virginia Sanderson_____